IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO.  2:08-cr-02-MHT |
| | ) | |
| JOHN GARRY BOURNES | ) | |

## UNITED STATES' RESPONSE TO MOTION TO DISMISS INDICTMENT

Comes now the United States of America, by and through Leura G. Canary, United States

Attorney for the Middle District of Alabama, and files the instant Response to Defendant John Garry

Bournes' Motion to Dismiss Indictment (Doc. # 28) as follows.

## I.  BACKGROUND

### A.    Procedural Background

On January 9, 2008, a federal grand jury returned a single count indictment charging that

between August 2007 and November 2007, the defendant, John Garry Bournes, failed to register and

update a registration as a sex offender in violation of 18 U.S.C. § 2250.  (Doc. # 10.)  Bournes was

arraigned on the indictment on January 10, 2008, and entered a plea of not guilty.  (Doc. # 16.)

### B.    Factual Background

On June 27, 1991, in the Circuit Court, Sixth Judicial Circuit, in and for Pinellas County,

Florida (CRC90-12741CFANO), Bournes was convicted by a jury of two counts of Handling and

Fondling a Child under the Age of Sixteen Years Old, in violation of Fla. Stat. § 800.04(1).[1]  (Ex.

1.)  Bournes was sentenced to fifteen years in the Florida State Department of Corrections.  (*Id.*)

---

[1]  According to the felony information, Bournes was charged in two separate counts with
placing his exposed penis on or between the legs of a female minor in her genital region in a lewd,
lascivious and indecent manner, but without committing the crime of sexual battery.  (Ex. 2.)

Bournes was released from custody for that offense on 2002 and did not register as a sex offender in Florida.

On March 16, 2006, while in the custody of the Pinellas County Jail for an unrelated offense, Bournes registered as a sex offender in Florida (Ex. 3) and signed a document acknowledging that he was subject to registration as a sex offender in any state in which he resides, is employed, carries on a vocation, or is a student (Ex. 4).  On September 4, 2006, upon his release from the Pinellas County Jail, Bournes updated his registration paperwork.  (Exs. 5, 6.)  Again, Bournes signed another document that included requirements for sex offender and public protection registration. (*Id.*)  Each time Bournes registered he was given copies of all the paperwork explaining his sexual offender requirements.  Further, on each occasion, Bournes signed and provided his right thumb print indicating he understood his requirements.  (*See* Exs. 3, 4, 5, 6.)  Bournes was due to update his Florida registration in October 2006.  (*See* Ex. 6.)  Bournes did not update his Florida registration thus an arrest warrant was issued.

In August 2007, Bournes moved to Prattville, Alabama.  Bournes did not register as a sex offender in Alabama.  Bournes was arrested by the Prattville Police Department on November 13, 2007, based on an arrest warrant issued for his failure to register as a sex offender in Autauga County.  On January 3, 2008, a criminal complaint against Bournes was filed in this Court for violation of 18 U.S.C. § 2250.  (*See* 2:08mj001-TFM, Doc. # 1.)

C.    **SORNA Background**

On July 27, 2006, the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act") was signed into law.[2]  The Adam Walsh Act was designed to "protect children from sexual

---

[2]    Public Law 109-248, §§ 1-155, 120 Stat. 587, 590-611 (2006).

exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims." Preamble to the Adam Walsh Child Protection and Safety Act, Pub.L. 109-248. Title I of the Adam Walsh Act, entitled the Sex Offender Registration and Notification Act ("SORNA") creates a national sex offender registry law. SORNA was enacted to close the gaps in the network of state sex offender registration laws that existed despite prior efforts at the state and national level to implement an effective registration system.[3] SORNA Interim Rule, 72 FR 8894, 2007 WL 594891. The ultimate goal of SORNA is to make sex offender registration obligations comprehensive and real – even for those sex offenders who would rather migrate than continue to register.

SORNA, in addition to defining the term "sex offender" and addressing the various tiers of sex offender status,[4] *see* 42 U.S.C. § 16911, also requires every jurisdiction to maintain a sex offender registry conforming to the requirements of SORNA, *see* 42 U.S.C. § 16912. The information to be provided by the sex offender for the registry, at a minimum, includes: names and aliases, social security account number, residence, place of employment and/or school, and vehicle information. 42 U.S.C. § 16914(a)(1)-(7). Also, the jurisdiction must ensure that, at a minimum, the following information is included in the registry: physical description, criminal history, including the text of the particular law for which the registration is required, current photograph, fingerprints

---

[3] In fact, it was estimated in 2006 that 100,000 of the over 500,000 convicted sex offenders who had registered with states were, in fact, missing. 152 Cong. Rec. S8012, 8013 (daily ed. July 20, 2006) (statement of Sen. Hatch); 152 Cong. Rec. H5705, 5722 (daily ed. July 25, 2006) (statement of Rep. Sensenbrenner).

[4] The term "sex offender" is defined under SORNA as "an individual who was convicted of a sex offense." 42 U.S.C. § 16911(1). A "sex offense" under SORNA is, among other things, "a criminal offense [federal, state, local, tribal, military, or foreign] that has an element involving a sexual act or sexual contact with another." 42 U.S.C. § 16911(5)(A).

and palm prints, DNA sample, and a photocopy of a driver's license or identification card. 42 U.S.C. § 16914(b)(1)-(8). Certain information about the sex offender is also mandated to be published on an internet website. *See* 42 U.S.C. § 16918. Each jurisdiction is required to substantially implement the requirements of SORNA by July 27, 2009, or risk a reduction in federal grants. *See* 42 U.S.C. §§ 16294(a)(1) and 16925(a) (2007).

SORNA also outlines when and how a sex offender should register under the Adam Walsh Act:

(a) In general
A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

(b) Initial registration
The sex offender shall initially register –
> (1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
> (2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

(c) Keeping the registration current
A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

(d) Initial registration of sex offenders unable to comply with subsection (b) of this section
The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who

-4-

are unable to comply with subsection(b) of this section.

42 U.S.C. § 16913.  Further, SORNA imposes criminal penalties of up to ten years imprisonment on individuals who are required to register as sex offenders,[5] who travel in interstate commerce **or** have been convicted of qualifying federal offenses, and knowingly fail to register or update their registration:

> (a) In general – Whoever--
>
>> (1) is required to register under [SORNA];
>> (2) (A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
>> (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
>> (3) knowingly fails to register or update a registration as required by [SORNA];
>
> shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a).

In February 2007, the Attorney General promulgated an interim rule clarifying that the registration requirements in SORNA applies retroactively.  This interim rule became effective upon publication on February 28, 2007.  The new regulation, found at 28 C.F.R. Part 72, Section 72.1, provides:

> This part specifies the applicability of the requirements of the Sex Offender Registration and Notification Act to sex offenders convicted prior to the enactment of that Act.  These requirements include registering and keeping the registration current in each jurisdiction in which a sex offender resides, is an employee, or is a student.  The Attorney General has the authority to specify the applicability of the

---

[5]    "Sex offender" is defined under 42 U.S.C. § 16911(1).

Act's requirements to sex offenders convicted prior to its enactment under sections 112(b) and 113(d) of the Act.

The new 28 C.F.R. Part 72, Section 72.2 states:

All terms sed in this part are defined in section 111 of the Sex Offender Registration and Notification Act (title 1 of Pub.L. 109-248) shall have the same definitions in this part.

The new 28 C.F.R. Part 72, Section 72.3 states:

The requirements of the Sex Offender Registration and Notification Act apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act.

The "Supplementary Information" portion of the interim rule states in relevant part:

The current rulemaking serves the narrower, immediately necessary purpose of foreclosing any dispute as to whether SORNA is applicable where the conviction for the predicate sex offense occurred prior to the enactment of SORNA. This issue is of fundamental importance to the initial operation of SORNA, and to its practical scope for many years, since it determines the applicability of SORNA's requirements to virtually the entire existing sex offender population.

. . .

This rule forecloses such claims by making it indisputably clear that SORNA applies to all sex offenders (as the Act defines that term) regardless of when they were convicted. The Attorney General exercises his authority under section 113(d) of SORNA to specify this scope of application for SORNA, regardless of whether SORNA would apply with such scope absent this rule, in order to ensure the effective protection of the public from sex offenders through a comprehensive national system for the registration of such offenders.

72 Fed. Reg. 8894, 8896 (Feb. 28, 2007) (footnote omitted).

Prior to SORNA's passage, the Jacob Wetterling Act was in place, codified at 42 U.S.C. §

14071, *et seq*., which was initially signed into law on September 13, 1994. This Act provided

federal funding to states which enacted sex offender registration laws commonly referred to as "Megan's Laws."[6]  While the Act was primarily regulatory in nature, the Act also provided criminal penalties of up to one year for a first offense and up to ten years for subsequent offenses for sex offenders who failed to register as a sex offender in any state they resided, worked, or was a student. *See* 42 U.S.C. § 14072(I).  By 1996, every state, the District of Columbia and the federal government enacted some variation of Megan's Law.

## II.  ARGUMENT

Bournes's motion to dismiss advances a number of arguments challenging the statutory application and constitutionality of SORNA.   Specifically, Bournes argues that the pending indictment is due to be dismissed on the following grounds: (1) he cannot be convicted of violating SORNA because Alabama has not implemented SORNA; (2) punishing him for violating SORNA would violate the *Ex Post Facto* Clause of the United States Constitution because the crime does not yet apply to him due to Alabama's failure to implement SORNA; (3) punishing him for violating SORNA would violate the Due Process Clause of the United States Constitution because SORNA has not been implemented in Alabama and he was not notified of his obligation to register under SORNA; (4) Congress violated the non-delegation doctrine by authorizing the Attorney General to determine whether SORNA applied retroactively; (5) the regulations issued by the Attorney General pursuant to SORNA violate the Administrative Procedures Act because they were implemented without notice and comment; and (6) Congress exceeded its power under the Commerce Clause in enacting SORNA's registration requirements and creating a federal crime to fail to register.  (Doc.

---

[6]     The term "Megan's Law" was named after Megan Kanka, a seven-year old New Jersey girl was who sexually assaulted and murdered by a neighbor who, unknown to the victim's family, had prior sex offenses against children.

# 28.)

At the outset, the United States notes that no court of appeals has addressed Bournes's arguments. Since the enactment of SORNA, district courts around the country have addressed the same or similar arguments raised by Bournes. In said cases, these courts have mostly rejected such arguments for varying reasons. In light of such persuasive precedent, the United States addresses each argument raised by Bournes in turn and submits that Bournes's arguments are due to be rejected by this Court.

### A.       SORNA Applies To Bournes Despite Alabama's Failure to Implement SORNA

Bournes argues that SORNA does not apply to him because: (1) Alabama has not yet implemented SORNA's sex offender registry requirements, (2) the Attorney General has not issued regulations making SORNA applicable to persons convicted before SORNA's implementation in a particular jurisdiction; and (3) he was unable to initially register as required under Section 16913(b) because it was impossible for him to do so in light of Alabama's failure to implement SORNA. (Doc. # 28 at 8-11.) The United States submits that these arguments miss the mark.[7]

To convict a state sex offender like Bournes for violating 18 U.S.C. § 2250, the United States must establish three elements: (1) Bournes  was required to register under SORNA (i.e., the defendant was convicted of a "sex offense"), (2) Bournes traveled in interstate commerce, and (3) Bournes knowingly failed to register or update a registration as required by SORNA. *United States v. Hinen*, 487 F. Supp. 2d 747, 750 (W.D. Va. 2007); *United States v. Hester*, 2008 WL 351677, *1

_____

[7] These same arguments have been repeatedly rejected by other district courts. *E.g., United States v. Gould*, --- F. Supp. 2d --, 2007 WL 4371417 (D. Md. Dec. 13, 2007); *United States v. Pitts*, 2007 WL 3353423 (M.D. La. Nov. 5, 2007); *United States v. Waybright*, __ F. Supp. 2d __, 2008 WL 2380946, * 16 (D. Mont. June 11, 2008)*; United States v. Fuller*, 2008 WL 2437869, * 2-3 (N.D. N.Y. June 13, 2008).

-8-

(N.D. N.Y. 2008).

In § 16913(d), Congress delegated to the Attorney General the authority to specify the applicability of the initial registration requirements to sex offenders convicted prior to July 27, 2006, who are unable to comply with the initial registration requirements in § 16913(b). 42 U.S.C. § 16913(d). As noted *supra,* on February 28, 2007, the Attorney General of the United States issued interim regulations making the requirements of SORNA retroactive to all sex offenders. Title 28, C.F.R. § 72.3 states: "The requirements for [SORNA] apply to ***all sex offenders***, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." (emphasis added). As aforementioned, SORNA was enacted on July 27, 2006. Thus, pursuant to the plain language of the Attorney General's Interim Regulations, SORNA's registration requirements applied to Bournes beginning on February 28, 2007. *See United States v. Madera,* __ F.3d __, 2008 WL 2151267, *4 (11th Cir. May 23, 2008) (holding that defendant could not be prosecuted for SORNA violation as alleged in indictment because the indictment concerned his failure to register during gap period between SORNA's enactment and Attorney General's retroactivity determination).

