IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO: 2:08CR02-MHT |
| | ) | |
| JOHN GARRY BOURNES | ) | |

### DEFENDANT'S REPLY TO THE UNITED STATES' RESPONSE TO MOTION TO DISMISS INDICTMENT

**COMES NOW** the Defendant, **JOHN GARRY BOURNES,** by undersigned counsel, and presents his reply to the United States' response to his motion to dismiss the indictment in this matter.

On July 24, 2008, the parties appeared before Magistrate Judge Moorer for argument on Mr. Bournes' Motion to Dismiss Indictment. At that hearing, defense counsel requested, and was granted leave to file a reply to the United States' response to his motion. Said reply was Ordered to be filed on or before August 1, 2008. Mr. Bournes will address the United States' Response in the order presented by the government.

### ARGUMENT

Mr. Bournes would agree with the government that as of the date of the filing of the United States' response and, indeed to the date of the filing of this reply, no court of appeals in any circuit has addressed the constitutional questions Mr. Bournes has rasied.[1] It would also appear that neither

_____

[1] The Eleventh Circuit has addressed the issue of whether SORNA applies to an individual who failed to register during the gap period between SORNA's enactment and the Attorney General's retroactivity determination on February 27, 2007. *United States v. Madera*, 528 F.3d 852, 859 (11th Cir. 2008). However, the Circuit Court explicitly declined to pass upon the constitutional questions

party believes that Mr. Bournes was covered by the "initial registration" provision of §16913(b). That is, because Mr. Bournes was released from prison prior to the enactment of SORNA on July 27, 2006.

I.    **THE GOVERNMENT IS INCORRECT IN ITS ASSERTION THAT SORNA APPLIES TO BOURNES DESPITE ALABAMA'S FAILURE TO IMPLEMENT SORNA**

   A.    **SORNA Registration Requirements Did Not Apply To Mr. Bournes On February 27, 2008**[2]

The Government asserts that because the Attorney General enacted Interim Regulations on February 27, 2008, claiming that the requirements of SORNA retroactive to all sex offenders. *See* Title 28, C.F.R. § 72.3. And therefore, pursuant to the plain language of the Attorney General's Interim Regulations, SORNA's registration requirements applied to Mr. Bournes beginning on February 28, 2007. In support of this postition, the government cites to *United States v. Madera*, 528 F.3d 852, 859 (11th Cir. 2008) (holding that defendant could not be prosecuted for SORNA violation as alleged in indictment because the indictment concerned his failure to register during gap period between SORNA's enactment and Attorney General's retroactivity determination).

The *Madera* case was one of those in which the government sought to prosecute an individual who had been released prior to July 26, 2006 and who had also traveled prior to the

raised in *Madera* because there were other grounds upon which to dispose of the matter. *Id.*

[2]  In making this argument, Mr. Bournes does not concede that the Attorney General complied with the requirements of the Administrative Procedures Act (APA). He does not waive his later argument that the Attorney General failed to comply with the requirements of the APA and thus the Interim Regulations are themselves unconstitutional.

enactment of the Interim Regulation. Indeed, the *Madera* Court was the first court of appeal to consider the issue of whether SORNA may be retroactively applied to Madera who was convicted prior to SORNA's enactment and prosecuted prior to the promulgation of the Attorney General's rule. *See Madera*, 528 F.3d 857. Mr. Bournes is not in that category.

The government's reliance upon *Madera* is misplaced. The *Madera* Court clearly stated that "[t]his case is unique, however, because the district court decision was rendered before the Attorney General even issued the interim rule." The Court went on to state that the "district court erred as a matter of law" when it undertook a statutory construction analysis and declared as a matter of law that SORNA was retroactive as of the day of its enactment. *Madera* 528 F.3d at 857.

To further emphasize the limited applicability of *Madera*, the Court concluded with the admonition that they "need not reach the important constitutional questions raised in Madera's appeal." *Madera* 528 F.3d at 858. In relying upon *Madera* to support its argument for the constitutionality of SORNA, the government is attempting to create bricks without straw.

The government asserts that the fact that Alabama has not yet enacted SORNA registry requirements is irrelevant to a prosecution of Mr. Bournes for failure to register under 18 U.S.C. §2250. The government argues that if Mr. Bournes had registered under Alabama's law, then he could not be prosecuted under SORNA. That is simply incorrect.

18 U.S.C. §2250(a)(3) provides that it is a crime for an individual who "knowingly fails to . . . update a registration as required by" SORNA. An individual, such as Mr. Bournes, who was convicted and released prior to the enactment of SORNA and who changes his name, residence, employment or student status, must "within 3 business days" inform the appropriate jurisdiction of "all changes in the information required for that offender." 42 U.S.C. §16913(c).

Mr. Bournes could have fully complied with the registration requirements of the State of Alabama and would have still been in violation of SORNA. Alabama's sexual offender registration law requires the offender to inform the sheriff or city police chief of his change of address within 7 days of that change. *See* Code of Alabama (1975) §13A-11-200

Thus, had Mr. Bournes registered with the State of Alabama seven days after he arrived, he would have been in compliance with state law, but not with the three day requirement of SORNA. He would have, on the fourth day, been subject to prosecution under 18 U.S.C. §2250.

Although the government appears to assert that if Mr. Bournes had simply registered with the State of Alabama, he would not be subject to federal prosecution under SORNA, this would appear to be disingenuous. As many individuals who are serving and who have served sentences for having violated 18 U.S.C. §922(g)(1), it does not matter that the State of Alabama allows a convicted felon, if the felony is not a violent felony, or felon is not either a drug addict or a "habitual drunkard," to possess a handgun under Alabama law. *See* Code of Alabama (1975) §13A-11-72. Possession of a pistol by a felon, although allowed in certain instances by the state, are clearly violations of federal law. *See* 18 U.S.C §922(g). This example clearly demonstrates the government's assertion that the failure of the State of Alabama to implement SORNA is of no consequence and that Alabama registration equals SORNA registration is disingenuous. This single fact belies the government's position that "Alabama's failure to update its registry and procedures to confirm with SORNA has no bearing on Bournes' independent obligation." (Doc #34 at 11). Bournes could have been in compliance with Alabama's registration requirements if he had registered on the seventh day, but he would have clearly been in violation of SORNA's requirement that he register no later than three days after entering the state.

