IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | CR. NO. 2:08-cr-02-MHT |
| ) | |
| JOHN GARRY BOURNES  ) | |

UNITED STATES' NOTICE OF SUPPLEMENTAL AUTHORITY

Comes now the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and provides this Honorable Court and Defendant John Garry Bournes with notice of supplemental authority which supports the United States' opposition to Defendant's motion to dismiss indictment. (*See* Doc. # 34.) The United States submits the following:

1. In Defendant's Reply to the United States' Response to Motion to Dismiss Indictment, filed on August 1, 2008, Defendant asserted that "to the date of the filing of this reply, no court of appeals in any circuit has addressed the constitutional questions [Defendant] has raised." (Doc. # 37 at 1.)

2. However, contrary to Defendant's assertion, on July 31, 2008 – one day prior to the filing of Defendant's reply – the United States Court of Appeals for the Eighth Circuit addressed the constitutionality of the Sex Offender Registration and Notification Act ("SORNA") in *United States v. May*, __ F.3d __, 2008 WL 2917766 (8th Cir. July 31, 2008). In *May*, the Court held that the application of SORNA did not violate the Ex Post Facto clause, the sex offender lacked standing to raise the non-delegation doctrine challenge, the application of SORNA did not violate the sex

offender's Due Process rights, and SORNA does not violate the Commerce Clause. *Id*.

3. The United States asserts that the findings of the Eighth Circuit Court of Appeals in *May* are relevant to the constitutional issues before this Court and thus provides a copy of the *May* opinion to this Court. (*See* attachment.)

Respectfully submitted this the 6th day of August, 2008.

          LEURA G. CANARY
          UNITED STATES ATTORNEY

          /s/ Jerusha T. Adams
          JERUSHA T. ADAMS
          Assistant United States Attorney
          Post Office Box 197
          Montgomery, Alabama 36101-0197
          334-223-7280 phone   334-223-7135 fax
          jerusha.adams@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO.  2:08-cr-02-MHT |
| | ) | |
| JOHN GARRY BOURNES | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 6, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Michael J. Petersen.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY


/s/   Jerusha T. Adams
JERUSHA T. ADAMS
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
334-223-7280 phone    334-223-7135   fax
jerusha.adams@usdoj.gov

**Westlaw.**

--- F.3d ---- Page 1
--- F.3d ----, 2008 WL 2917766 (C.A.8 (Iowa))
2008 WL 2917766 (C.A.8 (Iowa))

**H** U.S. v. May
C.A.8 (Iowa),2008.
Only the Westlaw citation is currently available.
United States Court of Appeals,Eighth Circuit.
UNITED STATES of America, Appellee,
v.
David Louis MAY, Appellant.
No. 07-3515.

Submitted: May 13, 2008.
Filed: July 31, 2008.

**Background:** Defendant charged with failure to register as a sex offender in violation of the Sex Offender Registration and Notification Act (SORNA) moved to dismiss the indictment. The United States District Court for the Southern District of Iowa, James E. Gritzner, J., [2007 WL 2790388,](#) denied motion. Defendant appealed.

**Holdings:** The Court of Appeals, Riley, Circuit Judge, held that:
[(1)](#) registration requirements of SORNA applied to defendant;
[(2)](#) application of SORNA registration requirements to defendant did not violate ex post facto clause;
[(3)](#) defendant lacked standing to challenge SORNA provision giving authority to the Attorney General to promulgate rules regarding SORNA's applicability;
[(4)](#) conviction did not violate due process; and
[(5)](#) SORNA did not violate the commerce clause.

Affirmed.

**[1] Mental Health 257A** ⚷ 0

[257A](#) Mental Health
The Court of Appeals reviews de novo issues involving the statutory interpretation of Sex Offender Registration and Notification Act (SORNA), or constitutional challenges to SORNA's applicability. [18 U.S.C.A. § 2250(a)](#); Sex Offender Registration and Notification Act, § 113(d), [42 U.S.C.A. § 16913(d)](#).