Contrary to Bournes's assertion, the implementation of SORNA's registry requirements by a state is immaterial to SORNA's application to sex offenders located in that state. *See United States v. Fuller,* 2008 WL 2437869, *2 (N.D. N.Y. June 13, 2008) ("Whether the State of Missouri updates it registry in conformance with SORNA has nothing to do with Defendant's obligations . . . SORNA's registration requirements applied to Defendant from the moment SORNA was enacted."). Section 16913(a) makes SORNA's registration requirements applicable to all sex offenders

regardless of whether SORNA has been implemented in a particular jurisdiction.[8]  It states, "[a] sex offender shall register, and keep registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student."  42 U.S.C. § 16913(a). Congress did not limit SORNA's "applicability to persons convicted in or residing in jurisdictions that have implemented SORNA."  *United States v. Waybright*, __ F. Supp. 2d __, 2008 WL 2380946, *16 (D. Mont. June 11, 2008).  Thus, because the plain language of SORNA makes it applicable to Bournes, he was required to register even though Alabama has not implemented SORNA.  *See id.*

Moreover, the Attorney General need not specify whether SORNA applies before its implementation in a particular jurisdiction.  Section 16913(d) provides, in relevant part, that "[t]he Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 *or* its implementation in a particular jurisdiction."  42 U.S.C. § 16913(d) (emphasis added); *see Madera*, 2008 WL 2151267 at *4 (noting that 42 U.S.C. § 16913(d) is comprised of two clauses: one giving "the Attorney General authority to determine whether SORNA applies retroactively to *all sex offenders*" and the other giving "the Attorney General authority to promulgate rules regarding initial registration") (emphasis added).  No provision in SORNA establishes that the Attorney General's determination of SORNA's retroactivity is contingent upon or even correlated to SORNA's implementation in a particular jurisdiction.  Here, Bournes is trying to create smoke where there is no fire.  As the Eleventh Circuit has stated: "*It is now clear*, following the Attorney General's pronouncement of the interim rule, that SORNA is to

---

[8]  Notably, states have until July 27, 2009, to implement SORNA, and as of yet no state has done so.  *See United States v. Gould,* __ F. Supp. 2d __, 2007 WL 4371417, *2 (D. Md. Dec. 13, 2007); *United States v. Pitts,* 2007 WL 3353423, * 8 (M.D. LA. November 7, 2007).

be retroactively applied to sex offenders convicted prior to SORNA's enactment." *Madera,* 2008 WL 2151267at *3 (emphasis added). Hence, no future action on the part of the Attorney General is required to make SORNA applicable to Bournes.

Finally, Bournes's argument that Alabama's failure to implement SORNA made it impossible for him to "initially register" as required under Section 16913(b) is without merit. SORNA requires that sex offenders initially register "before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment." 42 U.S.C. § 16913(b). However, SORNA also requires that sex offenders maintain a registration by informing the relevant jurisdiction of "each change of name, residence, employment, or student status." 42 U.S.C. § 16913(c). Bournes's argument completely ignores his continuing obligation under § 16913(c) to register in Alabama in order to keep his registration current.

In addition, Alabama's failure to update its registry and procedures to conform with SORNA has no bearing on Bournes's independent obligation to register certain information. The fact that SORNA's notification and registration requirements are broader than the registration requirements in Alabama does not affect SORNA's application to Bournes.

> To be sure, the registration requirements in [most states] do not meet all of SORNA's requirements. But defendant is not being prosecuted for providing less information than SORNA requires; he is being prosecuted for failing to register at all. The fact that the states have not yet met their obligations under SORNA (they have until July 27, 2009, to do so), is of no consequence in determining whether it was possible for the Defendant to meet his own obligations under the act.

*Waybright*, 2008 WL 2380946 at *16 (citing *United States v. Utesch*, 2008 WL 656066, *8 (E.D.

Tenn. Mar. 6, 2008)).  Likewise, in this case, Bournes is not being prosecuted for providing less information to the State of Alabama than SORNA requires.  Rather, Bournes is being prosecuted for failing to register in Alabama after relocating from Florida.[9]  While Bournes asserts that Alabama has not implemented SORNA, he does not provide any evidence that it was impossible for him to register as a sex offender in Alabama or that he was impeded from performing this task.[10]  Such registration was possible because Alabama maintained a sex offender registry both before and after SORNA's enactment.  *See* Ala. Code § 13A-11-201 (1975).  Bournes could have chosen to register as a sex offender in Alabama, and thereby complied with SORNA.[11]  Because Bournes was able to register under existing Alabama state law as a sex offender, the indictment should not be dismissed on the basis that Alabama has not yet implemented the SORNA registration and notification requirements.  Accordingly, this Court should find that "[Alabama's] failure to implement SORNA does not preclude [Bournes's] prosecution under § 2250(a)."  *Gould*, 2007 WL 4371418 at *2; *also Fuller*, 2008 WL 2437869 at *3 (holding that SORNA applied to Defendant when he traveled in interstate commerce even though New York had not implemented SORNA).

---

[9]  Under Alabama law, Bournes, as a resident of Alabama, was clearly required to register as a sex offender.  *See* Ala. Code § 13A-11-200, *et seq*.

[10]  Several district courts have similarly held that, even where the state in which the defendant was supposed to register pursuant to SORNA had not yet implemented SORNA, "compliance was not impossible . . . ."  *E.g., United States v. Fuller*, 2008 WL 2437869, *2-3 (N.D.N.Y. June 13, 2008); *United States v. Hester,* 2008 WL 351677, *2 (N.D.N.Y. Feb. 7, 2008); *United States v. Utesch,* 2008 WL 656066, *5 (E.D. Tenn. Mar. 6, 2008); *United States v. Adkins,* 2007 WL 4335457, *6 (N.D. Ind. Dec. 7, 2007).

[11]  *See United States v. Bennett,* 2007 WL 2461696, *1 (W.D. Ak. Aug. 27, 2007) ("A defendant is required by SORNA to comply with registration obligations imposed by other laws."); *Pitts,* 2007 WL 3353423 at * 8 (same); *United States v. Mitchell,* 2007 WL 2609784, * 2 (W.D. Ak. Sept. 6, 2007) (explaining that "no new duties were imposed by SORNA nor did SORNA impair any rights of the defendant when he failed to register").

Lastly, Bournes's reliance on the SMART Guidelines is misplaced. Part of Congress's directive under the Adam Walsh Protection Act was for the Department of Justice ("DOJ") to establish an Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking ("SMART"). 42 U.S.C. § 16945. As part of its mission, the SMART office developed guidelines to interpret and implement SORNA. These guidelines ("SMART Guidelines") are posted on the internet, *see* www.ojp.usdoj.gov/smart/guidelines_final.htm, and published in the Federal Register, *see* Notices: Department of Justice: The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38030-01 (July 2, 2008).[12] However, the SMART Guidelines, just as any other DOJ guidelines, are not constitutional in nature and a violation of them is not cognizable on a motion to dismiss indictment.[13]

**B.    SORNA's Application to Bournes Does Not Violate The *Ex Post Facto* Clause**

Bournes argues that his prosecution for violating 18 U.S.C. § 2250 violates the *Ex Post Facto* Clause of the Constitution, as it was not applicable to him on the basis that Alabama has not yet implemented the SORNA registration and notification requirements. (Doc. # 28 at 12.) This argument is also due to be rejected by this Court.

The *Ex Post Facto* Clause "forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.' " *Weaver v. Graham,* 450 U.S. 24, 28 (1981)

---

[12] The final guidelines for SORNA were published in the Federal Register on July 2, 2008.

[13] Numerous circuit courts have similarly held that DOJ guidelines, policies, and manuals do not create any enforceable procedural or substantive rights for criminal defendants. *See United States v. Wilson*, 413 F.3d 382, 389 (3rd Cir. 2005) (listing cases from First, Second, Sixth, Ninth, and D.C. Circuits); *United States v. Myers*, 123 F.3d 350, 355-56 (6th Cir.1997).

(quotation, other citations and footnote omitted).  Thus, a law is *ex post facto* if it (1) has retroactive

effect and (2) is more onerous than the law in effect on the date of the offense.  *See id.* at 29 (citation

and footnotes omitted); *Collins v. Youngblood,* 497 U.S. 37, 42 (1990) (quotation omitted).  As

aforementioned, *supra*, SORNA was applicable to Bournes when he traveled to Alabama and failed

to register thus it does not have a retroactive effect.  *See Fuller*, 2008 WL 2437869, *3.

### C.    SORNA's Application to Bournes Does Not Violate The Due Process Clause

Bournes's due process argument is two-fold.  First, Bournes argues that Alabama's failure

to implement SORNA's registration and notification requirements meant that he was "unable" to

comply with 18 U.S.C. § 2250 and that "[c]riminalizing the failure to do something that is

impossible to do violates the Due Process Clauses's guarantee of fundamental fairness." (Doc. # 28

at 13.)  Second, Bournes argues that "SORNA explicitly directs the Attorney General to prescribe

regulations to notify" sex offenders whose convictions predate SORNA and who are no longer in

custody or awaiting sentencing on those offenses.  (*Id*. at 14.)  Because the Attorney General has not

issued such regulations, Bournes contends that he did not receive notice of SORNA and his SORNA

prosecution violates due process.  (*Id*. at 16.)

### 1.    The Due Process Clause Is Not Violated By SORNA's Application To Bournes Despite Alabama's Failure to Implement SORNA

Bournes, citing 42 U.S.C. § 16913(d), argues that Alabama's failure to adopt SORNA

registration and notification requirements meant that he was "unable" to comply with 18 U.S.C. §

2250,.  Section 16913(d) , provides, in relevant part:

(d) Initial registration of sex offenders unable to comply with subsection (b) of this section

The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

42 U.S.C. § 16913(d)  Based on subsection (d), the Attorney General issued the interim rule providing that the requirements for SORNA apply to all sex offenders, ***including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act.***" (emphasis added). Title 28, C.F.R. § 72.3.

The United States submits that Bournes' misreading of Section 16913(d) and the interim rule as support for his argument that is impossible for him to register under SORNA until the SORNA procedures are implemented by Alabama is incredible.  As discussed, *supra*, SORNA applied to Bournes when he traveled to Alabama[14] thus Alabama's failure to implement SORNA did not impede Bournes from providing state officials with the information required under Alabama law.  *See Fuller*, 2008 WL 2437869, *3 (rejecting this argument); *United States v. May*, 2007 WL 2790388 (S.D. Iowa Sept. 24, 2007) (same); *United States v. Hinen*, 487 F. Supp.2d 747, 750-51 (W.D. Va. 2007).  Consequently, Bournes is properly subject to the penalties provided in Title 18,

---

[14] As set forth in procedural background above, Bournes is charged with failing to register or update a registration between August 2007 and November 2007.  Hence, Bournes' interstate travel occurred and he failed to register after the Attorney General's Interim Rule.  The cases relied upon by Bournes in his brief are inapposite.  For instance, unlike the case herein, in *United States v. Smith*, 528 F. Supp. 2d 615 (S.D.W. Va. 2007) and *United States v. Barnes*, 2007 WL 2119895 (S.D. NY. July 23, 2007), the alleged failure to register or update a registration occurred prior to February 28, 2007.  In *Barnes*, the district judge found that notice was insufficient when the defendant was arrested on the same day that the Attorney General's interim rule went into effect, thus giving him no time to register.  2007 WL 2119895, *5-6.  In *Smith*, the district court dismissed the indictment because the defendant was charged with conduct that pre-dated the Attorney General's interim rule. For these reasons, Bournes's reliance on those cases is wholly misplaced.  528 F. Supp. 2d at 620.

United States Code, Section 2250 based on his conduct as charged which occurred between aboutAugust 2007 and November 2007 – a time which unquestionably post-dates not only the enactment of SORNA but also the promulgation of the Attorney General's interim regulations. Bournes's arguments to the contrary ignore both the plain language of the statute and of his own indictment. Bournes was charged not only with initially failing to register as a sex offender (following his move to Alabama) but also with continuing to fail to register or update his registry (in Florida). As a result, there is no question Bournes is properly subject to the duly enacted provisions of SORNA, and subject to criminal liability for failing to adhere to its requirements.

>    2.    The Due Process Clause Is Not Violated By SORNA's Application To Bournes As The Duty To Register Under SORNA Is Not Dependent On Specific Notification From The Government Of SORNA's Provisions

Bournes submits that § 16917 requires that the Attorney General affirmatively inform offenders as to the duty to register. (Doc. # 28 at 14.) Bournes alleges that he was not informed about his duty to register under SORNA and, therefore, this prosecution violates his due process rights. (*Id.*) In support of his argument, the defendant relies on the Supreme Court's decision in *Lambert v. California*, in which the Supreme Court invalidated a Los Angeles county ordinance for failure to register as a felon as it criminalized "passive" conduct. 355 U.S. 225 (1958).

Section 16917 provides:

>    (a) In general
>
>    An appropriate official shall, shortly before release of the sex offender from custody, or, if the sex offender is not in custody, immediately after the sentencing of the sex offender, for the offense giving rise to the duty to register–
>    >    (1) inform the sex offender of the duties of a sex offender under this subchapter and explain those duties;

(2) require the sex offender to read and sign a form stating that the duty to register has been explained and that the sex offender understands the registration requirement; and
(3) ensure that the sex offender is registered.

(b) Notification of sex offenders who cannot comply with subsection (a) of this section

The Attorney General shall prescribe rules for the notification of sex offenders who cannot be registered in accordance with subsection (a) of this section.