Although the government cites *United States v. Fuller*, 2008 WL 2437869, *2 (N.D. N.Y. June 13, 2008), in support of its position that a state's compliance with SORNA is irrelevant, Mr. Bournes would point to *United States v. Aldrich*, 2008 U.S. Dist. LEXIS 11411, *15 (D. Neb. Feb. 14, 2008) (Nebraska has not drafted a law to comply with SORNA and is not required to do so before July 27, 2009 and therefore the court found that the *Aldrich* indictment violates the *Due Process Clause* because of this failure). In *United States v. Barnes*, 2007 U.S. Dist. LEXIS 53245, *19 (S.D. N.Y. July 23, 2007), the court rejected the government's position that knowledge of state law reqiring registration is equivalent to knowledge of SORNA's requirements. The *Barnes* court pointed out that although it was true that Barnes was required to register under both New York and New Jersey state law, he was "given ten days to do so." *Id.* at *10.

Mr. Bournes does not assert that he cannot be prosecuted by the State of Alabama for failing to register, but does indeed assert, that since Alabama has not yet implemented SORNA registration requirements, he cannot be prosecuted for failing to register under SORNA when Alabama has not put into place SORNA registration for him to do so.

Accordingly, this Court should find that because Alabama has not yet implemented SORNA, and does not have to do so until July 27, 2009, there is no present requirement in Alabama for Mr. Bournes to register under SORNA and the indictment for failure to register should be dismissed. *See United States v. Aldrich*, 2008 U.S. Dist. LEXIS 11411, *15 (D. Neb. Feb. 14, 2008); *United States v. Barnes*, 2007 U.S. Dist. LEXIS 53245, *19 (S.D. N.Y. July 23, 2007).

Lastly, the government misunderstands Mr. Bournes reference to the SMART Guidelines. While it is true that the Guidelines are not constitutional in nature and their violation is not cognizable, Mr. Bournes would refer this Court to them a instructive and an interpretative guide to

the Department of Justice's own understanding of SORNA. However, the government is being disingenuous in brushing aside the SMART Guidelines.

**B.    To Punish Mr. Bournes for a Law that Is Not Yet Applicable to Him Would Violate the *Ex Post Facto* Clause**

Punishing Mr. Bournes for failing to register under SORNA – a law not yet applicable to him – would violate the *Ex Post Facto* Clause of the Constitution. *See* U.S. Const., art. I, §9, cl. 3. In *Weaver v. Graham*, 450 U.S. 24 (1981), the United States Supreme Court explained that the *Ex Post Facto* Clause prohibits punishment of a defendant "for an act which was not punishable at the time it was committed." 450 U.S. 24, 28. The Supreme Court reasoned: "Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when . . . punishment [is increased] beyond what was prescribed when the crime was consummated." *Id*. at 30-31.

SORNA delineates how and when a sex offender should register under the Act. In general, sex offenders are required to register in each jurisdiction where the sex offender resides within three days of being sentenced, unless they are sentenced to a term of imprisonment for the sex offense, in which case they must register before completing their sentence. *See* 42 U.S.C. § 16913(a)-(b). If a sex offender has a change in name, residence, employment, or student status, the sex offender must update their registration within three days. *See* 42 U.S.C. § 16913(c). SORNA clearly creates a new federal crime for those individuals who fail to register, or to keep their registration current, despite being required to do so by subjecting the sex offender to fines or imprisonment up to ten years, or both. *See* 18 U.S.C. § 2250(a).

As shown above, when Mr. Bournes arrived in the State of Alabama, he was required to

register within seven days and not the three days pursuant to SORNA. In addition, his knowledge of his registration requirements are the result of his registration in Florida, and as he was informed when he registered in Florida, that if he moved to another state, he was required to comply with the registration requirements of that state. *See* Government Exhibit 5 to United States' Response to Motion to Dismiss Indictment (Response) at paragraph 7.

The language and context of §16913(c) leads to the inescapable conclusion that it requires SORNA implementation. This subsection reads as follows: first, as previously noted, the time for re-registration is three days, not ten days as established in the Wetterling Act. 42 U.S.C. §14071. The term "sex offender registry" is a defined term in SORNA, 42 U.S.C. §16911(9), and the information required in the sex offender registry required by SORNA appears in the very next section, 42 U.S.C. § 16914. Subsection (c) refers twice to the information required to be reported in the SORNA sex offender registry, and this information goes beyond that required by the Wetterling Act or the Code of Alabama §§15-20-1 *et. seq.*

Additionally the context of subsection (c) shows that it refers only to SORNA, not previously established state systems. Subsections (b) and (d) refer to initial registration under SORNA, which has no application to pre-SORNA state statutes. Similarly, subsection (e), provides for a minimum state penalty "for the failure of a sex offender to comply with the requirements of this title."

The prosecution must establish that the applicable provision of SORNA was effective on the alleged date of the offense. There are four potential dates to consider as the effective date of 18 U.S.C. § 2250 as applied to Mr. Bournes in this case. The possibilities are the date of enactment, July 27, 2006; the date of the interim regulation, February 28, 2007; the date Alabama implements SORNA; and the date Mr. Bournes is registered under SORNA. Mr. Bournes asserts that the date

Alabama implements SORNA can be the only possible effective date, then this prosecution is *ex post facto*.

Because Mr. Bournes was never advised of the new requirements of SORNA, either the provisions of SORNA must also encompass precursor state registration statutes or the scope of the penalty provision, 18 U.S.C. §2250, must go beyond SORNA to precursor state or federal registration laws. The penalty provision explicitly applies only to SORNA. Section 113 of SORNA consistently uses SORNA specific terms "initial registration" and "sex offender registry" such that it is clear that all five subsections apply to SORNA exclusively, and neither subsection (a) or (c) requires a sex offender to register in a pre-SORNA state registration scheme.