**[2] Mental Health 257A** ⚷ 0

[257A](#) Mental Health
Registration requirements of Sex Offender Registration and Notification Act (SORNA) applied to defendant who was registered as a sex offender pursuant to state law before SORNA's enactment, and who traveled to another state after SORNA's enactment, but before the Attorney General issued an interim ruling designating the applicability of SORNA to sex offenders convicted prior to SORNA's date of enactment. [18 U.S.C.A. § 2250(a)](#); Sex Offender Registration and Notification Act, § 113(d), [42 U.S.C.A. § 16913(d)](#).

**[3] Statutes 361** ⚷ 0

[361](#) Statutes
Section and subchapter titles cannot alter the plain meaning of a statute; they can only assist in clarifying ambiguity.

**[4] Constitutional Law 92** ⚷ 0

[92](#) Constitutional Law
The application of the registration requirements of Sex Offender Registration and Notification Act (SORNA) to a defendant who was registered as a sex offender pursuant

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 2917766 (C.A.8 (Iowa))
2008 WL 2917766 (C.A.8 (Iowa))

Page 2

to state law before SORNA's enactment, and who traveled to another state after SORNA's enactment, did not violate the ex post facto clause; the statute did not punish an individual for previously being convicted of a sex crime, but rather for not registering as a sex offender, or failing to update his registration after traveling in interstate commerce. U.S.C.A. Const. Art. 1, § 9, cl. 3; Sex Offender Registration and Notification Act, § 113(d), 42 U.S.C.A. § 16913(d); 18 U.S.C.A. § 2250(a).

**[5] Constitutional Law 92**  0

92 Constitutional Law
In analyzing whether Sex Offender Registration and Notification Act (SORNA) violates the ex post facto clause, courts must first determine whether the legislature meant the statute to establish civil proceedings. U.S.C.A. Const. Art. 1, § 9, cl. 3; Sex Offender Registration and Notification Act, § 113(d), 42 U.S.C.A. § 16913(d).

**[6] Constitutional Law 92**  0

92 Constitutional Law
To determine whether the statutory scheme at issue is punitive or regulatory, for purpose of evaluating whether it violates the ex post facto clause, courts must determine whether Congress indicated either expressly or impliedly a preference for one label or the other. U.S.C.A. Const. Art. 1, § 9, cl. 3.

**[7] Constitutional Law 92**  0

92 Constitutional Law
Even if Congress's intent was to enact a regulatory scheme that is civil and nonpunitive, in determining whether the scheme violates the ex post facto clause, a court must look further to see if the statutory scheme is so punitive that it negates Congress's intention to deem the act civil. U.S.C.A. Const. Art. 1, § 9, cl. 3.

**[8] Constitutional Law 92**  0

92 Constitutional Law
Only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty, for purpose of an ex post facto violation. U.S.C.A. Const. Art. 1, § 9, cl. 3.

**[9] Constitutional Law 92**  0

92 Constitutional Law
Defendant lacked standing to challenge provision of Sex Offender Registration and Notification Act (SORNA), authorizing the Attorney General to promulgate rules regarding its applicability, where the provision did not apply to defendant. Sex Offender Registration and Notification Act, § 113(d), 42 U.S.C.A. § 16913(d).

**[10] Constitutional Law 92**  0

92 Constitutional Law
Defendant's conviction under Sex Offender Registration and Notification Act (SORNA) for failing to register as a sex offender did not violate due process, where defendant admitted that he knew, based on previously enacted state laws, that he had an obligation to register and keep his registration current, and that he received plenty of information regarding his registration obligations. U.S.C.A. Const.Amend. 14; 18 U.S.C.A. § 2250(a).

**[11] Commerce 83**  0

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 2917766 (C.A.8 (Iowa))
2008 WL 2917766 (C.A.8 (Iowa))

Page 3

83 Commerce
Sex Offender Registration and Notification Act (SORNA) provision prohibiting the failure of a convicted sex offender to register did not violate the Commerce Clause; the provision required the government to prove the defendant traveled in interstate or foreign commerce, and thereafter failed to register as required by SORNA. U.S.C.A. Const. Art. 1, § 8, cl. 3 ; 18 U.S.C.A. § 2250(a)(2)(B).