42 U.S.C. § 16917.[15]

Bournes's argument that he failed to receive "notice and fair warning" under the reasoning of *Lambert*, *supra*, is unavailing given that he previously registered in Florida, traveled to Alabama after the enactment of § 2250, and was arrested well after the Attorney General promulgated an interim rule clarifying that the registration requirements in SORNA apply to him. *See, e.g., Gould*, 2007 WL 4371418 at *4 (stating that the defendant "was well aware of his duty to update his registration in Pennsylvania, and he had previously been convicted of failing to provide necessary registration information in West Virginia"). Further, Bournes's understanding of the registry process in Florida "demonstrates that he was not a passive participant who was unaware of the illegality of failing to register." *Id.* The United States is not suggesting that Bournes had to provide the details provided under SORNA. Rather, what is required is that he merely comply with existing state law, which he did not do.[16]

---

[15] Although Section 16917(a) states that an official must give notice to a sex offender shortly before his release from custody, or immediately after sentencing if the offender is not sentenced to prison, receipt of such notice is not an element of a 18 U.S.C. § 2250 offense. *United States v. Zuniga*, 2008 WL 2184118, * 15 (D. Neb. May 23, 2008).

[16] Both substantive and procedural due process challenges against SORNA have been uniformly rejected by other district courts. *E.g., United States v. Kelton,* 2007 WL 2572204 (M.D.

Moreover, *Lambert* is clearly distinguishable from this case. In *Lambert*, the Supreme Court struck down a Los Angeles city ordinance that required persons convicted of a felony to register if they remained in the City for more than five days. 355 U.S. at 226, 229-30. The Court recognized an exception to the general principle that ignorance of the law is no excuse. *Id.* at 228. Specifically, the Court determined a conviction based on wholly passive conduct where the defendant is unaware of any wrongdoing violates due process. *Id.* The Court also noted the lack of circumstances in *Lambert* which might have moved the defendant to inquire as to the necessity of registration. *Id.* at 229. Here, even if Bournes was unaware of his SORNA registration obligations, he knew of his obligation to keep his registration current and notify law enforcement of any change of residence under Florida law. Bournes signed a "Sexual Offender Notice of Responsibilities" on March 16, 2006, and "Notice of Predator/Offender Responsibilities as Required by Statute" on September 4, 2006. (Exs. 4 & 5.) By signing these forms, he demonstrated that he understood his obligation to report any change of address to law enforcement authorities in Florida and to register and comply with the registration laws of any state to which he moved. These forms also informed Bournes that he could be charged with a state offense if he failed to register. Thus, unlike the defendant in *Lambert,* Bournes cannot claim he was unaware of any wrongdoing. *See United States v. Howell*, 2007 WL 3302547, *16-17 (N.D. Iowa Nov. 8, 2007). *Accord United States v. Ambert*, 2007 WL 2949476, * 6 (N.D. Fla. Oct. 10, 2007); *May*, 2007 WL 2790388 at * 6 (S.D. Iowa Sept. 24, 2007); *Hinen*, 487 F. Supp. 2d 747, 751-53 (W.D. Va 2007); *United States v. Roberts*, 2007 WL 2155750,

---

Fla. Sept. 5, 2007); *United States v. Mason*, 2007 WL 1521515 (M.D. Fla. May 22, 2007); *United States v. Gonzales*, 2007 WL 2298004 (N.D. Fla. Aug. 9, 2007).

* 2 (W.D.Va. July 27, 2007); *United States v. Manning*, 2007 WL 624037, * 2(W.D. Ark. Feb. 23, 2007).

The Due Process Clause does not require specific notice that failure to register as a sex offender violates the federal law set forth in SORNA. As the district judge in *Roberts* explained:

> Few offenders have ever had relevant sections of the U.S. Code read to them before committing their crimes, yet they are expected to comply with it even so. Owners of firearms, doctors who prescribe narcotics, and purchasers of dyed diesel are all expected to keep themselves abreast of changes in the law which affect them, especially because such people are on notice that their activities are subject to regulation.

2007 WL 2155750, at *2. The *Roberts* court found sex offenders to be no different and found they must comply with the law even if it changes suddenly and without notice. *Id*. Hence, sufficient due process is afforded if a defendant had notice that failing to register or update his sex offender registration was illegal. *See Howell*, 2008 WL 313200 at *8 (holding that a defendant who registered as a sex offender in Michigan, but failed to register upon moving to Iowa had sufficient notice his conduct was illegal, particularly since a defendant "is presumed to know the law"); *United States v. Samuels*, 543 F. Supp. 2d 669, 674 (E.D. Ky. 2008) (denying defendant's due process claim where the defendant received no notice of the SORNA requirements, but knew he was required to update his sex offender registration under New York law); *United States v. Dixon*, 2007 WL 4553720, *4 (N.D. Ind. Dec. 18, 2007) (denying defendant's due process challenge even though SORNA was enacted after he traveled and failed to register in another state and neither state had implemented the SORNA requirements); *Gould*, 526 F. Supp. 2d at 544-545 (holding defendant's prior knowledge of a duty to register under state law was effective notice under SORNA and defeated his due process claim); *Pitts*, 2007 WL 3353423 at *7) (holding due process requirements were met where the

defendant knew he was required to register under state law); *United States v. Lovejoy*, 516 F. Supp. 2d at 1032, 1038 (D.N.D. Sept. 28, 2007) (denying defendant's due process challenge where the defendant knew he was required to register as a sex offender under North Dakota law, and his failure to do so occurred after SORNA was enacted and the Attorney General published its interim rule); *May*, 2007 WL 2790388 at *6 (denying a due process challenge and holding ignorance of the law was no excuse where the defendants knew they had an obligation to keep their state sex offender registrations current and received information regarding those registration obligations); *United States v. Kent*, 2007 WL 2746773 at *1 (S.D. Ala. Sept. 20, 2007) (denying defendant's due process claim where, although he received no notice of SORNA's requirements, the defendant received notice that failing to register was illegal); *Marcantonio*, 2007 WL 2230773 at *2 (denying due process challenge where the defendant knew he was under an obligation to register under state law); *Roberts*, 2007 WL 2155750 at *2 (denying defendant's motion to dismiss for lack of due process where the defendant was not aware of SORNA, but knew he was required to update his sex offender registration under state law and failed to do so upon moving to another state); *Hinen*, 487 F. Supp. 2d at 754 (holding those convicted of sex offenses are placed on constructive notice that they may be subjected to future regulations because of the nature of their criminal conviction).

Further, Bournes's reliance on the proposed SMART Guidelines is similarly misplaced. Bournes argues that he cannot be convicted absent the specific notification required under the SMART Guidelines. The SMART Guidelines provide:

> With respect to sex offenders with pre-SORNA or pre-SORNA-implementation convictions who remain in the prisoner, supervision, or registered sex offender populations at the time of implementation–illustrated by the examples in the first and second bullets above–jurisdictions should endeavor to register them in conformity with SORNA as quickly as possible, including fully instructing them about the

> SORNA requirements, obtaining signed acknowledgments of such instructions, and obtaining and entering into the registry all information about them required under SORNA. But it is recognized that this may entail newly registering or re-registering a large number of sex offenders in the existing sex offender population, and that it may not be feasible for a jurisdiction to do so immediately.

73 Fed. Reg. at 38063.

The detail required of an offender after a jurisdiction implements SORNA is much more than currently required under most state laws. The SMART Guidelines relied on by Bournes are designed to inform states that they must specifically notify offenders as to the new procedures. In no way do the SMART Guidelines suggest that existing state laws should be ignored. In fact, an example cited therein addresses this exact situation.

> A sex offender is required to register for life by a jurisdiction based on a rape conviction in 1995 for which he was released from imprisonment in 2005. The sex offender was initially registered prior to his release from imprisonment on the basis of the jurisdiction's existing law, but the information concerning registration duties he was given at the time of release did not include telling him that he would have to appear periodically in person to verify and update the registration information (as required by SORNA § 116), because the jurisdiction did not have such a requirement at the time. So the sex offender will have to be required to appear periodically for verification and will have to be given new instructions about that as part of the jurisdiction's implementation of SORNA.

73 Fed. Reg. at 38063, *Example 2.*

Additionally, SORNA does not explicitly direct the Attorney General to prescribe regulations to notify sex offenders whose convictions predate SORNA and who are no longer in custody or awaiting sentencing on those offenses. As stated in *Hinen,* 487 F. Supp. 2d at 753 (W. D. Va. May 12, 2007):

> The terms of [SORNA] do not mandate that those already registered as sex offenders or those who should have been registered as sex offenders receive any specific notice regarding its requirements. The

> fact that the defendant may not have been advised of the specific
> requirements of SORNA is not determinative.

Hence, Bournes's knowledge of the Florida's sex offender registration obligations is sufficient to

establish liability under SORNA. "Laws requiring sex offenders to register are numerous and long-

standing. SORNA is not the first federal statute to regulate sex offenders who fail to comply with

state registration requirements." *Hinen,* 487 F. Supp. 2d at 754 (citing Jacob Wetterling Act of 1994,

42 U.S.C. § 14071).

> Individuals convicted of certain conduct are placed on constructive
> notice that they may be subjected to future regulations because of the
> nature of their criminal conviction. In this instance, the defendant
> was convicted of committing a sex crime . . . . By committing this
> crime, the defendant removed himself from the class of ordinary
> citizens to the point that cannot reasonably expect to be free from
> regulation as a sex offender, especially when relocating to another
> jurisdiction.

*Id*. Bournes's conduct post-dates the passage of 18 U.S.C. § 2250, and the Attorney General's

interim rule. Therefore, he also had constructive notice of the law. Accordingly, Bournes clearly

had sufficient notice that his conduct would violate the law, and specific notification under SORNA

is not required.[17] Subsequently, this Court should conclude that Bournes's prosecution here, without

notification of SORNA's specific requirements and penalties, does not violate due process.

---

[17] As expressed by the district court in *Samuels*: "If failure to have specific knowledge of the
particular statute you have been accused of violating were a prerequisite to conviction, there would
rarely, if ever, be a conviction. Due process does not require specific notice." 543 F. Supp. 2d at
674.

**D.      Congress Did Not Violate The Non-Delegation Doctrine By Delegating The Rulemaking Authority Under 18 U.S.C. § 2250 To The Attorney General**

Bournes argues that even if he were subject to SORNA, Congress unconstitutionally delegated power to another branch of government by granting to the Attorney General under 42 U.S.C. § 16913(d) the authority to promulgate a rule for those offenders unable to register under Title 42, United States Code, Section 16913(b).  Although the doctrine of separation of powers is a fundamental part of the American Government, *Mistretta v. United States*, 488 U.S. 361, 371-72 (1989), long-standing precedent has held that Congress may give authority to promulgate rules and create law to a party outside the legislative branch as long as it provides an "intelligible principle" to the delegated party.  *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 409 (1928).  Congress, in delegating limited rulemaking authority to the Attorney General in Section 16913(d), provided such an intelligible principle to the Attorney General thereby making its delegation constitutional.  *See Gould*, 2007 WL 4371418 at *5 (noting that the Attorney General's role in determining the retroactivity of SORNA to offenders convicted before SORNA's enactment is "not entirely new ground for the DOJ, as the Attorney General had previously been tasked with enforcing SORNA's predecessor offender statute").

All courts which have so far considered this non-delegation argument in connection with constitutional challenges to SORNA have rejected it.  *See United States v. Waybright*, __ F. Supp. 2d __, 2008 WL 2380946, * 14 (D. Mont. June 11, 2008)*; United States v. Natividad-Garcia*, __ F. Supp. 2d __, 2008 WL 2353357, * 4 (W. D. Tex. June 4, 2008); *United States v. Zuniga*, 2008 WL 2184118, *12-14 (D. Neb., May 23, 2008); *United States v. Utesch*, 2008 WL 656066, *10 (E.D. Tenn. March 6, 2008); *United States v. Hacker*, 2008 WL 312689, *6-7 (D. Neb. Feb. 1, 2008);

*United States v. Howell*, 2008 WL 313200, *6-7 (N.D. Iowa Feb. 1, 2008); *Samuels*, 2008 WL 169792 at *8-9; *United States v. LeTourneau*, 534 F. Supp. 2d 718, 724-25 (S.D. Tex. Jan. 9, 2008); *United States v. Dixon*, 2007 WL 4553720, *5-6 (N.D. Ind. Dec. 18, 2007); *Gould,* 2007 WL 4371418 at *4-5; *United States v. Cardenas*, 2007 WL 4245913, * 13 (S.D. Fla. Nov. 29, 2007); *United States v. Howell*, 2007 WL 3302547 (N.D. Iowa Nov. 8, 2007); *United States v. Pitts*, 2007 WL 3353423 (M.D. La. Nov. 7, 2007); *United States v. Gill*, 520 F. Supp. 2d 1341, 1349; (D. Utah. Oct. 15, 2007); *United States v. Ambert*, 2007 WL 2949476, * 7 (N.D. Fla. Oct. 10, 2007); *United States v. Lovejoy,* 516 F. Supp. 2d 1032, 1035 (D.N.D. Sept. 28, 2007); *United States. v. Kelton*, 2007 WL 2572204, *1 (M.D. Fla. Sept. 5, 2007); *United States. v. Sawn*, 2007 WL 2344980, *3 (W.D. Va. Aug. 15, 2007); *United States v. Gonzalez*, 2007 WL 2298004,* 9 (N.D. Fla. Aug. 9, 2007); *United States v. Mason*, 510 F. Supp. 2d 923, 927-28 (M.D. Fla. May 22, 2007)*; United States v. Hinen*, 487 F. Supp. 2d 747, 751-753 (W.D. Va. May 12, 2007)*; United States v. Madera*, 474 F. Supp. 2d 1257, 1261-1262 (M.D. Fla. Jan. 17, 2007).