As a result, the effective date of the application of 42 U.S.C. §16913 and 18 U.S.C. §2250 to Mr. Bournes is after a relevant state establishes a SORNA sex offender registry and advises Mr. Bournes of the new requirements of SORNA. Criminally punishing Mr. Bournes for failure to register under SORNA when he had no such duty to register directly violates this principle.[3] *See United States v. Clements*, CR 08-00303, *29 (D. Ariz. June 5, 2008). Therefore, the indictment in this matter is due to be dismissed as a violation of the *Ex Post Facto* Clause.

---

[3] A retroactive application of SORNA to Mr. Bournes would also violate the *Ex Post Facto* clause by increasing Mr. Bournes' punishment for an offense committed over a decade ago. In *Smith v. Doe*, 538 U.S. 84 (2003), a divided Supreme Court narrowly held that the retroactive application of the Alaska sex offender registration statute did not violate the *Ex Post Facto* Clause because it was not punitive, but instead was civil in nature. However, the Alaska statute that was at issue in *Smith* is different in many critical ways from SORNA. SORNA's penalties are much more burdensome, onerous, and expansive than those of the Alaska statute. The Alaska statute was much more limited than SORNA in that it created a single sex offender registry that did not require dissemination of sex offender information through the Internet, did not establish a community notification program, did not establish in person reporting requirements, and did not establish felony criminal penalties. *Id*. at 90-91 (summarizing provisions of Alaska statute). These differences make it evident that unlike the Alaska statute, SORNA is indeed punitive, and therefore, its retroactive application violates the *Ex Post Facto* Clause.

**C.     SORNA's Application To Mr. Bournes Violates the Due Process Clause**

SORNA explicitly provides that one is "unable" to register in a jurisdiction where the Act has yet to be implemented. 42 U.S.C. §16913(d).  By doing so, the statute recognizes that where a state, like Alabama, has not passed legislation conforming its sex offender registry with SORNA's requirements, it is impossible for a sex offender in that jurisdiction to register under SORNA.

The government suggests that Mr. Bournes argument that it is impossible for him to register under SORNA until Alabama implements SORNA procedures is incredible. Response at 15. However, Mr. Bournes would submit that the government simply ignores the plain reading of the legislation.  As shown above, Mr. Bournes could have registered on the seventh day after arriving in Alabama, and he would have still been in violation of SORNA's requirement to register within three days.  The government's assertion that compliance with Alabama's registration requirements equals compliance with SORNA plainly ignores the plain language requirements for registration under SORNA.

Simply put, if a state has not yet conformed its registry with SORNA, no state apparatus exists through which the offender can come into compliance with SORNA.  Criminalizing the failure to do something that is impossible to do violates the Due Process Clause's guarantee of fundamental fairness.  *See United States v. Dalton*, 960 F.2d 121, 124 (10th Cir. 1992) (it is a violation of fundamental fairness to hold someone liable for a crime when an essential element of the crime is his failure to perform an act that he is incapable of performing). Because it was (and remains) impossible for Mr. Bournes to comply with SORNA in Alabama because Alabama has not yet

implemented SORNA, punishing him for failing to register under that statute violates his due process rights.

The government also asserts that the Due Process Clause was not violated even though Mr. Bournes was not notified of his requirement to register by the government. Throughout its argument, the Government relies upon the fact that Mr. Bournes has previously registered in Florida and therefore was informed that he had to register under SORNA if he traveled to another state. In fact, the government clearly states in its response that "what is required is that he merely comply with existing state law." Response at 17. As shown above, had Mr. Bournes complied with Alabama law, and registered between four and seven days after arriving, he would have clearly violated SORNA.[4] The Florida registration simply states that if Mr. Bournes leaves Florida for another state, he is required to comply with the registration requirements of that state. *See* Response Exhibit 5 at para. 7. The government's argument that Mr. Bournes' "knowledge of Florida's sex offender registration obligations is sufficient to establish liability under SORNA" is misplaced. Response at 22. The fact that Alabama does not require registration for up to seven days does not put Mr. Bournes under constructive notice of SORNA's three day registration requirement.

Although the government asserts that the SMART Guidelines are not constitutional in nature and a violation of them is not cognizable in this matter, such an argument is disingenuous because, simply put, these were developed as a way to "interpret and implement SORNA." *See* Response at 13. This argument ignores the plain language of 42 U.S.C §16917(b) which states that if an individual cannot be notified upon initial release, then:

---

[4] Mr. Bournes does not assert that he was not required to register under Alabama law, but that state registration does not equate to SORNA registration until Alabama implements SORNA.

> (b) Notification of sex offenders who cannot comply with subsection (a) of this section
> The Attorney General shall prescribe rules for the notification of sex offenders who cannot be registered in accordance with subsection (a) of this section.

42 U.S.C. §16917(b).

18 U.S.C. §2250(a)(3) provides that a defendant must knowingly fail to register in order to violate the statute. The plain language of 42 U.S.C. §16917 ("Duty to notify sex offenders of registration requirements and to register") requires the Government affirmatively to inform offenders of SORNA before any duty to register under the Act arises. The statute puts an obligation upon the government to "prescribe rules for the notification" of individuals like Mr. Bournes who cannot be notified upon their initial release. The government has not yet done so. The government's continued assertion that state registration when the state has not yet implemented SORNA's registration requirements is sufficient, is misplaced.