Appeal from the United States District Court for the Southern District of Iowa.
James F. Whalen, AFPD, argued, Des Moines, IA, for appellant.
Andrew H. Kahl, AUSA, argued, Shannon Olson, AUSA, Des Moines, IA, for Appellee.

Before RILEY, BOWMAN, and HANSEN, Circuit Judges.

RILEY, Circuit Judge.
**\*1** David Louis May (May) appeals the district court's [FN1] denial of May's motion to dismiss an indictment charging him with one count of failure to register as a sex offender in violation of 18 U.S.C. § 2250(a), the Sex Offender Registration and Notification Act (SORNA).[FN2] The district court found (1) SORNA applies to May, (2) SORNA's retroactive application does not violate the ex post facto clause, (3) Congress did not improperly delegate legislative responsibility to the Attorney General in violation of the non-delegation doctrine, (4) application of SORNA to May did not violate May's due process rights, and (5) Congress's enactment of SORNA was a permissible exercise of its authority under the commerce clause. We affirm.

**I. BACKGROUND**[FN3]

In 1994, May pled guilty in Oregon to misdemeanor sexual conduct. The Oregon sex offender law required May to register as a sex offender and to keep his registration updated. *See* O.R.S. § 181 .595. May first registered on June 26, 2000. May thereafter moved to Maryland, and both failed to update his Oregon registration, pursuant to O.R.S. § 181.596, and failed to register as a sex offender in Maryland, as required by Maryland law, *see* Md.Code Ann.Crim. Pro. §§ 11-701 to 11-705.

May was arrested on June 19, 2002, and later convicted for failing to register in Maryland as a sex offender. On July 11, 2002, May registered in Maryland, but May again failed to update his registrations after he was released from jail on November 6, 2002. May returned to Oregon, failed to update his registration there, and, on December 21, 2004, was convicted for failing to register as a sex offender in Oregon. May then updated his registration in Oregon, which he kept current through November 8, 2006. On November 18, 2006, May relocated to Iowa, and neither updated his registration in Oregon, nor registered as a sex offender under Iowa law. *See* Iowa Code § 692A.1-.16.

On June 20, 2007, May was indicted under SORNA for being a sex offender who traveled in interstate commerce and knowingly failing to register and update his registration. May moved to dismiss the indictment. The district court rejected each of May's arguments, and denied May's motion. May pled guilty, but reserved his right to appeal the district court's order denying his motion to dismiss. May now appeals.

**II. DISCUSSION**

[1] The parties agree none of the issues in this appeal involve factual disputes. Each issue involves either statutory interpretation of SORNA or constitutional

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----  
--- F.3d ----, 2008 WL 2917766 (C.A.8 (Iowa))  
2008 WL 2917766 (C.A.8 (Iowa))

Page 4

challenges to SORNA's applicability. We therefore review each issue de novo. *See* Royal v. Kautzky, 375 F.3d 720, 722 (8th Cir.2004) ("We review claims of constitutional error and issues of statutory construction de novo ."(internal citation and quotation marks omitted)).

**A. Applicability of SORNA**

May contends SORNA does not apply to him because his travel in interstate commerce, although occurring after SORNA's enactment, occurred before the Attorney General issued an interim ruling designating the applicability of SORNA to offenders convicted before SORNA's date of enactment. SORNA provides, in pertinent part:

*\*2  (a) In general*

A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

**(b) Initial registration**

The sex offender shall initially register-

(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or

(2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

**(c) Keeping the registration current**

A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) ... and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

**(d) Initial registration of sex offenders unable to comply with subsection (b) of this section**

The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 [the enactment of this Act] or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

Section 16913(a)-(d).

On February 28, 2007, the Attorney General issued an interim rule effective February 28, 2007, which states in pertinent part:

[T]he requirements of [SORNA] apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----  
--- F.3d ----, 2008 WL 2917766 (C.A.8 (Iowa))  
2008 WL 2917766 (C.A.8 (Iowa))

Page 5

enactment of that Act.