As the court stated in *Hinen,* 487 F. Supp. 2d at 751-52, Congress only delegated the authority to the Attorney General to issue a rule covering the limited instance where a person classified as a sex offender under SORNA is unable to currently register -- a situation which would be rare, but possible since SORNA classified a number of offenses as sex crimes for which some states have traditionally not required registration.  Because this delegation is so narrowly tailored, and only applies to those offenders who were not required to register under a previous state statute but whom Congress intended to register under SORNA, such a delegation is permissible.[18]  In other

---

[18] As the court in *Waybright* explained:

This reading of limited authority delegated in Section 16913(d) is supported by the

words, in delegating to the Attorney General in this situation, "Congress neither delegated excessive legislative power nor upset the constitutionally mandated balance of powers among the coordinate Branches." *Mistretta,* 488 U.S. at 412.

Even assuming *arguendo* that the Attorney General has broad authority under § 16913(d) to determine the applicability of SORNA to *all* offenders rather than just to those who may not have been able to previously register, under the canon of constitutional avoidance, a preponderance standard favors finding that Congress did not impermissibly delegate to the Attorney General. *See Gonzales v. Carhart*, 127 S. Ct. 1610, 1631 (2007) (stating that elementary rules of statutory construction mean that every reasonable interpretation should be used to save a statute from unconstitutionality); *see also Edward J. DeBartolo Corp v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (holding that "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress."). Since it was not Congress's intent to give all control over sex offender registration to the Attorney General when it created SORNA and Section 2250, the statutes should not be read to create such constitutional concerns.

Here, Bournes was a sex offender as defined by SORNA on the date of the statute's enactment, July 27, 2006, and was required under Sections 16913(a) and (c) to register and keep his

---

heading of that section: 'Initial Registration of sex offenders unable to comply with subsection (b) of this section. . . . It is also supported by the purpose of the Act. SORNA was conceived as a comprehensive national sex offender registry. 42 U.S.C. § 16901. To construe § 16913(a) so as to preclude within its scope all sex offenders convicted before July 26, 2006, would defeat the express purpose of the Act.

2008 WL 2380946 at *14.

registration current.  Bournes was able to register as a sex offender prior to the enactment of SORNA, and in fact did so in Florida prior to his travel to Alabama.  Despite knowledge of his ongoing obligation to register and to keep his registration current, Bournes failed to register when he moved to Alabama following SORNA's enactment.  As is evident from these facts, Bournes did not fall into that small category of offenders unable to register as described in Section 16913(d), and did not fall into the category for which the Attorney General was to promulgate registration rules. Therefore, Bournes's failure to register was a violation of SORNA's requirements and he was properly charged with a violation of Title18, United States Code, Section 2250(a).

> ### E.    The Attorney General's Regulation Was Not Issued In Violation Of The Administrative Procedures Act

As noted earlier, the Attorney General, following Congress's directive under 42 U.S.C. § 16913(d), issued implementing regulations under 28 C.F.R. § 72.1, *et seq.*  However, Bournes argues that the rules are invalid because they were implemented based on the "good cause" exception found in the Administrative Procedures Act ("APA").

Bournes lacks standing to pursue this APA claim.  *See Lujuan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (requiring a causal connection between the injury and the conduct complained of to assert standing).  As discussed above, § 16913(d) only authorizes the Attorney General to promulgate regulations relating to persons who were unable to initially register under SORNA because their crime of conviction did not require registration under federal law or state law at the time of the conviction.  Bournes does not fall into this narrow class of persons.  Bournes was required to register as a sex offender under Florida law after his convictions for handling and fondling a child.  *See* Fla. Stat. §§ 775.21, 943.0435, 944.607.  Thus, Bournes was required to

register pursuant to § 16913(a), not as a result of the regulations promulgated pursuant to § 16913(d). Because SORNA's requirements applied to Bournes without any action by the Attorney General, Bournes' injury is not traceable to the alleged APA violation.

Assuming *arguendo* that Bournes has standing to pursue this APA claim, the United States submits that the DOJ's interim rules were not issued in violation of the APA. Title 5, United States Code, Section 553 addresses rule-making by agencies. Section 553 requires an agency to give public notice of a proposed regulation at least thirty days before its effective date and solicit comment form the public. 5 U.S.C. § 553(b)-(c). Subsection (b) does not apply, however, when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest. 5 U.S.C. § 553(b)(3)(B). Subsection (d) states that publication of a substantive rule should be made not less than 30 days before its effective date except "as otherwise provided by the agency for good cause found and published with the rule." 5 U.S.C. § 553(d)(3).

Here, the DOJ followed the mandates of the APA. The DOJ found, for good cause, that implementing the interim rule with prior notice and public comment would be contrary to the public interest. More specifically, the interim rule states that:

> The immediate effectiveness of this rule is necessary to eliminate any possible uncertainty about the applicability of the Act's requirements - and related means of enforcement, including criminal liability under 18 U.S.C. 2250 for sex offenders who knowingly fail to register as required - to sex offenders whose predicate convictions predate the enactment of SORNA. Delay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions. The resulting practical dangers include the commission of additional sexual assaults and child sexual abuse or

exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to greater difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA. This would thwart the legislative objective of "protect[ing] the public from sex offenders and offenders against children" by establishing "a comprehensive national system for the registration of those offenders," SORNA §102, because a substantial class of sex offenders could evade the Act's registration requirements and enforcement mechanisms during the pendency of a proposed rule and delay the effectiveness of a final rule.

72 Fed. Reg. 8894, 8896-8897 (2007). In *Gould*, the court explained that "although courts have cautioned that the good cause exception should be narrowly construed, courts have approved interim rules that are accompanied with a sufficient justification." 2007 WL 4371418 at *5 (internal citations omitted). Therefore, the DOJ found that delay in implementing this rule would be contrary to the public interest. *See id*. ("The DOJ's valid concern for public safety, legal certainty, and swift implementation of the rule was adequately justified in its interim order."). As required by the APA, the DOJ incorporated its finding and a brief statement of reasons therefore in the interim rule.[19] As

_____

[19] In *Nat'l Customs Brokers and Forwarders Ass'n of America, Inc. v. United States*, 59 F.3d 1219, 1223 (Fed. Cir. 1995), the United States Customs Service ("Customs") issued interim regulations allowing a consignee to enter merchandise valued at $200 or less into the United States without using a licensed customs broker. Customs implemented these interim regulations without prior notice and comment and, instead, deferred consideration of substantive comments on the interim regulations until after implementation. Customs did so on the finding, as explained in their regulations, that delaying implementation pending formal notice and comment was both unnecessary and contrary to the public interest. *Id.* at 1223-24. Customs' explanation, the court found, satisfied the "brief statement of reasons" requirement of Section 553(b)(B) of the APA. *Id.* at 1223. Similarly, under SORNA, the DOJ announced its finding that delaying implementation was contrary to the public interest. 72 Fed. Reg. 39, 8897. In addition to the necessity of eliminating uncertainty about the applicability of the Act's requirements, the DOJ pointed to the public safety concern, that is, the danger of commission of additional sexual assaults and child sexual abuse or exploitation offenses by sex offenders, in delaying implementation of the rule. 72 Fed. Reg. 39, 8896. Just as the Federal Aviation Administration implemented its regulations to respond to a public safety concern (see *Hawaii Helicopter Operators Ass'n v. F.A.A.*, 51 F.3d 212 (9th Cir. 1995)), this rule was implemented by the DOJ specifically to address the public safety concerns listed.

the DOJ followed the strictures of the APA in implementing this rule, it is valid and should be upheld. Moreover, as pointed out in *Gould*, the DOJ has since issued proposed guidelines that were open to the formal public notice and comment review period. 2007 WL 4371418 at *5 (holding that the Interim Order is valid because the Attorney General demonstrated good cause for failing to comply with the strictures of the APA).

### F.    SORNA Does Not Violate The Commerce Clause

Bournes argues that Congress exceeded its power under the Commerce Clause by enacting 18 U.S.C. § 2250(a) and 42 U.S.C. § 16913. (Doc. # 28.) Bournes submits that Section 2250(a) violates the Commerce Clause because Congress cannot federally criminalize a local sex offender's failure to register in a state-run registry. (*Id*. at 22.) Bournes contends that Section 2250(a) does not require a jurisdictional element of travel and the criminal act of failing to register. (*Id*. at 23.) Bournes also contends that Section 16913 is unconstitutional because Congress lacks the power to force citizens who have been convicted of purely local offenses under state law to register as sex offenders. (*Id*. at 24.)

### 1.    Section 2250(a) Does Not Violate the Commerce Clause

In support of his argument, Bournes asserts that the decisions in *United States v. Lopez*, 514 U.S. 549 (1995), and *United States v. Morrison*, 529 U.S. 598 (2000), require such a result. In making these assertions, Bournes misconstrues and misapplies the holdings of *Lopez* and *Morrison*. Article I, Section 8, Clause 3 of the United States Constitution gives Congress the power "[t]o regulate Commerce with Foreign Nations, and among the several states, and with the Indian tribes." Since its decision in *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937), the Supreme Court, with few exceptions, has interpreted the Commerce Clause expansively, upholding many exertions

of legislative authority. Further, statutes are presumed constitutional. *Morrison*, 529 U.S. a 607. A congressional enactment will only be invalidated on a plain showing that Congress exceeded its authority under the Constitution. *Id.*

Although Bournes claims the Supreme Court's decision in *Lopez*, supports his position, a balanced reading of *Lopez* leads to the conclusion that 18 U.S.C. § 2250(a) does not violate the Commerce Clause. In *Lopez*, the Supreme Court held that Congress exceeded its interstate commerce powers when it enacted the Gun-Free School Zone Act, 18 U.S.C. § 922(q)(1)(A), because the Act did not regulate a commercial activity, nor did it contain a requirement that the possession of a firearm in a school zone be connected in any way to interstate commerce. 514 U.S. at 551. This Act made it a federal offense "for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone." *Id*. at 551 (quoting Title 18, United States Code, Section 922(q)(1)(A)).

Reviewing the Court's jurisprudence on the constitutionality of congressional enactments under the Commerce Clause, the *Lopez* Court determined that Congress may properly enact legislation under its commerce powers in three broad categories: (1) to regulate use of the channels of interstate commerce; (2) "to protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and (3) to regulate activities having a substantial effect on interstate commerce. *Id.* at 558-59. In holding the Gun-Free School Zone Act an invalid exercise of Congress's commerce power, the Court concluded that where an enactment neither purports to regulate a use of a channel of interstate commerce, or persons or things in interstate commerce, the proper test of constitutionality under the

Commerce Clause is whether the regulated activity otherwise substantially affects interstate commerce. *Id.* at 562.

The statute examined in *Lopez* differs from 18 U.S.C. § 2250 in a critical respect. The statute contained no language or jurisdictional element linking its reach to the use or movement of things or people in the channels of interstate commerce. *See Lopez*, 514 U.S. at 561. Title 18, United States Code, Section 2250, in contrast, expressly requires as an element of the offense, where defendant's status as a sex offender required to register is based on a non-federal conviction, that the offender "travels in interstate or foreign commerce." 18 U.S.C. § 2250(a)(2)(B). In addition, an activity may be reached by Congress where a "rational basis" exists for concluding that the activity substantially affects interstate commerce. *Gonzales v. Raich*, 545 U.S.1, 22 (2005). "This rational basis test is clearly met through Congress's desire to track sex offenders as they move between states, in order to promote the public safety." *Madera*, 474 F .Supp. 2d at 1265.

Bournes 's reliance on *United States v. Morrison*, 529 U.S. 598 (2000), is also misplaced. In *Morrison*, the Supreme Court ruled that the Violence Against Women Act, 42 U.S.C. § 13981(b) (VAWA), which provided a federal civil remedy, was an unconstitutional statute because Congress exceeded its commerce power in enacting it. 529 U.S. at 617. The *Morrison* court analyzed the statute's viability under the Commerce Clause in light of *Lopez*. Using the three-pronged framework articulated in *Lopez*, the *Morrison* court concluded that because the statute did not regulate the use of the channels of interstate commerce, or protect or regulate instrumentalities of interstate commerce, the statute could only be upheld if it substantially affected interstate commerce, *i.e.*, *Lopez*'s third permissible regulation category. Again, *Morrison* differed from 18 U.S.C. § 2250 in a critical respect. The *Morrison* Court specifically noted that VAWA, like the statute in *Lopez*, did

not contain a jurisdictional element establishing that the federal cause of action was "in pursuance of Congress' power to regulate interstate commerce." 529 U.S. at 613. Section 2250, in contrast, contains just such a jurisdictional element. *See* 18 U.S.C. § 2250(a)(2)(B).

In light of these decisions, it is clear that 18 U.S.C. § 2250 does not violate the Commerce Clause for at least three reasons. First, it reaches those with a federal conviction. Second, for those required to register under SORNA based on a non-federal conviction, it requires an element of travel in interstate commerce. Such travel is inherently national and affects commerce. "Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce." *Lopez*, 514 U.S. at 558. The federal commerce power encompasses the movement of persons in interstate commerce as well as commodities, *see United States v. Guest*, 383 U.S. 745, 758-59 (1966), and a sex offender's travel in interstate commerce is sufficient to bring his subsequent failure to register within Congress's power to regulate even though the sex offender's travel alone is not criminal, *see Waybright*, 2008 WL 2380946 at *6. Third, 18 U.S.C. § 2250 regulates activities that substantially affect interstate commerce. Indeed, § 2250(a) helps states address a problem that defies local solution: the need for a national database of sex offenders in order to protect the public from sex offenders who move in interstate commerce, thereby facilitating the availability of sex offender registration information to all states, regardless of where the offender may relocate. *Madera*, 474 F. Supp. 2d at 1265.