While the Guidelines may not establish a legal right, they are instructive in that they explicitly detail, from the Department of Justice office mandated with insuring that state reporting requirements comply with the strictures of SORNA, how SORNA is to be implemented. In fact, the SMART Guidelines include an example that clarifies that notice to register under an existing state sex offender law does not serve as notice under SORNA:

> Example 2: A sex offender is required to register for life by a jurisdiction based on a rape conviction in 1995 for which he was released from imprisonment in 2005. The sex offender was initially registered prior to his release from imprisonment on the basis of the jurisdiction's existing law, but the information concerning registration duties he was given at the time of release did not include telling him that he would have to appear periodically in person to verify and update the registration information (as required by SORNA § 116) because the jurisdiction did not have such requirement at the time. *So the sex offender . . . will have to be given new instructions about that as a part of the jurisdiction's implementation of SORNA.*

72 Fed. Reg. 30228 (emphasis added).

The government's assertion that a 18 U.S.C §2250 conviction made be had despite a lack of notification because notification is not an element of the offense, Mr. Bournes asserts that such lack goes directly to the knowledge component of the offense, and due to the fact that SORNA's three day reporting requirement is more, and not less restrictive than Alabama's seven day, without having been informed, Mr. Bournes due process rights have been violated.

In the absence of the required notice, prosecuting Mr. Bournes for failing to register violates his due process rights. The Supreme Court's decision in *Lambert v. California*, 355 U.S. 225 (1958) illustrates this point. In that case, the Court invalidated under the Due Process Clause, a prosecution for failing to register as a felon, as required by a Los Angeles city ordinance. In finding a due process violation, the Court held that when "wholly passive" conduct such as the "mere failure to register" is criminalized, notice is essential:

> Engrained in our concept of due process is the requirement of notice. Notice is sometimes essential so that a citizen has the chance to defend charges. ... Notice is required in a myriad of situations where a penalty or forfeiture might be suffered for mere failure to act. ... [T]he principle is equally appropriate where a person, wholly passive and unaware of any wrongdoing, is brought to the bar of justice for condemnation in a criminal case.

*Id.* at 228. As was the defendant in *Lambert*, Mr. Bournes is being prosecuted for wholly passive conduct – failing to register – when he had no notice that a federal statute required him to do so. Applying 18 U.S.C. § 2250 to Mr. Bournes thus violates due process.[5]

---

[5] Some district courts have summarily concluded that a due process violation does not occur even when a sex offender is not on notice of his duty to register under SORNA because "ignorance of the law is no excuse." *See United States v. Mitchell*, 2007 WL 2609784, at *2 (W.D. Ark. Sept. 6, 2007); *United States v. Manning*, 2007 WL 624037, at *2 (W.D. Ark. Feb. 23, 2007). However, the Supreme Court in *Lambert* specifically rejected this argument. 355 U.S. at 228. The Court

The government's reliance upon the district court decisions in *Hinen*, *Mitchell*, and *Manning* which have treated notice of a state registration requirement as sufficient notice of SORNA requirements is misplaced. *See United States v. Mitchell*, 2007 WL 2609784, at *2 (W.D. Ark. Sept. 6, 2007); *United States v. Manning*, 2007 WL 624037, at *2 (W.D. Ark. Feb. 23, 2007). These opinions are flawed because they fail to acknowledge or analyze the significant differences between SORNA and state law.

Indeed, the government's entire argument that Mr. Bournes' due process rights have not been violated rest upon the premise that registration under state law is registration under SORNA. As pointed out above, and in his Motion to Dismiss the Indictment, and conceded by the government, Alabama's registration requirements do not comply with federal law. If the state law does not comport with its federal counterpart, then compliance with state law cannot equate to compliance with federal law. Therefore, the indictment is due to be dismissed for violation of due process.

### D.    Congress Did Violate The Non-Delegation Doctrine By Delegating The Rulemaking Authority Under 18 U.S.C. §2250 To The Attorney General.

Even if this Court should find that Mr. Bournes is subject to SORNA and had a duty to register under the terms of the Act, this Court should find that the Act is unconstitutional. By delegating to the Attorney General the broad authority to specify SORNA's applicability to offenders convicted before the passage of the Act, before SORNA's implementation, and before they are

---

emphasized that because failure to register is a "wholly passive" act, it requires notice under due process. *Id.* Because the district courts' opinions in *Mitchell* and *Manning* ignore this Supreme Court precedent, the opinions have no precedential value here.

Moreover, these opinions are flawed because they fail to address the plain language of SORNA and the SMART Guidelines, which direct Government officials to affirmatively notify sex offenders of their obligation to register. 42 U.S.C. § 16917; 72 Fed. Reg. at 30228.

initially able to register, Congress violated the non-delegation doctrine. *See* 42 U.S.C. § 16913(d).

"Congress is manifestly not permitted to abdicate or transfer to others the legislative functions with which it is [constitutionally] vested." *Panama Refining Co. v. Ryan*, 293 U.S. 388, 421 (1935). This "non-delegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government." *Mistretta v. United States*, 488 U.S. 361, 371 (1989).

The Attorney General is given broad powers to determine retroactive application of SORNA. 42 U.S.C. § 16913(a). This is indeed a separation of powers issue. *See Mistretta v. United States*, 488 U.S. 361, 372 (1989). Congress is permitted to obtain assistance from other branches of the government for purposes of implementing SORNA, but Congress cannot allow the Attorney General to legislate the scope of the retroactive reach. SORNA allowed the Attorney General discretion to legislate the length of time, scope and reach of the retroactive application. This is not implementation. The Attorney General is permitted to choose who it applies to and when it applies. This is a legislative function. In *United States v. Aldrich*, 2008 U.S. Dist. LEXIS 11411, *15n.5 (D. Neb. February 14, 2008), the court was so concerned that this was a violation of the non-delegation doctrine, that despite finding there was both an ex post facto and Due Process Clause violation, the *Aldrich* Court specifically addressed the subject and stated that it was of the opinion that this is a legislative, not an executive function, and thus is unconstitutional.

Again, in support of its argument, the government mistakenly relies upon Mr. Bournes' obligation to register under state law to conclude that he could not be included in those offenders unable to register as described in 42 U.S.C. §16913(d). The government appears to suggest that Mr. Bournes was either liable under 42 U.S.C. §16913(a) or (c) and not (d). Such a reading would clearly ignore the plain language of 42 U.S.C. §16913(d), which states that the Attorney General will

14

specify whether SORNA's requirements apply to those convicted of offenses before July 27, 2006. To read this as somehow only covering those individuals whose convictions may not have been an offense under a statute in one state while being an offense in another, beggars comprehension.