72 Fed.Reg. 8894 (to be codified at 28 C.F.R. § 72.3).

During the pendency of this appeal, the Eleventh Circuit Court of Appeals issued an opinion interpreting § 16913(d) and SORNA's retroactivity. *See United States v. Madera,* 528 F.3d 852 (11th Cir.2008).*Madera* involved a slightly different factual background than we have before us. Unlike May, the defendant in *Madera* was prosecuted and convicted before the Attorney General issued the interim rule. *Id.* at 857.Because the Eleventh Circuit's reasoning plainly impacts May's case, we will hereafter address *Madera.*Before doing so, it will be useful to discuss the various manners in which district courts have interpreted § 16913(d) in cases preceding *Madera.*

[2][3] In the interest of brevity, we discuss only a few demonstrative district court cases, which interplay with each other. In *United States v. Muzio,* No. 4:07-CR-179, 2007 WL 2159462 (E.D.Mo. July 26, 2007), upon which May relies, the defendant, like May, was convicted before SORNA's enactment, and traveled to another state (Missouri) after SORNA's passage, but before the Attorney General issued the interim regulation. *Id.* at *2. The *Muzio* court concluded § 16913(d) was unambiguous, and found:

> **\*3** Under the plain language of the statute, the registration requirements of [§ 16913(a) ] have only prospective applicability until the Attorney General acted pursuant to [§ 16913(d) ].Section [16913(d) ] unequivocally authorizes the Attorney General to "specify the applicability" of SORNA to offenders who, like Muzio, were convicted of predicate sex offenses before SORNA's effective date of July 27, 2006.

*Id.* at *3. The *Muzio* court discounted the title of § 16913(d), noting, "Only the title raises any question about § [16913(d) ]'s meaning. But a title does not make a statute ambiguous when the words are plain: 'section and subchapter titles cannot alter the plain meaning of a statute; they can only assist in clarifying ambiguity.'" *Id.* (quoting *Minnesota Transp. Regulation Bd. v. United States,* 966 F.2d 335, 339 (8th Cir.1992)). The *Muzio* court adopted the reasoning of *United States v. Kapp,* 487 F.Supp.2d 536 (M.D.Pa.2007):

> Section [16913(d) ] comprises two clauses. The first clause ... authorizes the Attorney General to "specify the applicability" of SORNA to past offenders. The second clause authorizes the Attorney General to promulgate regulations related to the registration of sex offenders under SORNA. Although the first clause speaks to "sex offenders convicted before the enactment of this Act or its implementation in a particular jurisdiction," the second clause provides authority to promulgate regulations "for the registration of any such [previously convicted] sex offenders and for other categories of sex offenders who are unable to comply with subsection (b)." The words "any such" and "other categories" in the second clause indicate that § [16913(d) ] contemplates two groups of sex offenders: (1) past offenders and (2) those unable to initially register under subsection (b). Significantly, the first clause of § [16913(d) ], which addresses SORNA's applicability, only covers the first group: past offenders. Therefore, when the two clauses are read in conjunction, the first clause of § [16913(d) ] unambiguously provides the Attorney General with the authority to define the retrospective applicability of SORNA's registration requirements to past offenders.

*Muzio,* 2007 WL 2159462, at *4 (quoting *Kapp,* 487 F.Supp.2d at 542).

In *United States v. Roberts,* 2007 WL 2155750 (W.D.Va. July 27, 2007), the district court took a position directly opposite from that taken in *Muzio* and *Kapp.*Rather than looking only at § 16913(d), the *Roberts* court looked at the

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----  
--- F.3d ----, 2008 WL 2917766 (C.A.8 (Iowa))  
2008 WL 2917766 (C.A.8 (Iowa))

Page 6

entirety of the statute and found:

> The bulk of the statute does not make a distinction between those convicted before the Act and those convicted after. It imposes its requirements on "sex offenders," without qualification. The proper distinction for these purposes is between those who are *currently registered,* and those who are *not.* Those currently registered are unambiguously required by subsections (a) and (c) to keep their registrations current. Those not currently registered must register in accordance with the "initial registration" provisions in subsection (b). Subsection (d), *as its title reveals,* is very narrow in scope: only those currently unregistered offenders literally *unable* to comply with (b) because of the age of their convictions are within the grey area which the Attorney General is authorized to illuminate by rule. In this subsection, Congress did distinguish between convictions from before and after the enactment of the act. But it is clear from the context that their intent was not to exempt all sex offenders convicted before July 2006 from registration requirements, but rather to avoid the obvious injustice of requiring such offenders to do the impossible by registering within 3 days of their years-old convictions.