Bournes's suggestion that there is an insufficient nexus required under Title 18, United States Code, Section § 2250 between interstate travel and the substantive offense conduct is also without merit. Understanding the statute in conformity with its natural meaning and underlying purposes, it creates criminal liability for a person who has been convicted of an offense in the SORNA

registration categories who travels interstate and knowingly fails to register as required. It does not purport to extend federal jurisdiction to every sex offender in the SORNA categories who has traveled interstate at some point in his life. Further, "[a] sex offender's criminal act – failing to register – may be removed from his travel in interstate commerce but that does not preclude Congress from criminalizing his failure to register." *Waybright*, 2008 WL 2380946 at *6 (holding that § 2250(a) is a valid exercise of Congress' power under the Commerce Clause and citing *United States v. Cummins*, 281 F.3d 1046 (9th Cir. 2002) as support).

The district courts which have considered the commerce clause challenge to SORNA have rejected this argument. *See, e.g., Gould*, 2007 WL 4371418 at *6; *Ambert*, 2007 WL 2949476 at *4; *May*, 2007 WL 2790388 at *7; *Hinen*, 487 F. Supp. 2d at 757-758; *Madera*, 474 F. Supp. 2d at 1265; *Gonzalez*, 2007 WL 2298004 at * 9; *Mason*, 2007 WL 1521515 at * 6-7; *Muzio*, 2007 WL 2159642, t * 7. Because Section 2250 is unquestionably valid as applied to Bournes, his constitutional attack should be rejected.

2.    Section 16913 Does Not Violate the Commerce Clause

Avoiding SORNA's overall purpose, Bournes argues the registration requirement Section 16913 itself could impose requirements on individuals convicted of purely intrastate activities and therefore is unconstitutional. Yet individuals engaging in purely intrastate activities can be regulated under Congress's Commerce Clause Power. The Supreme Court in *Wickard v Filburn*, 317 U.S. 111, 118, 128-129 (1942) upheld Congress's Commerce Clause Power to regulate an individual farmer who grew wheat for his own use, not to be sold. *See id.* at 19. In *Gonzalez v. Raich*, 545 U.S. 1 (2005) the Supreme Court upheld Congress's Commerce Clause Power to regulate an individual who grows, but does not sell, marijuana for medical purposes.

-33-

Bournes cites again to *Lopez* and *Morrison* as support for his argument.  Yet unlike *Lopez* and *Morrison*, Congress is not attempting to regulate a violent crime here.  SORNA does not regulate the sex offense itself.  Rather, SORNA regulates a sex offenders duty to register, and keep current the information about their home, job and school as the sex offender travels in interstate commerce.

Even if section 16913 does not have a jurisdictional element, and thus potentially regulates purely intrastate activity, it can still be upheld under Congress's Commerce Clause Power.  In *Gonzalez*, which was decided after *Lopez* and *Morrison*, the Supreme Court held Congress can legislate purely local activities so long as they are a part of an economic "class of activities." Though *Gonzalez* and *Wickard* dealt with inherently economic activity, the same rational of focusing on aggregate effects is appropriate where the regulated activity is not itself regarded as commerce. *Gonzalez*, 545 U.S. at 17 (quoting *Wickard*, 317 U.S. at 125).  Therefore, it is within Congress's Commerce Clause Power to regulate such individuals or intrastate activity here.  Indeed, in *Lopez* the Supreme Court specifically noted that the statute in question was not an "essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity was regulated." *Lopez*, 514 U.S. at 561.  Likewise, the Supreme Court in *Morrison* recognized that there is no "categorical rule against aggregating the effect of any non-economic activity." *Morrison*, 529 U.S. at 613.  In *Gonzalez* the Supreme Court was clear:

> [E]ven if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce.  We have never required Congress to legislate with scientific exactitude.  When Congress decides that the 'total incidence' of a practice poses a threat to a national market, it may regulate the entire class.

*Gonzalez*, 545 U.S. 1 at 17 (2005) (citations and internal quotation marks committed).  Moreover,

courts do not need to determine whether in the aggregate the activities in fact substantially affect

interstate commerce, rather only whether a rational basis exists for concluding so.  *Id*. at 22.  Clearly

sex offenders will relocate out of state, switch jobs and schools between states, and thus a standard

registration requirement even with a potentially intrastate affect, will affect many sex offenders who

travel in interstate commerce to complete these tasks.

Considering this particular issue, the Court in *United States v. Passaro*, No. 07-cr-02308

BEN, at \*10-11 (S.D. Cal. Dec. 17, 2007) found Section 16913 to be a valid exercise of Congress's

Commerce Clause Power.  Passaro acknowledged that section 16913 itself does not contain a

jurisdictional element or regulate economic activity, yet stresses that the statute is both part of a

larger regulatory scheme, and also has a substantial connection to interstate commerce.  *Id.* at \*7, 9.

The Court said:

> Congress intended (in enacting SORNA) to protect public safety.  It
> is rational to conclude that maintaining a comprehensive national
> registry of sex offenders affects interstate commerce.  For individuals
> engaging in any commerce-related activity, personal safety and safety
> of their families is a prime concern.  Economic development in
> certain areas may be encouraged or discouraged depending on the
> safety level.  Requiring sex offenders to register within three days of
> a change in residence is a means reasonably adapted to achieving
> SORNA's purpose.

CR 07-2308-BEN, at 9.

Bournes, however, relies upon the recent decision in *United States District Court v.*

*Waybright*, __ F. Supp. 2d __, 2008 WL 2380946 (D. Mont. June 11, 2008), which dismissed a

SORNA  indictment on the grounds that Section 16913 was not a permissible use of Congress's

Commerce Clause Power. The Court concluded that under *Lopez* and *Morrison* the effect of Section 16913 on interstate commerce was too attenuated to be upheld under the Commerce Clause. In particular, the court noted that Section 16913 was not economic in nature, had no express jurisdictional element and had no legislative findings to show an affect on interstate commerce.

Contrary to this ruling in *Waybright*, Section 16913 does have a substantial affect on interstate commerce and can properly be regulated under the Commerce Clause. *Waybright* fails to consider that the Supreme Court in *Gonzalez* held Congress can regulate intrastate activity where there is a rational basis to conclude that intrastate activity has an aggregate effect on interstate commerce. *Gonzalez*, 545 U.S. 1 at 17, 22.

It is irrational to argue that since Section 16913 is not limited to sex offenders who relocate across state lines that it does not have a substantial affect on interstate commerce. Another court, addressing the constitutionality of Section 16913, noted that we must remember that we live in a very mobile society. *United States v. Thomas*, 534 F. Supp. 2d 912, 922 (2008) (citing *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 758, 118 S. Ct. 1700, 140 L. Ed. 2d 981 (1998). The rational basis is met here. Congress clarified a sex offenders obligation by creating a national standard. This standard will affect the many sex offenders who relocate homes, jobs and schools to a different state thereby traveling in interstate commerce. This registration requirement is rationally related to SORNA's goal of preventing sex offenders from going missing in a patchwork of state laws as they travel between states and should therefore be upheld as a proper exercise of Congress's Commerce Clause Power.

Furthermore, this statute could also be upheld under Congress's Necessary and Proper Clause Power. The Necessary and Proper Clause gives Congress the power to "make all Laws which shall

be necessary and proper for carrying into Execution the [Congressional] Powers" enumerated in the Constitution, and "all other Powers vested by [the] Constitution in the Government of the United States." U.S. Const. Art., I, § 8, cl. 18. Congress can exercise their Necessary and Proper Power when the means chosen are reasonably adapted to achieve the legitimate ends under the commerce power. *See Gonzalez*, 545 U.S. at 37 (citing *United States v. Darby*, 312, U.S. 100, 121 (1941)). "Congress must be afforded the opportunity to use its discretion . . . . , with respect to means by which [its] powers . . . are to be carried into execution . . . in the manner most beneficial to the people." *United States v. Thomas*, 534 F. Supp. 2d at 922 (quoting *McCulloch v Maryland*, 17 U.S. (4 Wheat.) at 421) (committing internal quotations). Justice Scalia, in his concurring opinion in *Gonzalez*, suggests that Congress's ability to regulate intrastate activity comes from the Necessary and Proper Clause not the Commerce Clause. Gonzalez 545 U.S., at 34 (Scalia, J., concurring).

In *United States v. Darby*, 312 U.S. 1000, 118-119 (1941), the Supreme Court upheld an intrastate requirement that employers keep employment records to demonstrate compliance with a regulatory scheme, under Congress's Necessary and Proper Power. *See Gonzalez*, 514 U.S. at 37-38. Here, the larger regulatory scheme is SORNA, and the legitimate end is to decrease the number of sex offenders who are able to go missing after traveling interstate and falling into the gaps that exist between the patchwork of state laws. It is precisely this travel between states that led to the state's failure to adequately keep track of the sex offenders, and is the reason national regulation was needed. *See United States v. Ditomasso*, __ F. Supp. 2d __, 2008 WL 1994866 , *10 (D.R.I. May 8, 2008) ("SORNA, including the criminal component, prevents sex offenders from being lost in the cracks *between* state regulations, a matter which is beyond the power of any one state to comprehensively address.") (emphasis in original). SORNA is Congress's good faith effort to

combat this problem. The national registration system, provided in 42 U.S.C. § 16913, is a reasonable way to stop sex offenders from going missing between states. Likewise, the criminal provision in 18 U.S.C. § 2250 is a reasonable way to enforce the registration requirement. Both are reasonable means working solve the national problem that exists when sex offenders fall through gaps between state systems.

Even though section 16913 does not itself contain a jurisdictional element, section 16913 does not regulate only intrastate activity, rather it applies uniformly to those who relocate homes, jobs or schools intrastate or between states. The Supreme Court in *Morrison* stated the presence of a jurisdictional element is a helpful factor to establish that an enactment is in pursuance to Congress's regulation of interstate commerce. *Morrison,* 529 U.S. at 612. Congress intended to regulate sex offenders who traveled in interstate commerce. One need look no farther than the criminal provision which is limited to sex offenders who fail to register and trave in interstate commerce to realize this was Congress's goal. It is unrealistic to suggest that Congress was attempting to regulate only intrastate activity with SORNA. The intrastate activity was already regulated under existing state laws. If sex offenders going missing in interstate travel had not been an issue, there would be no need for a uniform registration requirement.

In *United States v. Thomas*, the court upheld Section 16913 as a proper exercise of Congress's Necessary and Proper Clause Power, because it is an appropriate and reasonable means to attain the legitimate end of monitoring sex offenders who cross state lines through Section 2250. 534 F. Supp. 2d 912, 921 (N.D. Iowa 2008). *Thomas* notes that the criminal provision, Section 2250, is limited to apply only to sex offenders, who are required to register, and travel in interstate commerce. *See Thomas*, 534 F. Supp 2d at 922. (citing 18 U.S.C § 2250(a); *United States v. Pitts,*

2007 WL 3353423, *4 (M.D. La. Nov. 7, 2007) (upholding SORNA against constitutional challenge in part because of Congressional restraint in formulating § 2250(a)).  Yet, *Thomas* emphasizes that: "Congress has deemed sex offenders to be inherently dangerous, a threat to public safety in themselves and deserving of extensive monitoring through SORNA's registration requirements." 534 F. Supp. 2d 912, 919 (N.D. Iowa 2008).

Nonetheless, in *Waybright*, the District Court in Montana rejected Section 16913's constitutionality, here under the Necessary and Proper Clause.  *United States District Court v. Waybright*, __ F. Supp. 2d __ , 2008 WL 2380946 (D. Mont. June 11, 2008). *Waybright* stated that section 16913, which applies registration requirements on offenders who potentially remain in state, is not necessary to Congress's goal of regulating sex offenders who travel in interstate commerce. *Waybright* also concludes that Section 16913 is not an essential part of a larger regulatory system. Thus, *Waybright* held that Section 16913 is not a legitimate exercise of Congress's Necessary and Proper Power.

However, *Waybright* is in error.  Section 16913 should not be dismissed on the grounds that it was not absolutely necessary, nor because another statute could have been more narrowly tailored to achieve Congress's goal of creating a national registration system to track sex offenders who travel interstate.  The Supreme Court has not set such standards, rather the Supreme Court requires only that the means are "reasonably adapted" to achieve the legitimate ends.  *See Gonzalez* 545 U.S. at 37.  Once again, "Congress must be afforded the opportunity to use its discretion . . . . , with respect to means by which [its] powers . . . are to be carried into execution . . . in the manner most beneficial to the people."  *United States v. Thomas*, 534 F. Supp. 2d. at 922.  The registration requirements are reasonably adapted requirements that implemented through Section 2250 only

prosecute people who fail to register and travel in interstate commerce for limited purposes.  In fact, the Court in *Thomas* concedes that Section 16913 is not narrowly tailored or absolutely necessary, yet nonetheless concludes Section 16913 is constitutional because it is a reasonable provision to achieve SORNA's end.  *Thomas*,534 F. Supp. 2d. at 922.

Furthermore, *Waybright*'s statement that section 16913 is not a part of a larger regulatory scheme is misguided.  Section 16913 is only one provision of SORNA, the larger regulatory scheme. It is also unsubstantiated to suggest that Congress's purpose in enacting SORNA was solely to create a national standard registration requirement, and not at all to regulate sex offenders who fail to register and travel in interstate commerce as set out in Section 2250.  Realistically, a registration requirement holds little weight if there is no means to enforce it.  Congress enacted SORNA to solve the problem that missing sex offenders in the patchwork of state laws poses. SORNA does this by setting a clear standard and enforcement provisions.  As discussed above, Section 16913, and likewise the criminal provision in Section 2250 are both integral parts of the larger SORNA system.