The government would have this Court to read 42 U.S.C. §16913(a) as covering all classes of sex offenders regardless of when they were convicted. They suggest that 42 U.S.C. §16913(d) applies only to those offenders who "were unable to initially register under SORNA because their crime of conviction did not require registration under federal law or state law at the time of the conviction." (Response at 26). If this was the intent, then Congress would have so stated. The government's reading belies the plain language of the statute. Indeed, if this was how §16913(d) is to be read, then (b) is unnecessary, because (a) covers all sex offenders and there is no need to explain any requirement for initial registration. Clearly, §16913(d) applies to all sex offenders who were convicted prior to July 27, 2006.

Although the non-delegation doctrine does not prevent Congress from obtaining the assistance of its coordinate Branches, it can do so only if Congress gives clear guidance to the executive branch as to the intent of the legislation. *Id*. at 372-73. This means that Congress must "clearly delineate[] the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Id*. at 372-73 (citation and quotation omitted).[6] In both *Panama Refining Co.*, 293 U.S. 421, and *Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935), the Supreme Court held that Congress had unconstitutionally authorized the Executive to make laws because

---

[6] In *Mistretta*, unlike its guidance for SORNA, Congress gave the Sentencing Commission very specific and detailed guidance on how to promulgate the Sentencing Guidelines. *Id*. at 374. Thus, the Supreme Court found that Congress did not delegate its legislative duties to the Executive. *Id.*

15

"Congress had failed to articulate any policy or standard that would serve to confine the discretion of the authorities to whom Congress delegated power." *Mistretta*, 488 U.S. at 374 , n.7; *see Panama Refining Co.*, 293 U.S. at 421 (Congress unconstitutionally, without any guidance, authorized the Executive to prohibit the transportation of excess petroleum, subject to fine and imprisonment); *Schechter*, 295 U.S. at 495 (Congress unconstitutionally authorized the Executive to prescribe codes of fair competition, the violation of which would be a misdemeanor).

Similarly, in SORNA, Congress failed to articulate any policy to guide the Attorney General on the retroactivity of the Act. Congress gave no guidance to the Attorney General as to whether all individuals who were convicted of sex offenses prior to the Act should be subject to SORNA, regardless of the remoteness of their offenses, regardless of when they completed their sentences, and regardless of the nature of the offenses. Instead, Congress gave the Attorney General sole discretion to determine who should be subject to SORNA and who should not. In unbridled fashion, Congress handed the Attorney General the awesome power of legislating the breadth of the Act. The fact that there is argument over whether Mr. Bournes falls under 42 U.S.C. §16913(a), (c) or (d), illustrates Congress' failure to articulate a policy. If Congress intends any law, particularly one like this, to have retroactive effect, it must follow the path charted in the Constitution. Here, Congress explicitly handed this quintessentially legislative function to an official in the Executive Branch charged with law enforcement. As such, it abdicated its proper role and violated the separation of powers.

E.    **The Attorney General's Regulation Retroactively Applying SORNA Was Promulgated Without Notice and Comment and Violated the Administrative Procedure Act**

The government asserts that Mr. Bournes does not have standing to pursue his claim that the

Attorney General violated the Administrative Procedures Act (APA). The government suggests that its reading of 42 U.S.C. §16913(d) precludes any such claim. The government's reading of §16913(d) belies the fact that Mr. Bournes simply could not register as required under §16913(b). As stated above, §16913(a) is a general statement concerning registration. §16913(b), covers those individuals who are presently incarcerated. §16913(c) requires the offender to update within three days, and §16913(d), applies to Mr. Bournes. Mr. Bournes was convicted "before the enactment" of SORNA, and is subject to the regulations promulgated pursuant to §16913(d). Therefore, Mr. Bournes has standing to pursue this claim.

The February 28, 2007 regulation retroactively applying SORNA to all persons convicted of sex offenses prior to the Act's enactment on July 27, 2006 was issued in violation of the Administrative Procedure Act (APA), 5 U.S.C. §553, because the Attorney General failed to provide notice to the public and a comment period as required by 5 U.S.C. § 553(d) before the rule became effective.

The government's argument that notice was unnecessary because this was an emergency situation is belied by the fact that SORNA is not yet implemented anywhere, and in fact, at the time the Attorney General cried emergency, the Act itself did not require implementation until July 27, 2009, more than a year later.

This was not one of those times where APA permits agencies to enact rules without a notice and comment period for "good cause" where it is "impractical, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b). The " good cause" exception is to be narrowly construed and only reluctantly countenanced. "The exception is not an escape clause; its use should be limited to emergency situations." *Utility Solid Waste Activities Group v. Environmental Protection Agency*,

236 F.3d 749, 754 (D.C. Cir. 2001) (omitting citations and quotations). Here, the Attorney General erroneously relied upon the "good cause" exception in foregoing the public notice and comment period. The Attorney General claimed that notice and comment was "impractical, unnecessary, and contrary to public interest." 72 Fed. Reg. at 8896. In support of his assertion, the Attorney General stated that the "immediate effectiveness of the rule is necessary to eliminate any possible uncertainty about the applicability of the Act's requirements." 72 Fed. Reg. at 8896. Moreover, the Attorney General explained that "[d]elay in the implementation of [the] rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders through prosecution and the imposition of criminal sanctions." 72 Fed. Reg. at 8896. However, these assertions have no basis even when evaluated against the Attorney General's own manual interpreting the "good cause" exception under the APA.

According to the Attorney General's Manual, a 30-day public notice and comment period is "impracticable" under the APA when "an agency finds that due and timely execution of its functions would be impeded by the notice otherwise required in [§ 553]." *Utility Solid Waste Activities Group*, 236 F.3d at 754 (citing Attorney General's Manual on the Administrative Procedure Act (1947) at 30-31). Here, a 30-day waiting period could not have delayed registrations or impeded the functioning of law enforcement agencies. The states are not obligated to comply with SORNA until at least July, 2009. *See* 42 U.S.C. § 16924. More than a year after SORNA's enactment, no state – including Alabama – has a mechanism in place to register sex offenders under SORNA. Further, the Attorney General's regulation provides no guidance on how states are to register sex offenders prior to implementation.