**\*4** *Roberts,* 2007 WL 2155750, at \*2 (some emphasis added). The *Roberts* court further "bolstered" its interpretation by relying on legislative history. *Id.*

As the *Muzio* court did, the Eleventh Circuit expressly adopted the reasoning of *Kapp,* saying:

> We read the text [of § 16913(d) ], as did the *Kapp* court, among others, as being comprised of two clauses. The first gives the Attorney General authority to determine whether SORNA applies retroactively to all sex offenders, and the second gives the Attorney General authority to promulgate rules regarding initial registration.

*Madera,* 528 F.3d at 858. The Eleventh Circuit reasoned: The plain language of the statute makes clear that Congress gave only the Attorney General the authority to determine SORNA's retroactivity. The statute clearly says, "The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction...."42 U.S.C. § 16913(d). Congress's use of the word "shall" indicates that Congress was issuing a directive to the Attorney General specifically to make the determination.

*Id.* at 857 (citation omitted). We respectfully disagree. Although the word "shall" indicates a congressional directive, the question remains as to what § 16913(d) was specifically directing the Attorney General to regulate.

We recognize the *Roberts* court's interpretation suffers from a significant flaw. The *Roberts* decision relies on § 16913(d)'s title without first finding the text of the statute ambiguous. *See Minnesota Transp. Regulation Bd.,* 966 F.2d at 339. An alternate approach interpreting the statute is well articulated by the court in *United States v. Beasley,* 2007 WL 3489999 (N.D.Ga. Oct.10, 2007). In *Beasley,* the Northern District of Georgia first analyzed SORNA's plain text, and found it ambiguous. *Id.* at \*5-6.The court then included the title of subsection (d) in its consideration. *Id.* at \*6. The *Beasley* court explained:

> Contrary to the courts' findings in *Muzio* and *Kapp,...* the text of § 16913(d), when considered in isolation and out of context, *is* ambiguous. An additional possible meaning of subsection (d) is that past offenders ("offenders convicted before the enactment of this Act") are included *within* (and not a separate group *from* ) the broader category of "sex offenders who are unable to

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----  
--- F.3d ----, 2008 WL 2917766 (C.A.8 (Iowa))  
2008 WL 2917766 (C.A.8 (Iowa))

Page 7

comply with subsection (b)," and it is only as to those "sex offenders who are unable to comply with subsection (b)" that the Attorney General was given authority under subsection (d) to issue clarifying regulations. In light of this ambiguity, the title of subsection (d) should be considered.... Once the title is considered, the ambiguity in the one sentence text that follows the descriptive title is resolved, and it becomes clear that subsection (d) only applies to initial registration. This construction makes sense when one considers that a sex offender convicted before July 27, 2006, would, in many cases, be unable to comply with the initial registration requirements of SORNA because the time limits for initial registration would have already passed when SORNA was enacted. Accordingly, the [court] agrees with [the] analysis from *Roberts.*

**\*5** *Id.* (internal citation omitted) (emphasis added).

We find both the *Beasley* court's approach, and its accompanying interpretation, consistent with our statutory construction rules and eminently reasonable. We thus respectfully disagree with the Eleventh Circuit's adoption of the alternate reasoning of *Kapp*.*See Madera,* 528 F.3d at 858.