In conclusion, Section 16913 is a reasonable component of SORNA, which is rationally related to Congress's goal of creating a national registration standard for sex offenders and to prosecute sex offenders who travel in interstate commerce and fail to meet these clarified registration requirements.  For all the reasons stated above, Section 16913 is a proper Congressional enactment under the Necessary and Proper Clause.

## III.  CONCLUSION

Based on the foregoing, the United States respectfully requests that the Court deny Defendant's motion to dismiss the indictment.

Respectfully submitted this the 11th day of July, 2008.

LEURA G. CANARY
UNITED STATES ATTORNEY


/s/  Jerusha T. Adams
JERUSHA T. ADAMS
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
334-223-7280 phone     334-223-7135   fax
jerusha.adams@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO.  2:08-cr-02-MHT |
| | ) | |
| JOHN GARRY BOURNES | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2008, I electronically filed the foregoing with the Clerk of the Court

using the CM/ECF system which will send notification of such filing to the following: Michael J.

Petersen.

Respectfully submitted,


LEURA G. CANARY
UNITED STATES ATTORNEY


/s/  Jerusha T. Adams
JERUSHA T. ADAMS
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
334-223-7280 phone    334-223-7135   fax
jerusha.adams@usdoj.gov

1

☐ PROBATION VIOLATOR
   *(Check if Applicable)*

# FILED

JUN 2 7 1991

KARLEEN F. De BLAKER
CLERK CIRCUIT COURT
*Jane Tauber* Deputy Clerk

STATE OF FLORIDA

—vs—

*John Garry Bourne*
         Defendant    00006579

IN THE CIRCUIT COURT,
SIXTH JUDICIAL CIRCUIT,
IN AND FOR PINELLAS COUNTY, FLORIDA
DIVISION: FELONY

CASE NUMBER  CRC *90-12741CFANO-D*

## JUDGMENT

The Defendant  *John Garry Bourne* , being personally before this

Court represented by  *Gary Fernald* , his attorney of record, and having

(Check Applicable
Provision)

☒ Been tried and found guilty of the following crime(s)
☐ Entered a plea of guilty to the following crime(s)
☐ Entered a plea of nolo contendere to the following crime(s)

| COUNT | CRIME | OFFENSE STATUTE NUMBER(S) | DEGREE OF CRIME | CASE NUMBER |
|-------|-------|---------------------------|-----------------|-------------|
| 1, 2 | *Handling and Fondling a Child Under the Age of Sixteen Years* | F.S. 800.04(1) | 2F | |

and no cause having been shown why the Defendant should not be adjudicated guilty, IT IS ORDERED THAT the Defendant is
hereby ADJUDICATED GUILTY of the above crime(s).

••••••••••••••••••

The Defendant is hereby ordered to pay the sum of twenty dollars ($20.00) pursuant to F.S. 960.20 (Crimes Compensation Trust
Fund). The Defendant is further ordered to pay the sum of three dollars ($3.00) as a court cost pursuant to F.S. 943.25(4).

☐ The Defendant is ordered to pay an additional sum of three dollars ($3.00) pursuant to F.S. 943.25(8).
   (This provision is optional; not applicable unless checked).

(Check if Applicable)   ☐ The Defendant is further ordered to pay a fine in the sum of _____
   pursuant to F.S. 775.0835.
   (This provision refers to the optional fine for the Crimes Compensation Trust Fund, and is not
   applicable unless checked and completed. Fines imposed as part of a sentence pursuant to F.S.
   775.083 are to be recorded on the Sentence page(s)).

TOTAL

☐ The Court hereby imposes additional court costs in the sum of $ *Waived*

Page 1 of _____

CT CR 58 a (Rev. 11/7/88)

GOVERNMENT
EXHIBIT
1

PENGAD-Bayonne, N. J.

2

Defendant _J. Bourne_

Case Number _90-12741 of and_

# SENTENCE

( As to Count _____ )

_Gary Fennald_

The Defendant, being personally before this Court, accompanied by his attorney, _____ and having been adjudicated guilty herein, and the Court having given the Defendant an opportunity to be heard and to offer matters in mitigation of sentence, and to show cause why he should not be sentenced as provided by law, and no cause being shown.

☐ and the Court having on _____ deferred imposition of sentence
until this date.

**(Check either provision if applicable)**

☐ and the Court having placed the Defendant on probation and having subsequently revoked the Defendant's probation by separate order entered herein.

## IT IS THE SENTENCE OF THE LAW that:

☐ The Defendant pay a fine of $ _____ , plus $ _____ as the 5% surcharge required by F. S. 960.25.

☒ The Defendant is hereby committed to the custody of the Department of Corrections

☐ The Defendant is hereby committed to the custody of the Sheriff of _____ County, Florida
*(Name of local corrections authority to be inserted at printing, if other than Sheriff)*

To be imprisoned (check one; unmarked sections are inapplicable)

☐ For a term of Natural life

☒ For a term of _15 YEARS_

☐ For an indeterminate period of 6 months to _____ years.

☐ Followed by a period of _____ on probation under the supervision of the Department of Corrections according to the terms and conditions of probation set forth in a separate order entered herein.

**If "split" sentence complete either of these two paragraphs**

☐ However, after serving a period of _____ imprisonment in _____ the balance of such sentence shall be suspended and the Defendant shall be placed on probation for a period of _____ under supervision of the Department of Corrections according to their terms and conditions of probation set forth in a separate order entered herein.

## SPECIAL PROVISIONS

**Firearm — 3 year mandatory minimum**

☐ It is further ordered that the 3 year minimum provisions of F.S.775.087 (2) are hereby imposed for the sentence specified in this count, as the Defendant possessed a firearm

**Drug Trafficking mandatory minimum**

☐ It is further ordered that the _____ year minimum provisions of F. S.893.135 (1) ( ) ( ) are hereby imposed for the sentence specified in this count.

**Retention of Jurisdiction**

☐ The Court pursuant to F. S. 947.16 (3) retains jurisdiction over the defendant for review of any Parole Commission release order for the period of _____. The requisite findings by the Court are set forth in a separate order or stated on the record in open court.

**Habitual Offender**

☐ The Defendant is adjudged a habitual offender and has been sentenced to an extended term in this sentence in accordance with the provisions of F. S. 775.084 (4) (a). The requisite findings by the court are set forth in a separate order or stated on the record in open court.

**Jail Credit**

☒ It is further ordered that the Defendant shall be allowed a total of _305 days_ credit for such time as he has been incarcerated prior to imposition of this sentence. Such credit reflects the following periods of incarceration (optional):

**Consecutive/Concurrent**

☐ It is further ordered that the sentence imposed for this count shall run ☐ consecutive to ☐ concurrent with (check one) the sentence set forth in count _____ above.

Page _____ of _____

3

Defendant _J. Bourne_

Case Number _90-12741 CFANO_

**Consecutive/Concurrent**
**(As to other convictions)**

It is further ordered that the composite term of all sentences imposed for the counts specified in this order shall run ☐ consecutive to ☐ concurrent with (check one) the following:

☐ Any active sentence being served.
☐ Specific sentences: _____

_____
_____
_____

In the event the above sentence is to the Department of Corrections, the Sheriff of _PINELLAS_ County, Florida is hereby ordered and directed to deliver the Defendant to the Department of Corrections together with a copy of this Judgment and Sentence.

The Defendant in Open Court was advised of his right to appeal from this Sentence by filing notice of appeal within thirty days from this date with the Clerk of this Court and the Defendant's right to the assistance of counsel in taking said appeal at the expense of the State upon showing of indigency.

In imposing the above sentence, the Court further recommends _funds restitution sure applicable._
_The Court recommends sex offender counseling or treatment._

_____
_____
_____

DONE AND ORDERED in Open Court at _PINELLAS_ County, Florida, this _27th_ day of _June_, A.D., 19 _91_.

_____
JUDGE

Page _____ of _____

OT CR 82d (Rev 7/24/89)

09/7/31

FELONY INFORMATION

IN THE CIRCUIT COURT FOR THE SIXTH JUDICIAL CIRCUIT OF FLORIDA,
IN AND FOR PINELLAS COUNTY

SPRING TERM, in the year of our Lord one thousand nine hundred ninety-one
CRC90-12741CFANO                          AMENDED
STATE OF FLORIDA                          INFORMATION FOR

                    vs.

    JOHN GARRY BOURNE          1.  HANDLING AND FONDLING A CHILD
    SPN                            UNDER THE AGE OF SIXTEEN YEARS, 2°F
                               2.  HANDLING AND FONDLING A CHILD
                                   UNDER THE AGE OF SIXTEEN YEARS, 2°F

IN THE NAME AND BY THE AUTHORITY FOR THE STATE OF FLORIDA:

JAMES T. RUSSELL, State Attorney for the Sixth Judicial Circuit of Florida,
in and for Pinellas County, prosecuting for the State of Florida, in the
said County, under oath, Information makes that

                    JOHN GARRY BOURNE

of the County of Pinellas and State of Florida, on or between the 1st day
of January, 1988 and the 28th day of April, in the year of our Lord, one
thousand nine hundred ninety, in the County and State aforesaid

        did handle and fondle one J██████ M██, a child under
        the age of sixteen years, in a lewd, lascivious and inde-
        cent manner, to-wit: by placing the exposed penis of JOHN
        GARRY BOURNE on or between the legs of the said J████████
        M███ in the genital region of said child, said act being
        willfully and knowingly done in a lewd, lascivious and
        indecent manner, but without committing the crime of
        sexual battery upon said J████████ M██; contrary to
        Chapter 800.04(1), Florida Statutes, and against the peace
        and dignity of the State of Florida.  [Q4A]

5-27-91  *Jury Verdict - guilty both counts*          FILED

                                                   JUN 25 1991

                                      KARLEEN F. De BLAKER
                                      CLERK CIRCUIT COURT
                                              Deputy Clerk

GOVERNMENT
EXHIBIT
2

COUNT TWO

And the State Attorney aforesaid, under oath as aforesaid, further information makes that JOHN GARRY BOURNE, of the County of Pinellas, State of Florida, on the 29th day of April, in the year of our Lord, one thousand nine hundred ninety, in the County and State aforesaid, did handle and fondle one J_____ M___, a child under the age of sixteen years, in a lewd, lascivious and indecent manner, to-wit: by placing the exposed penis of JOHN GARRY BOURNE on or between the legs of the said J_____ M___ in the genital region of said child, said act being willfully and knowingly done in a lewd, lascivious and indecent manner, but without committing the crime of sexual battery upon said J_____ M___; contrary to Chapter 800.04(1), Florida Statutes, and against the peace and dignity of the State of Florida.   [Q4A].

STATE OF FLORIDA
PINELLAS COUNTY

Personally appeared before me JAMES T. RUSSELL, the undersigned State Attorney for the Sixth Judicial Circuit of Florida, in and for Pinellas County, or his duly designated Assistant State Attorney, who being first duly sworn, says that the allegations as set forth in the foregoing information are based upon facts that have been sworn to as true, and which if true, would constitute the offense therein charged; hence this information is filed in good faith in instituting this prosecution, and that he has received testimony under oath from the material witness or witnesses for the offense.

_Phil J Federico_

Assistant State Attorney for the Sixth
Judicial Circuit of the State of Florida,
Prosecuting for said State

Sworn to and subscribed before me
this 25th day of JUNE , A.D. 1991.

_Sherri Howell_
NOTARY PUBLIC                                    (SEAL)

SHERRI HOWELL
Notary Public, State of Florida
My Commission Expires June 18, 1994
Bonded Thru Troy Fain - Insurance Inc.