Foregoing the 30-day waiting period did nothing to change this reality. Accordingly, a notice

and comment period was not "impracticable." Likewise, a notice and comment period was not "contrary to the public interest." The Attorney General's Manual provides that this ground is satisfied when "the interest of the public would be defeated by any requirement of advance notice." *Utility Solid Waste Activities Group*, 236 F.3d at 754 (citing Attorney General's Manual at 31). For the same reasons noted in the above-paragraph, a waiting period would not have compromised the purported public interest here (expediting registrations), since the Attorney General's regulation plainly fails to achieve this result.

Finally, the notice and comment period was not "unnecessary." The Attorney General's manual explains that this term refers to "the issuance of a minor rule in which the public is not particularly interested." *Id*. (citing Attorney General's Manual at 31); *see also South Carolina v. Block*, 558 F. Supp. 1004, 1016 (D.S.C. 1983) ("unnecessary" exception is "confined to those situations in which the administrative rule is a routine determination, insignificant in nature and impact, and inconsequential to the industry and to the public."). Certainly, an all encompassing rule that purports to make SORNA retroactive to all offenders who ever committed a sex offense fails to meet this definition of "unnecessary."

For all the reasons noted above, the Attorney General had no "good cause" to excuse the APA's notice and comment period. Thus, the rule should be invalidated. *See Nat'l Org. Of Veterans' Advocates, Inc. v. Sec'y. of Veterans Affairs*, 260 F.3d 1365, 1375 (Fed. Cir. 2001) ("Failure to allow notice and comment, where required, is grounds for invalidating the rule.") (*citing Auer v. Robbins*, 519 U.S. 452, 459 (1997)).

**F.    Congress Exceeded its Power under the Commerce Clause by Enacting Two Specific Provisions of SORNA—18 U.S.C. §2250(a) and 42 U.S.C. §16913**

Section 2250(a) creates a federal offense where an individual (1) is required to register under SORNA; (2) travels in interstate commerce; and (3) knowingly fails to register or update a registration as required by SORNA. Section 16913 imposes registration requirements on all sex offenders in the United States regardless of whether they travel in interstate commerce or not.

### 1.     18 U.S.C. § 2250(a) Violates the Commerce Clause

The government's assertion that §2250(a) does not violate the Commerce Clause is incorrect. The United States Supreme Court has "identified three general categories of regulation in which Congress is authorized to engage under its commerce power. First, Congress can regulate the channels of interstate commerce. Second, Congress has authority to regulate and protect the instrumentalities of interstate commerce, and persons or things in interstate commerce. Third, Congress has the power to regulate activities that substantially affect interstate commerce." *Gonzales v. Raich,* 545 U.S. 1, 16-17 (2005)(internal citations omitted).

In the instant matter it is clear that neither the regulation of channels or instrumentalities of commerce are being dealt with. Nor is the regulation of persons or things in interstate commerce. This is not a case where the interstate travel is intended to further the crime itself,[7] such that a case by case determination can be made as to whether there is a sufficient nexus between the crime and interstate commerce. *See United States v. Lopez,* 514 U.S. 549, 561 (1995). In fact, the statute makes no effort to regulate the interstate movement of persons who are sex offenders. Those persons are

---

[7] *See, e.g.*, The Mann Act, 18 U.S.C. §§2421, *et seq.* (criminalizing, *inter alia*, the knowing transportation of any individual in interstate commerce with the intent that such individual engage in prostitution); 18 U.S.C. §1201 (criminalizing, *inter alia*, kidnaping when the offender travels in interstate commerce while committing or in furtherance of the commission of the offense); 18 U.S.C. §228 (criminalizing failure to pay child support obligations when the debtor travels in interstate or foreign commerce with the intent to evade a support obligation).

20

permitted to travel freely throughout the country without consequence, so long as they remain registered in the state in which they reside, work and/or go to school. Thus, to withstand scrutiny under the *Commerce Clause*, this statute must regulate activities that substantially affect interstate commerce.

The government asserts that Mr. Bournes has misconstrued and misapplied the holdings of *Lopez* and *Morrison*. Response at 29. *See United States v. Lopez,* 514 U.S. 549 (1995); *United States v. Morrison*, 529 U.S. 598 (2000). In *Lopez,* in which the Supreme Court held that "the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q)(1)(A) [(§ 922(q))], which made it a federal crime to knowingly possess a firearm in a school zone, exceeded Congress' authority under the Commerce Clause." *Morrison*, 529 U.S. at 609. There were four significant considerations supporting that decision.

First was the fact that "§ 922(q) was a criminal statute that by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Id.* at 610. Second, "the statute contained no express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce." *Id.* at 611. Third, "neither § 922(q) nor its legislative history contains express congressional findings regarding the effects upon interstate commerce of gun possession in a school zone." *Id.* at 612. Finally, the Court rejected the "costs of crime" and "national productivity" arguments and "found that the link between gun possession and a substantial effect on interstate commerce was too attenuated." *Id.*

In *United States v. Morrison*, the Supreme Court held that the Commerce Clause did not provide Congress with the power to enact 42 U.S.C. §13981 (§13981), which provided a federal civil

remedy for victims of gender-motivated violence. *See Morrison*, 529 U.S. at 602-03, 619. Just like the statute at issue in *Lopez*, the Court found that §13981 did not regulate economic activity and did not contain a "jurisdictional element establishing that the federal cause of action is in pursuance of Congress' power to regulate interstate commerce." *Id*. at 613. The Court did note that §13981 was supported by numerous Congressional findings. However, those findings relied on the same "costs of crime" and "national productivity" arguments that the Court found wanting in *Lopez*. *Morrison*, 529 U.S. at 614. Ultimately, the Court rejected "the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Id.* at 617.