The "additional possible meaning of subsection (d)" the *Beasley* court describes is supported by the use of the statutory terminology "*other* categories of sex offenders who are unable to comply with subsection (b) of this section." Section 16913(d) (emphasis added). The use of this language indicates, as the *Beasley* court explained, the "offenders convicted before July 27, 2006" are indeed included within the "other categories of sex offenders who are unable to comply with subsection (b) of this section."At the very least, this creates an ambiguity, and triggers the permissible reference to the title. *See I.N.S. v. National Center for Immigrants' Rights, Inc.,* 502 U.S. 183, 189, 112 S.Ct. 551, 116 L.Ed.2d 546 (1991) (restating "the title of a statute or section can aid in resolving an ambiguity in the legislation's text"). We hold the text of subsection (d) is ambiguous. When also considering § 16913(d)'s title and the overall design of SORNA, subsection (d) "is very narrow in scope: only those currently unregistered offenders literally *unable* to comply with [subsection] (b) because of the age of their convictions are within the grey area which the Attorney General is authorized to illuminate by rule."*Roberts,* 2007 WL 2155750, at \*2. May is in the same position as the defendant in *Roberts:*

[May], a sex offender who was registered prior to the enactment of SORNA, was required to keep his registration current in accordance with its terms. Because he had first registered [ ] before SORNA, subsections (b) and (d), concerned exclusively with *initial* registration, do not apply to him. Thus he is a person "required to register under [SORNA]" and subject to the penalties imposed by 18 U.S.C. [§ ] 2250(a)."

*Id.* (emphasis in the original).

The Eleventh Circuit contended its contrary "reading of the statute [was] supported by the fact that the Attorney General in fact exercised his full discretion to determine its retroactivity when he issued the interim rule."*Madera,* 528 F.3d at 858. We again respectfully disagree. The comments supporting the Attorney General's interim rule contain an example completely in line with the interpretation we adopt herein. *See* 72 Fed.Reg. 8894, 8896 (Feb. 28, 2007). The Attorney General did not believe a rule was even needed to confirm SORNA's applicability to defendants such as May. *See id.* at 8896.Rather, the Attorney General only promulgated the rule as a precautionary measure to "*foreclose* [ ] such claims [as May's] by making it *indisputably clear* that SORNA applies to all sex offenders (as the Act defines that term) regardless of when they were convicted." *Id.* (emphasis added). SORNA applies to May.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----  
--- F.3d ----, 2008 WL 2917766 (C.A.8 (Iowa))  
2008 WL 2917766 (C.A.8 (Iowa))

Page 8

**B. Ex Post Facto Clause**

**\*6** [4] May next argues application of SORNA to his case violates the ex post facto clause. The district court determined there was no ex post facto violation, and we agree.

The district court predominantly relied on the United States Supreme Court's decision in *Smith v. Doe,* 538 U.S. 84, 89-90, 105-06, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), in which the Supreme Court held the Alaska Sex Offender Registration Act was civil and nonpunitive, and thus its retroactive application did not violate the ex post facto clause. We recognize, as did the district court in *Beasley,* "the issue is very different [than in *Smith* ]. It is whether imposing criminal penalties for traveling to and residing in a new state and not registering as a sex offender in that new state at a time before the Attorney General issued his interim regulation violates the Ex Post Facto Clause." *Beasley,* 2007 WL 3489999, at \*3. If a defendant, like May, is not even subject to the Attorney General's regulation under § 16913(d) (which we have already determined), then neither the promulgation of the regulation nor § 16913(d) would present an ex post facto clause problem in such a case. To the extent May challenges the *overall* applicability of SORNA, the ex post facto framework outlined in *Smith* leads to the conclusion SORNA does not violate the ex post facto clause.

[5] In analyzing an ex post facto violation, courts must first determine whether "the legislature meant the statute to establish 'civil' proceedings." *Kansas v. Hendricks,* 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). If Congress intended SORNA to impose punishment for a pre-existing crime, the statute violates the ex post facto clause. *See Smith,* 538 U.S. at 92. Conversely, if it was Congress's intention "to enact a regulatory scheme that is civil and nonpunitive," courts must further examine "whether the statutory scheme is so punitive either in purpose or effect as to negate [Congress's] intention to deem it civil."*Id.* (internal citation and quotation marks omitted).

[6] To determine whether the statutory scheme at issue is punitive or regulatory, courts must determine whether Congress "indicated either expressly or impliedly a preference for one label or the other."*Smith,* 538 U.S. at 93. Congress stated its purpose in establishing a comprehensive national system for registration of sex offenders was "to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators."42 U.S.C.A. § 16901. As was the case in *Smith,* SORNA's registration requirement demonstrates no congressional intent to punish sex offenders. Congress described SORNA as a public safety measure. *See*§ 16901.