D-Sheinis/2-10/0625TH4,5

Certified a true and correct copy of the
original as filed on the 25 day of
_____ 19 91
Public Records of Pinellas County, Florida
KARLEEN F. De BLAKER
Clerk of the Circuit Court, Pinellas County, Florida
By _____
                                    Deputy Clerk

# FDLE SEXUAL PREDATOR / SEXUAL OFFENDER REGISTRATION FORM

**TO BE COMPLETED BY LAW ENFORCEMENT**

Complete all sections that apply, attach fingerprint card and photo, and submit to:
Florida Department of Law Enforcement
Attn: SOPU, P.O. Box 1489
Tallahassee, FL 32302-1489
1-888-357-7332

Check One ☒ **Sex Offender**    ☐ **Sex Predator** (Court Order Required)

---

**SECTION A - Contributing Agency Information (Required)**

Agency Name: Pinellas Sheriff's Office    Warrants Check: Local ☒ FCIC ☒ NCIC ☒

Agency Address: 10750 Ulmerton Rd    Largo    Pinellas    FL    33278
_Street Address_    _City_    _County_    _State_    _Zip_

Phone Number: (727) 582-5600    FAX: (727) 582-5610

**SECTION B - Registrant Information (Required)**

Name: Bourne    John    G    SS#: ▓▓▓▓    Alias:
_LAST_    _FIRST_    _MIDDLE_

Florida Driver's License or ID Card #    FDLE/SID #

Race: B    Sex: M    DOB: ▓▓▓▓    Height: ▓▓▓▓    Weight: ▓▓▓▓    Hair: BLK    Eyes: Be

Scars, Marks, Tattoos:    Occupation (type of work):

Currently on Probation/Parole: ☒ No ☐ Yes    If Yes, Probation type ☐ Federal ☐ State    If State, what state

DC #    Federal/State Probation Officer Name:    Officer Phone #

If either your permanent or temporary address is out of state, complete the following. (Required) Please check the box that describes your status. I am:
☐ Permanently leaving Florida to establish a residence in another state
☐ Temporarily leaving Florida to visit another state
☐ Moving from another state to permanently establish a residence in Florida
☐ Visiting from another state and establishing a temporary address in Florida
☐ Other (please describe)

**SECTION C  Permanent Address (Required)**
☐ I am vacating this residence and have no other permanent or temporary residence as of this date _____

Address: ▓▓▓▓    (Street, Apt #)
P.O. BOX NOT ACCEPTABLE
St. Petersburg    Pinellas
_City_    _County_
Florida    33711
_State_    _Zip_
Phone Number: ▓▓▓▓

**Temporary Address**
Dates you will be at this address (Required) From: _____ To: _____

Address:
P.O. BOX NOT ACCEPTABLE    (Street, Apt #)

City    County

State    Zip
Phone Number: (  )

**SECTION D**  Mailing Address MUST accompany a permanent or temporary address ☐ Same as Permanent ☐ Same as Temporary

Address:
    (Street, Apt #)

City    County

State    Zip

**SECTION E – Vehicle, Mobile Home, Trailer or Manufactured Home (Required if applicable)**
VIN #
License Tag # _____ State _____
Description (color scheme/make/model): _____

**Vessel, Live-Aboard Vessel, or Houseboat (Required if applicable)**
Hull ID # _____ Name of Vessel: _____
Manufacturer's Serial # _____
Description (color scheme/make/model): _____

**SECTION F1 – Employment**    ☐ Employed    ☐ Self-employed    ☐ Unemployed    Occupation: _____
Employer: _____    Contact _____    Phone Number: (  ) _____
Address: _____    City _____ County _____ State _____ Zip _____

**SECTION F2 – Campus Activity (Required if applicable)** ☐ Student ☐ Employee ☐ Volunteer Start Date _____ Stop Date _____
University/School: _____    Campus: _____
Employer: _____    Contact _____    Phone Number: (  ) _____
Address: _____    City _____ County (mandatory) _____ State _____ Zip _____

**SECTION G - Adjudication Information (Required)**

| Date Adjudicated: | Crime Conviction/Adjudication: | Statute Number: | Conviction/Adjudication Location: (Include County & State) | Victim |
|---|---|---|---|---|
| 1) 01-01-1981 | L+L U16 | 1991 | | ☒ Minor ☐ Adult |
| 2) | | | | ☐ Minor ☐ Adult |

If out of state conviction, were you or would you be subject to registration or community notification in that state?    ☐ Yes  ☐ No

**SECTION H**  (Required)    **PLEASE READ CAREFULLY BEFORE SIGNING**

As a Sexual Predator (*Florida Statute 775.21*) or Sexual Offender (*Florida Statute 943.0435, or 944.607*) you are required by law to abide by those requirements listed on the <u>back</u> of this form. BY SIGNING BELOW, YOU ACKNOWLEDGE THAT YOU HAVE READ OR HAVE BEEN READ THE REQUIREMENTS ON THE BACK OF THIS FORM, AND THAT YOU UNDERSTAND THESE REQUIREMENTS.

Under penalty of perjury I declare the above is true and correct.

Registrant: *John G. Bourne*    Witnessed by Reporting Officer: *S. Steele* 54894

Print Name: John G. Bourne    Date: 3-16-06    Print Name: S. Steele    Date: 3-16-06

Right Thumb Print

FDLE/CJIS/SOPU-001 (07/05)    White copy – FDLE    Yellow copy – Sheriff's    Pink copy – Registrant
**\*OFFICIAL DOCUMENT DO NOT DESTROY ORIGINAL\***

GOVERNMENT EXHIBIT 3



# FDLE SEXUAL PREDATOR / SEXUAL OFFENDER NOTICE OF RESPONSIBILITIES
## This is NOT a Sexual Predator/Offender Registration Form
### · For Use by LAW ENFORCEMENT AGENCIES
Complete all sections and submit to:
Florida Department of Law Enforcement, P.O. Box 1489, Tallahassee, Florida 32302-1489
1-888-357-7332

**SECTION A— Please type or print.**

Agency Name: PINELLAS COUNTY S.O.    County: PINELLAS    Phone Number: (727) 582-5661

Offender/Predator Name: BOURNE, JOHN    Race: B    Sex: M    DOB: ▮▮▮▮    SSN: ▮▮▮▮

*\* Disclosure of Social Security numbers by individuals completing this form is mandatory pursuant to Florida Statutes: 775.21, 943.0435, or 944.607. Use of social security numbers is solely for identification.*

**NOTICE OF SEXUAL PREDATOR AND SEXUAL OFFENDER OBLIGATIONS:**

As a Sexual Predator (*Florida Statute 775.21*) or Sexual Offender (*Florida Statute 943.0435, or 944.607*), I understand that I am required by law to abide by the following:

1.  I must report **in person** to the local Sheriff's Office or Florida Department of Law Enforcement (FDLE) office within 48 hours of establishing or reestablishing a residence in the state of Florida or within 48 hours of release from custody and/or supervision of Department of Corrections or Department of Children and Family Services, to register my temporary or permanent address. **Failure to comply with this requirement is a felony of the third degree.**

2.  Within 48 hours after the initial report required as stated in requirement #1 above, I must report **in person** to the driver's license office of the Department of Highway Safety and Motor Vehicles to obtain a valid Florida driver's license or identification card, unless a driver's license or identification card was previously secured or updated while under the supervision of Department of Corrections or Department of Children and Family Services and there have been no changes to my address or name. **Failure to comply with this requirement is a felony of the third degree.**

3.  Beginning December 1, 2005: I must report, **in person** each year, twice a year, to the Sheriff's Office in the county in which I reside or am located to reregister during the month of my birthday and during the sixth month following my birth month. **Failure to comply with this requirement is a felony of the third degree.**

| If my month of birth is: | I must reregister in both: | If my month of birth is: | I must reregister in both: | If my month of birth is: | I must reregister in both: |
|---|---|---|---|---|---|
| January | January & July | May | May & November | September | September & March |
| February | February & August | June | June & December | October | October & April |
| March | March & September | July | July & January | November | November & May |
| April | April & October | August | August & February | December | December & June |

4.  Within 48 hours, after any change of address in permanent or temporary residence, change of name due to marriage or other legal process, or when my driver's license is subject to renewal, I must report that information **in person** to the driver's license office of the Department of Highway Safety and Motor Vehicles to obtain and maintain a valid Florida driver's license or identification card. **Failure to comply with this requirement is a felony of the third degree.**

5.  If I live in another state, but work or attend school in Florida, I MUST register my work or school address as a temporary address with the Florida Department of Law Enforcement. I must also obtain and maintain a valid Florida driver's license or identification card. **Failure to comply with this requirement is a felony of the third degree.**

6.  If I intend to establish residence in another state or jurisdiction, I must report **in person** to the local Sheriff's Office or FDLE office to notify of my intention to move out of the state within 48 hours prior to leaving. **Failure to comply with this requirement is a felony of the third degree.**

7.  If I later decide to remain in this state (see #6 above), I must report **in person** back to the local Sheriff's Office or FDLE office to notify of my intention to remain in Florida. This report must occur within 48 hours after the date I indicated that I would leave. **Failure to comply with this requirement is a felony of the second degree.**

8.  If I move from a permanent residence and do not have another permanent or temporary residence I must report this change **in person** to the Sheriff's Office or FDLE office within 48 hours. **Failure to comply with this requirement is a felony of the third degree.**

9.  If I later decide to remain at the permanent residence (see #8 above), I must report **in person** back to the Sheriff's Office or FDLE office to notify of my intention. This report must occur within 48 hours after the date that I indicated I would leave the permanent residence. **Failure to comply with this requirement is a felony of the second degree.**

10. Beginning September 1, 2005, I MUST respond to any address verification correspondence from FDLE within three weeks of the date of the correspondence. **Failure to comply with this requirement is a felony in the third degree.**

11. If I am employed, carry on a vocation, am a student, or become a resident of another state I must also register in that state.

12. If I am enrolled, employed, or carrying on a vocation at an institution of higher education in this state, I shall also provide to the department the name, address, and county of each institution, including each campus attended, and my enrollment or employment status. I shall report each change in enrollment or employment status **in person** at the Sheriff's Office within 48 hours after any change in status. **Failure to comply with this requirement is a felony of the third degree.**

**PLEASE READ CAREFULLY BEFORE SIGNING**

As a Sexual Predator (*Florida Statute 775.21*) or Sexual Offender (*Florida Statute 943.0435, or 944.607*) you are required by law to abide by the requirements listed on this form. BY SIGNING BELOW, YOU ACKNOWLEDGE THAT YOU HAVE READ OR HAVE BEEN READ THE REQUIREMENTS ON THIS FORM, AND THAT YOU UNDERSTAND THESE REQUIREMENTS.

Under penalty of perjury, I declare the above is true and correct.

Registrant: X *John Q. Bourne*    Witnessed by Reporting Officer: *S. Steele* 54894
Signature Required    Signature Required

Print Name: John Bournes    Date: 3/16/06    Print Name: S. Steele    Date: 3/16/06

Right Thumb Print

FDLE/CJIS/SOPU-002 (1/06)

White copy – FDLE    Yellow copy – Local Law Enforcement Agency    Pink copy ...

**\*OFFICIAL DOCUMENT DO NOT DESTROY ORIGINAL\***

GOVERNMENT EXHIBIT 4

Agency: *Pinellas Co Sheriff's Office*

Officer: *Schulz 6282*

Spin #: *00006579*

Docket: *1179162*

Date: *9-4-06*

<table>
<tr><td></td><td><strong>NOTICE OF</strong><br><br><strong>PREDATOR/OFFENDER<br>RESPONSIBILITIES AS REQUIRED<br>BY STATUTE</strong><br><br><em><strong>READ CAREFULLY BEFORE<br>SIGNING</strong></em></td></tr>
</table>

As a Sexual Predator (**Florida Statute 775.21**) or Sexual Offender (**Florida Statute 943.0435**) you are *required by law to abide by the following.  Failure to comply with these requirements is a felony in the third degree:*

1.  **INITIAL REGISTRATION:**
    a.  *If you are on probation or under custody, control or supervision of Department of       Corrections (DOC):  DOC will register you as a Sexual Offender with FDLE.*
    b.  *If you are not on probation or are being released from DOC:  **WITHIN 48 HOURS** of establishing and maintaining a permanent or temporary residence **or** after being released from custody, control or supervision of the Department of Corrections you **must report** to the Sheriff's Office in county in which you reside or the Florida Department of Law Enforcement to register as a sexual predator/offender.*
        - Fs775.21 (f) "Permanent residence" means a place where the person abides, lodges, or resides for 14 or more consecutive days.
        - Fs775.21 (g) "Temporary residence" means a place where the person abides, lodges, or resides for a period of 14 or more days in the aggregate during any calendar year and which is not the person's permanent address; for a person whose permanent residence is not in this state, a place where the person is employed, practices a vocation, or is enrolled as a student for any period of time in this state; or a place where the person routinely abides, lodges, or resides for a period of 4 or more consecutive or nonconsecutive days in any month and which is not the person's permanent residence, including any out-of-state address.

    **IN ADDITION:**
    **WITHIN 48 HOURS** of your registration by either "A" or "B" in Section 1, you must, *report in person* to the Florida Drivers License Office, of the Department of Highway Safety and Motor Vehicles (DHSMV) to:
    - Advise them of your sexual predator/offender status
    - Obtain a driver's license or identification card listing your current physical address.

2.  **REPORT ANY CHANGES:  *Failure to comply with this requirement is a felony of the third degree.***
    **WITHIN 48 HOURS** report any changes of name by reason of marriage or other legal purposes, and/or changes in your permanent or temporary residence.  ***Report in person*** to the Driver's License Office, of the DHSMV.  You will provide to DHSMV any information requested and obtain either a driver's license or an identification card noting these changes.

3.  **ADDRESS VERIFICATION:**
    **Periodically, you will be required to verify your address.**  Upon receipt of a letter from FDLE, Department of Corrections or visits from other criminal justice agencies, you shall follow instructions and take appropriate action to verify your address and personal information.

4.  **RESIDENCY IN ANOTHER STATE OR JURISDICTION:  *Failure to comply with this requirement is a felony of the third degree.***
    **WITHIN 48 HOURS** *before the date you intend to leave Florida, you must report in person* and provide the Sheriff or the Florida Department of Law Enforcement the address, municipality, county and state of the intended residence.

5.  **DECISION TO STAY:  *Failure to notify the Sheriff of your intention to remain in this state is a second-degree felony.***
    If you later decide to remain in this state, **WITHIN 48 HOURS** after the date upon which you indicated that you would leave, you shall *report in person* to the agency you initially reported your intentions and report the intended change in residence and/or your intention to remain in Florida.

6.  You must maintain registration for life with the exception as specified in s.775.21, F.S. or s.943.0435, F.S.

7.  If you change residence to another state, you shall comply with any registration requirement in the new state of residence.  If you are employed, carry on a vocation or are a student in another state, you must also register in that state.

8.  If you are a Sexual Predator you may not volunteer or work at a business, school or other occupation where children congregate.