The government asserts that 18 U.S.C. §2250's "jurisdictional element" is sufficient to establish a link between a failure to register and interstate commerce. Response at 31. However, while there is a "jurisdictional element" present in §2250, upon close examination it becomes apparent that this supposed link is superficial and insufficient to support a finding of substantial affect on interstate commerce.

The Commerce Clause, and the case law interpreting its limits, require more than statutory "lip service" to interstate commerce. An examination of SORNA's legislative history does not include Congressional findings as to the effect upon interstate commerce -- if any -- of sex offenders' failure to register in their states of residence. In *Morrison*, the Supreme Court referred to the need for a jurisdictional element that would (a) limit the statute's reach to conduct which has an "explicit connection with or effect on interstate commerce," *Id*. at 611, or (b) establish that the statute is in "pursuance of Congress' power to regulate interstate commerce," *Id*. at 613. The language of §2250(a)(2)(B) accomplishes neither of those things. The statute does not become applicable to an

22

individual until after that person has completed his or her interstate travel. And it applies to persons who have engaged in interstate travel regardless of how legitimate their reasons for such travel may have been. The mere fact that the individual has, at some point, traveled in interstate commerce does not establish that his or her subsequent failure to register "substantially affects interstate commerce." Simply put, there is no nexus between the crime (failure to register) and the interstate travel.

Furthermore, it is clear that Congress did not believe that mere travel by sex offenders was not an ill that required its attention, as the statute does not require sex offenders to notify authorities before they travel, or even to register in every state they visit. The Government argues, in essence, that the outcome in *Lopez* would have been different if the statute at issue had prohibited possession of a gun in a school zone by someone who, in the past, had traveled in interstate commerce -- even if that travel was unrelated to the gun possession. Clearly, such a provision would not have eliminated the constitutional infirmity of §922(q). Therefore, this Court should find that 18 U.S.C §2250 is constitutionally infirm and is not a valid exercise of Congress' power under the Commerce Clause. *See United States v. Powers*, 544 f. Supp. 2d 1331, 1336 (M.D. Florida, Orlando Division, April 18, 2008).

### 2.    42 U.S.C. §16913 Violates the Commerce Clause

The registration requirements found at §16913 also exceed Congress' power under the Commerce Clause. Mr. Bournes contends §16913 is unconstitutional because Congress lacks the power to force citizens who have been convicted of purely local offenses under state law to register as sex offenders.

A conviction for failure to register as a sex offender is predicated upon proof that the defendant was required to register under §16913. 18 U.S.C. § 2250(a). Section 16913, in turn,

requires all sex offenders in the United States to register.  Unlike § 2250(a), its requirements are not limited to only those sex offenders who travel in interstate commerce.  By its terms, §16913 does not regulate the use of the channels of interstate commerce or the instrumentalities of interstate commerce.  Therefore, it cannot be upheld under either of the first two categories of activity subject to regulation under the Commerce Clause.  Instead, if it is to be sustained under the Commerce Clause it must fall within the third *Lopez* category, *i.e.*, regulation of "activities that substantially affect interstate commerce."[8] 514 U.S. at 558.

Only a few courts have considered whether §16913, as opposed to §2250(a), is a valid exercise of Congress' power to regulate activities that substantially affect interstate commerce.  Section 16913 has nothing to do with commerce or any sort of economic enterprise; it regulates purely local, non-economic activity.  While certain sex offenses may be commercial or economic in nature (e.g., child pornography), sex offenders themselves are not necessarily engaged in commercial or economic activity.  Even though the Adam Walsh Act regulates some sex offenses that are commercial (e.g., the distribution of child pornography), its regulation of sex offenders is not indispensable to the success of its other provisions.  Unlike §2250(a), §16913 has no express jurisdictional element to limit its reach to sex offenders connected with or affecting interstate commerce.  SORNA's legislative history contains no express congressional findings regarding the

---

[8] Justice Scalia's concurring opinion, and to a lesser extent, the majority opinion, in *Gonzales v. Raich* recognized that Congress' power to regulate activities under the third Lopez category is not derived from the Commerce Clause alone. *Raich*, 545 U.S. 1, 5, 17, 22 (2005); *id.* at 34 (Scalia, J., concurring). Rather, it results from the interplay between the Commerce Clause and the Necessary and Proper Clause. *Id.* Moreover, the interplay between the Commerce Clause and the Necessary and Proper Clause may permit Congress to regulate categories of activity beyond those that substantially affect interstate commerce. *Raich*, 545 U.S. at 34–35 (Scalia, J., concurring). For these reasons, I will discuss the constitutionality of §16913 under the Necessary and Proper Clause separately below.

effects of sex offender registration on interstate commerce. Although tracking sex offenders may enhance public safety and may in turn promote a more productive economy, any effect on interstate commerce from requiring sex offenders to register is too attenuated to survive scrutiny under the Commerce Clause. *See Lopez*, 514 U.S. at 563–64; *Morrison*, 529 U.S. at 617.

Recently, in *United States v. Waybright*, Case 9:08-cr-00016 (D. Mont. June 11, 2008), the court found that §16913 is not a valid exercise of Congress' Commerce Clause power. *Waybright*, Case 9:08-cr-00016 at 21-22. The government is mistaken in its belief that *Waybright* is in error. Response at 39.

If, as Mr. Bournes asserts and the *Waybright* Court found, §16913 cannot be sustained under the Commerce Clause, it becomes necessary to analyze its validity in relation to the exercise of any other power delegated to Congress in the Constitution. Several district courts have reviewed §16913 and approved of Congress' enactment of §16913 pursuant to powers other than the Commerce Clause power. For example, in *United States v. Thomas*, 534 F. Supp. 2d 912, 920–22 (N.D. Iowa 2008), the court determined that while the enactment of §16913 was not within Congress' Commerce Clause power, it was a valid exercise of Congress' power under the Necessary and Proper Clause.