[7][8] Even though Congress's intent "was to enact a regulatory scheme that is civil and nonpunitive," we must look further to see if the statutory scheme is so punitive that it negates Congress's intention to deem the act civil. *See Smith,* 538 U.S. at 92. "[O]nly the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty."*Id.* at 92 (internal quotations omitted).

**\*7** The only punishment that can arise under SORNA comes from a violation of § 2250, which punishes convicted sex offenders who travel in interstate commerce after the enactment of SORNA and who fail to register as required by SORNA. Congress clearly intended SORNA to apply to persons convicted before the Act's passage. The Act defines a sex offender as "an individual who *was* convicted of a sex offense." § 16911(1) (emphasis added). If SORNA did not apply to previously convicted sex offenders, SORNA would not serve Congress's stated purpose of establishing a "comprehensive national system" for sex offender registration. Section 16901. As applicable

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----  
--- F.3d ----, 2008 WL 2917766 (C.A.8 (Iowa))  
2008 WL 2917766 (C.A.8 (Iowa))

Page 9

to May, the elements of § 2250 are: (1) being a sex offender, (2) traveling in interstate commerce, and (3) failing to register or update a registration. Although May became a sex offender by way of a conviction before enactment of SORNA, the first element merely identifies to whom the statute applies; it is not a triggering event. *Cf. United States v. Woods,* 696 F.2d 566, 571-72 (8th Cir.1982) (finding no ex post facto concern for a conviction for being a felon in possession of a firearm where there was no evidence the firearm traveled in interstate commerce after enactment of the statute because the interstate commerce element only defined the type of gun involved, and it was not a triggering event for the violation).Section 2250 punishes an individual for traveling in interstate commerce and failing to register. The statute does not punish an individual for previously being convicted of a sex crime. There is no dispute May both traveled in interstate commerce and failed to update his registration after enactment of SORNA. Thus, prosecuting May under § 2250 is not retrospective and does not violate the ex post facto clause.[FN4]

**C. Non-Delegation Doctrine**

[9] May next argues SORNA's delegation of authority to the Attorney General under § 16913(d) violates the non-delegation doctrine. Because May was not a person unable to register before SORNA's enactment and § 16913(d)'s authorizing the Attorney General to promulgate rules regarding its applicability does not even apply to him, May lacks standing to raise this challenge. *See United States v. Hays,* 515 U.S. 737, 742-43, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) (outlining the minimum requirements to establish standing).

**D. Due Process**

[10] May next contends application of SORNA to his conduct violates his due process rights. May's contention, when boiled down to its essence, amounts to an "ignorance of the law" argument. May correctly notes there is an exception to the general "ignorance of the law is no excuse" maxim, citing *Lambert v. California,* 355 U.S. 225, 228-29, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957). The district court correctly distinguished *Lambert,* noting:

> The *Lambert* Court found an exception to the ignorance is no excuse rule may exist if (1) the defendant's conduct was wholly passive, (2) the defendant is not per se blameworthy, and (3) there was an absence of circumstances alerting the defendant of the consequences of the deed. [*Id.*] at 228-29.In the context of examining public welfare statutes lacking a scienter requirement, the Court has reasoned Congress has weighed the possible injustice imposed on a defendant by disposing of a knowledge of the law requirement and found it does not outweigh the benefit to the person the law is meant to protect. *United States v. Freed,* 401 U.S. 601, 609-10, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971).

*8 As part of his plea agreement, May admitted he knew, based on previously enacted state laws, he had an obligation to register and keep his registration current when moving between jurisdictions. May also, as the district court found, "received plenty of information regarding those registration obligations."May's due process rights were not violated.

**E. Commerce Clause**

May alleges SORNA violates the commerce clause because it fails to establish a constitutionally sufficient nexus to the regulation of interstate commerce. The power to regulate commerce between the states includes the power to regulate the following:

(1) "the use of the channels of interstate commerce";

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----  
--- F.3d ----, 2008 WL 2917766 (C.A.8 (Iowa))  
2008 WL 2917766 (C.A.8 (Iowa))

Page 10

(2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and

(3) "those activities having a substantial relation to interstate commerce."