9.  If you are enrolled, employed, or carrying on a vocation at a community college, college, state university, or independent post-secondary institution including a technical, vocational, or adult education facility in this state, you must immediately provide the name, address, and county of each institution, including each campus attended and your enrollment or employment status.
    a.  *If you are on probation or under custody, control, or supervision of Department of Corrections (DOC):  You must report the above to your probation officer.  You must report any change of enrollment or employment status to your probation officer within 48 hours.*
    b.  *If you are not on probation:  You must report in person at the sheriff's office within 48 hours of any change in enrollment or employment status at the institution.*

| Name: *JOHN GARRY BOURNES* | Race: *B* | Sex: *M* | DOB: ▇▇▇▇ |
|---|---|---|---|

| *John Bournes* | | | *9-4-06* |
|---|---|---|---|
| Offender's Signature | | | Date |
| *Schulz 6282* | | | *9-4-06* |
| Witness Signature | RIGHT THUMB PRINT | | Date |

GOVERNMENT EXHIBIT 5



# FDLE SEXUAL PREDATOR/OFFENDER REGISTRATION FORM

**Agency Name:** Pinellas County SO          **Registration No:**   63754

***** Note: Your next ReRegistration month is October of 2006. *****

| Person Number | |
|---|---|

## Reason For Registration

☒ Initial Registration

☐ Early/Late Re-Registration

☐ Information Update

## Registrant Information

Name:   JOHN GARRY BOURNES          *SS#: ▓▓▓▓  DOB ▓▓▓▓  Race:          Black          Sex:   Male

(FIRST MIDDLE LAST, SUFFIX)

*Disclosure of Social Security numbers by individuals completing this form is mandatory pursuant to Florida Statutes: 775.21, 943.0435, or 944.607. Use of social security numbers is solely for identification.

FL DL or ID Card #:_____  Height: ▓▓▓  Weight: ▓▓ lbs.  Hair:   Unknown/Bald   Eyes:   Brown

Currently on Probation/Parole: ☒ No   ☐ Yes

| Probation Type: | ☐ State | | Officer Name: | Phone: (    ) |
| | | State | | |
| | ☐ Federal | | Officer Name: | Phone: (    ) |
| | | City | | |
| | ☐ County | | Officer Name: | Phone: (    ) |
| | | County | | |

## Address Out of State

☐   Permanently leaving Florida to establish a residence in another state

☐   Temporarily leaving Florida to visit another state

☐   Moving from another state to permanently establish a residence in Florida

☐   Visiting from another state and establishing a temporary address in Florida

☒   Other (please describe)

2006-09-05 13:05:45

GOVERNMENT EXHIBIT 6

Registration No:     63757

---

**Previous Permanent Address**
☐ I am vacating this residence and have no other permanent or temporary residence as of this date _____ .

Address line1: _____
                      Street Address Apt# / Lot# / Etc.,                    City              State      Zip                County

Address line2: _____     Phone: (____)_____ ext._____     End Date: _____

---

**Current Permanent Address**
☐ I have no other permanent or temporary residence at this time.

Address line1: _____ ▮▮▮▮ _____ ▮▮▮▮ _____ FL ▮▮▮▮ _____ Pinellas
                      Street Address Apt# / Lot# / Etc.,                    City              State      Zip                County

Address line2: _____     Phone: (▮▮▮)▮▮▮▮▮▮ ext._____     Start Date:  09/05/2006

---

**Temporary Address**
☒ I do NOT have a temporary address.

1. Address line1:_____
                      Street Address Apt# / Lot# / Etc.,                    City              State      Zip                County

   Phone: (____)_____ ext._____          Dates you will be at this address: From: _____  To:_____

2. Address line1: _____
                      Street Address Apt# / Lot# / Etc.,                    City              State      Zip                County

   Phone: (____)_____ ext._____          Dates you will be at this address: From:_____  To:_____

3. Address line1:_____
                      Street Address Apt# / Lot# / Etc.,                    City              State      Zip                County

   Phone: (____)_____ ext._____          Dates you will be at this address: From:_____  To:_____

**Mailing Address**
☐ Neither     ☒ Same as Permanent     ☐ Same as Temporary

Address line1: _____
                      Street Address Apt# / Lot# / Etc.,                    City              State      Zip                County

   Phone: (____)_____ ext._____

---

2006-09-05 13:12:05

Registration No:   63757

## Vehicle
☒ I do NOT own or use a vehicle, RV, trailer, mobile home, vessel, or houseboat.

**1.**  ☐ Vehicle/RV/Trailer/Mobile Home                          ☐ Vessel/Houseboat

Vehicle Type: _____ Style: _____          Vessel Type: _____ Year: _____
VIN #: _____ Year: _____          Hull ID #: _____ Registration #: _____
License Tag #: _____ State: _____          Manufacturer Serial #: _____
Make: _____ Model: _____          Name of Vessel: _____
Color/Color Scheme: _____          Color/Color Scheme: _____

☐ NOT used as a temporary or permanent residence
This vehicle/vessel is:  ☐ Used as a permanent residence
☐ Used as a temporary residence

**2.**  ☐ Vehicle/RV/Trailer/Mobile Home                          ☐ Vessel/Houseboat

Vehicle Type: _____ Style: _____          Vessel Type: _____ Year: _____
VIN #: _____ Year: _____          Hull ID #: _____ Registration #: _____
License Tag #: _____ State: _____          Manufacturer Serial #: _____
Make: _____ Model: _____          Name of Vessel: _____
Color/Color Scheme: _____          Color/Color Scheme: _____

☐ NOT used as a temporary or permanent residence
This vehicle/vessel is:  ☐ Used as a permanent residence
☐ Used as a temporary residence

**3.**  ☐ Vehicle/RV/Trailer/Mobile Home                          ☐ Vessel/Houseboat

Vehicle Type: _____ Style: _____          Vessel Type: _____ Year: _____
VIN #: _____ Year: _____          Hull ID #: _____ Registration #: _____
License Tag #: _____ State: _____          Manufacturer Serial #: _____
Make: _____ Model: _____          Name of Vessel: _____
Color/Color Scheme: _____          Color/Color Scheme: _____

☐ NOT used as a temporary or permanent residence
This vehicle/vessel is:  ☐ Used as a permanent residence
☐ Used as a temporary residence

## Employment
☒ Unemployed

**1.**  Employer: _____          Occupation: _____          Start Date: _____
Address line1: _____
Street Address Apt# / Lot# / Etc.,          City          State   Zip          County
Address line2: _____ Phone:( ) ____ ext.   Contact Person: _____

**2.**  Employer: _____          Occupation: _____          Start Date: _____
Address line1: _____
Street Address Apt# / Lot# / Etc.,          City          State   Zip          County
Address line2: _____ Phone:( ) ____ ext.   Contact Person: _____

**3.**  Employer: _____          Occupation: _____          Start Date: _____
Address line1: _____
Street Address Apt# / Lot# / Etc.,          City          State   Zip          County
Address line2: _____ Phone: ( ) ____ ext.   Contact Person: _____

2006-09-05 13:12:05

Registration No:   63757

**Campus Activity**
☒ I am NOT a student, employee, or volunteer at a university or institution of higher learning.

1.  ☐ Student    ☐ Employee   ☐ Volunteer          Start Date: _____      Stop Date: _____

   University/School Name: _____        Campus: _____

   Address line1: _____
           Street Address Apt# / Lot# / Etc.,       City     State  Zip    County

   Address line2: _____

   Employer (if applicable): _____   Contact: _____   Phone: (    ) _____ ext. ___

2.  ☐ Student    ☐ Employee   ☐ Volunteer          Start Date: _____      Stop Date: _____

   University/School Name: _____        Campus: _____

   Address line1: _____
           Street Address Apt# / Lot# / Etc.,       City     State  Zip    County

   Address line2: _____

   Employer (if applicable): _____   Contact: _____   Phone: (    ) _____ ext. ___

3.  ☐ Student    ☐ Employee   ☐ Volunteer          Start Date: _____      Stop Date: _____

   University/School Name: _____        Campus: _____

   Address line1: _____
           Street Address Apt# / Lot# / Etc.,       City     State  Zip    County

   Address line2: _____

   Employer (if applicable): _____   Contact: _____   Phone: (    ) _____ ext. ___

**Adjudication Information**
(COMPLETE ONLY FOR NON-FLORIDA OFFENSES: OUT-OF-STATE, MILITARY, FEDERAL, ETC.,)

| Date Adjudicated | Crime | Location of Adjudication/Conviction | | Victim Info. |
|---|---|---|---|---|
| | | County | State | |
| 1. _____ | | | | ☐ Minor  ☐ Adult |
| 2. _____ | | County | State | ☐ Minor  ☐ Adult |
| 3. _____ | | County | State | ☐ Minor  ☐ Adult |
| 4. _____ | | County | State | ☐ Minor  ☐ Adult |

Were you or are you subject to registration or community notification in another state?  ☐ Yes   ☒ No

If Yes, in what state? _____

## NOTICE OF SEXUAL PREDATOR AND SEXUAL OFFENDER OBLIGATIONS

As a Sexual Predator (Florida Statute 775.21) or Sexual Offender (Florida Statute 943.0435 or 944.607), I understand that I am required by law to abide by the following:

1.  I must report **in person** to the local Sheriff's Office or Florida Department of Law Enforcement (FDLE) office within 48 hours of establishing or reestablishing a residence in the state of Florida or within 48 hours of release from custody and/or supervision of Department of Corrections or Department of Children and Family Services to register my temporary or permanent address. **Failure to comply with this requirement is a felony of the third degree.**

2.  Within 48 hours after the initial report required as stated in requirement #1 above, I must report **in person** to the driver's license office of the Department of Highway Safety and Motor Vehicles to obtain a valid Florida driver's license or identific ation card, unless a driver's license or identification card was previously secured or updated while under the supervision of Department of Corrections or Department of Children and Family Services and there have been no changes to my address or name. **Failure to comply with this requirement is a felony of the third degree.**

2006-09-05 13:12:05

Registration No:    63757                                                                 Page 5 of 5

3.  **Beginning December 1, 2005:** I must report, <u>in person</u> each year, twice a year, to the Sheriff's Office in the county in which I reside or am located to reregister during the month of my birthday and during the sixth month following my birth month. Failure to comply with this requirement is a felony of the third degree.

| If my month of birth is: | I must reregister in both: | If my month of birth is: | I must reregister in both: | If my month of birth is: | I must reregister in both: |
|---|---|---|---|---|---|
| January | January & July | May | May & November | September | September & March |
| February | February & August | June | June & December | October | October & April |
| March | March & September | July | July & January | November | November & May |
| April | April & October | August | August & February | December | December & June |

4.  Within 48 hours, after any change of address in permanent or temporary residence, change of name due to marriage or other legal process, or when my driver's license is subject to renewal, I must report that information <u>in person</u> to the driver's license office of the Department of Highway Safety and Motor Vehicles to obtain and maintain a valid Florida driver's license or identification card. Failure to comply with this requirement is a felony of the third degree.

5.  If I live in another state, but work or attend school in Florida, I MUST register my work or school address as a temporary address with the Florida Department of Law Enforcement. I must also obtain and maintain a valid Florida driver's license or identification card. Failure to comply with this requirement is a felony of the third degree.

6.  If I intend to establish residence in another state or jurisdiction, I must report <u>in person</u> to the local Sheriff's Office or FDLE office to notify of my intention to move out of the state within 48 hours prior to leaving. **Failure to comply with this requirement is a felony of the third degree.**

7.  If I later decide to remain in this state (see #6 above), I must report <u>in person</u> back to the local Sheriff's Office or FDLE office to notify of my intention to remain in Florida. This report must occur within 48 hours after the date I indicated that I would leave. **Failure to comply with this requirement is a felony of the second degree.**

8.  If I move from a permanent r e s i d e n c e a nd do not have another permanent or temporary residence, I must report this change <u>in person</u> to the Sheriff's Office or FDLE office within 48 hours. Failure to comply with this requirement is a felony of the third degree.

9.  If I later decide to remain at the permanent residence (see #8 above), I must report <u>in person</u> back to the Sheriff's Office or FDLE office to notify of my intention. This report must occur within 48 hours after the date that I indicated that I would leave the permanent residence. **Failure to comply with this requirement is a felony of the second degree.**

10.  Beginning September 1, 2005, I MUST respond to any address verification correspondence from FDLE within three weeks of the date of the correspondence. Failure to comply with this requirement is a felony in the third degree.

11.  If I am employed, carry on a vocation, am a student, or become a resident of another state I must also register in that state.

12.  If I am enrolled, employed, or carrying on a vocation at an institution of higher education in this state, I shall also provide to the department the name, address, and county of each institution, including each campus attended, and my enrollment or employment status. I shall report each change in enrollment or employment status <u>in person</u> at the Sheriff's Office within 48 hours after any change in status. **Failure to comply with this requirement is a felony of the third degree.**

## PLEASE READ CAREFULLY BEFORE SIGNING

As a **Sexual Predator** (*Florida Statute 775.21*) or **Sexual Offender** (*Florida Statute 943.0435*, or *944.607*), you are required by law to abide by those requirements listed on this form. By signing below, you acknowledge that you have read or have been read all the requirements on this form, AND that you understand These requirements.

**YOU ARE REQUIRED TO REREGISTER EACH YEAR AT THE SHERIFF'S OFFICE IN THE MONTHS OF APRIL AND SEPTEMBER.**

Under penalty of perjury I declare the above is true and correct.

Registrant: _John Garry Bo..._          Witnessed by Reporting Officer: _____

           Signature Required                                              Signature Required

Printed Name: JOHN GARRY BOURNES   Date: _____   Printed Name: Karin Bennett   Date: _____

*OFFICIAL DOCUMENT   DO NOT DESTROY*

***** Note: Your next ReRegistration month is October of 2006. *****

Sign Form

2006-09-05 13:12:05