The Necessary and Proper Clause authorizes Congress to "make all Laws which shall be necessary and proper for carrying into Execution the [Congressional] Powers" enumerated in the Constitution. U.S. CONST. art. I, § 8, cl. 18. The Supreme Court explained the scope of the Necessary and Proper Clause in *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 421 (1819), stating:

> [W]e think the sound construction of the constitution must allow to the national legislature that discretion, with respect to the means by which the powers it confers are to be carried into execution, which will enable that body to perform the high

duties assigned to it, in the manner most beneficial to the people. Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional.

Congress is permitted to regulate intrastate activities under the Necessary and Proper Clause that do not involve interstate commerce if such regulation is necessary to make a regulation of interstate commerce effective. *Raich*, 545 U.S. at 35 (Scalia, J., concurring). "The relevant question is simply whether the means chosen are reasonably adapted to the attainment of a legitimate end under the commerce power." *Id*.

The *Thomas* court determined §16913 was an appropriate and reasonably adapted means for Congress to attain the legitimate end of §2250(a)—monitoring sex offenders who cross state lines. 534 F. Supp. 2d at 921. However, the *Thomas* court's analysis relies on Justice Scalia's characterization of the interplay between the Commerce Clause and the Necessary and Proper Clause in *Raich*. *Thomas*, 534 F. Supp. 2d at 921. *Raich* in turn addressed whether Congress could regulate the local cultivation of marijuana for medicinal purposes as part of a larger regulatory scheme—the Controlled Substances Act ("CSA")—aimed at combating interstate trafficking in illicit drugs. 545 U.S. at 9. In concluding the regulation of intrastate marijuana cultivation was necessary to regulate interstate trafficking in marijuana, and thus upholding the CSA, the Court relied heavily on the economic and commercial nature of the drug trade. *Id*. at 18–19, 22. There is an established, and lucrative, interstate market for controlled substances. Prohibiting the intrastate possession or manufacture of controlled substances is a rational means of regulating that product. *Id*. at 26. The Court specifically distinguished the statutes at issue in *Lopez* and *Morrison* from the CSA by acknowledging that the former statutes dealt with non-economic activities. *Id*. at 23–25; *id.* at 38

(Scalia, J., concurring) ("[T]he power to enact laws enabling effective regulation of interstate commerce can only be exercised in conjunction with congressional regulation of an interstate market."). Just like the statutes at issue in *Lopez* and *Morrison*, SORNA does not regulate any sort of economic or commercial activity. There is no market for sex offenders. So, Congress does not need to regulate sex offenders who remain in a single state in order to effectively regulate sex offenders who travel in interstate commerce.

The *Thomas* court's reliance on *Raich* is not dispositive of this issue because §16913 is not a means to an end; it is the end of SORNA. The Court in *Raich* recognized that Congress can regulate interstate trafficking in illicit drugs under the Commerce Clause. 545 U.S. at 15. The issue considered in *Raich* was whether Congress could regulate activities beyond the scope of its Commerce Clause power in order to fill in gaps left in the CSA because of the limits of that power. *Id.* The Court approved of such a practice in *Raich*, finding that the regulation of the intrastate cultivation of marijuana was "merely one of many essential part[s] of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated." *Id.* at 24–25 (quotation omitted); *see also id.* at 36 (Scalia, J., concurring).

Unlike the intrastate regulation approved of in *Raich*, §16913 is not one part of many essential parts of a larger regulatory scheme. Nor is it intended to fill in the gaps in an otherwise valid exercise of Congress' power. Unlike the regulation of interstate drug trafficking, the creation of a federal crime for sex offenders who travel in interstate commerce and fail to register is not the overriding purpose of SORNA. The purpose of the Act is to "establish[] a comprehensive national system for the registration of [sex offenders]." 42 U.S.C. §16901. This primary purpose is accomplished by the enactment of §16913. Unlike the CSA, which utilized the necessary and

proper power to fill in the gaps of an overarching statutory scheme that was valid under the Commerce Clause power, SORNA attempts to utilize the necessary and proper power to enact an overarching statutory scheme based on the existence of Commerce Clause authority to enact a small part of that larger scheme. The Necessary and Proper Clause was not intended to bestow this authority on Congress. *See Maryland v. Wirtz*, 392 U.S. 183, 197 n.27 (1968) ("Congress may [not] use a relatively trivial impact on commerce as an excuse for broad general regulation of state or private activities."). The Necessary and Proper Clause can come to the aid of validly exercised commerce power but the commerce power cannot come to the aid of the Necessary and Proper Clause. Because the regulation of sex offenders is not economic or commercial in nature, §16913 is not merely a means to creating a federal crime for sex offenders who travel in interstate commerce and fail to register.

The *Waybright* court found that "Section 16913 is not a valid exercise of any of the congressional powers enumerated in the Constitution. As a consequence, Section 16913 is unconstitutional." *Waybright,* Case 9:08-cr-00016 at 28. Mr. Bournes asserts that the *Waybright* analysis of Section 16913's constitutionality should be applied in his case. Because it is first necessary for the government to demonstrate that Mr. Bournes was required to register under §16913 in order to obtain a conviction under 18 U.S.C. §2250(a), if this Court is persuaded that §16913 is unconstitutional, then the government will be unable to satisfy its burden of proof as to §2250(a). Therefore, the indictment must be dismissed.

**WHEREFORE**, for the reasons set forth above**,** and in his original motion to dismiss, as well as in argument presented to this Court on July 24, 2008, Mr. Bournes respectfully requests that this Honorable Court dismiss the Indictment.

Dated this 1st day of August, 2008.

Respectfully submitted,

s/ Michael J. Petersen
MICHAEL J. PETERSEN
Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: michael_petersen@fd.org
ASB-5072-E48M

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO: 2:08CR02-MHT |
| | ) | |
| JOHN GARRY BOURNES | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 1, 2008, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system, which will send notification of such filing to the following:

Jerusha Adams, Assistant U.S. Attorney.

Respectfully submitted,

s/ Michael J. Petersen
MICHAEL J. PETERSEN
Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: michael_petersen@fd.org
ASB-5072-E48M