United States v. Lopez, 514 U.S. 549, 558-59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

[11] For May to be convicted, SORNA requires the government to prove May traveled in interstate or foreign commerce, and thereafter failed to register as required by SORNA. See 18 U.S.C. § 2250(a)(2)(B). SORNA thus derives its authority from each prong of *Lopez*-and most specifically, the ability to regulate "persons or things in interstate commerce" and "the use of the channels of interstate commerce." May was undeniably a "person ... in interstate commerce" in that he traveled and relocated between various states, and traveled among many other states. May did so via the "use of the channels of interstate commerce." It has been long established Congress may forbid or punish use of interstate commerce "as an agency to promote immorality, dishonesty or the spread of any evil or harm to the people of other states from the state of origin." Brooks v. United States, 267 U.S. 432, 436, 45 S.Ct. 345, 69 L.Ed. 699 (1925) (emphasis added). Congressional regulation of the channels of interstate commerce has also been upheld when the punishment "was intended to prevent the use of interstate commerce to facilitate ... forms of immorality." Id. at 437 (citation omitted). SORNA contains a sufficient nexus to interstate commerce.

May attempts to argue his case is more akin to Lopez, 514 U.S. at 551, in which the Supreme Court struck down the Gun-Free School Zones Act, and United States v. Morrison, 529 U.S. 598, 601-02, 617, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), in which the Supreme Court struck down the Violence Against Women Act, 42 U.S.C. § 13981(b) (VAWA). *Lopez* and *Morrison* are distinguishable in two significant respects.

First, the Gun-Free School Zones Act and the VAWA did not contain a jurisdictional "hook"-or "jurisdictional element establishing that the federal cause of action is in pursuance of Congress' power to regulate interstate commerce." Lopez, 514 U.S. at 562; Morrison, 529 U.S. at 613. Congress's addition of such a jurisdictional "hook" in the Gun-Free School Zones Act proved sufficient to validate the revised Gun-Free School Zones Act. See United States v. Danks, 221 F.3d 1037, 1038-39 (8th Cir.1999). SORNA includes an express and clear jurisdictional element for individuals not convicted pursuant to federal jurisdiction. See § 2250(a)(2)(B).

*9 Second, *Lopez* and *Morrison* related to the third *Lopez* prong: "a regulation of activity that substantially affects interstate commerce." Lopez, 514 U.S. at 559; see Morrison, 529 U.S. at 609. SORNA is more easily supported by the first and second *Lopez* prongs. Thus, we need not address May's contention "SORNA was not accompanied by findings [that the activity in question exerted a 'substantial influence on interstate commerce'] similar to those in support of the [Controlled Substances Act] regulation considered [and upheld] in [Gonzales v. Raich, 545 U.S. 1, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005)]." Even if this argument effectively distinguished *Raich*, and the third *Lopez* prong, SORNA would still remain valid under the first two interstate commerce jurisdictional prongs.

### III. CONCLUSION

The judgment of the district court is affirmed.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----  
--- F.3d ----, 2008 WL 2917766 (C.A.8 (Iowa))  
2008 WL 2917766 (C.A.8 (Iowa))

Page 11

FN1. The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

FN2. Codified at 42 U.S.C. §§ 16901-16991.

FN3. Many of the facts are not available in the direct record on appeal. Because the parties agree on all of the material facts, we primarily rely on the facts set forth in the district court's thorough, well-reasoned opinion.

FN4. May argues SORNA "dramatically increases the penalty for his interstate travel and failure to register or keep his registration current."As the government correctly notes, previously enacted federal statutes "such as the Lyncher [A]ct, effective October 21, 1998, ... made it a federal crime for a sex offender required to register in his home state to fail to register as a sex offender in any other state in which the offender relocated or was employed."(citing 42 U.S.C. § 14072(i)). Under the Lyncher Act, a repeat offender, as May, is subject to a statutory maximum term of ten years imprisonment. *See id.*

C.A.8 (Iowa),2008.  
U.S. v. May  
--- F.3d ----, 2008 WL 2917766 (C.A.8 (Iowa))

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.