IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **2:08-cr-02-MHT** |
| | ) | |
| JOHN GARRY BOURNES | ) | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pending before the court are Defendant's *Motion to Dismiss Indictment*, the Government's *Response*, and Defendant's *Reply*. (Docs. 28, 34, and 37). After conducting a hearing on the issues and arguments raised by the parties, the undersigned recommends the District Court DENY Defendant's motion.

### I. FACTUAL BACKGROUND

The parties concede there are no factual disputes. On June 27, 1991, Defendant John Garry Bournes ("Bournes") was convicted in the Circuit Court for the Sixth Judicial Circuit, in and for Pinellas County, Florida, of two counts of Handling and Fondling a Child under the Age of Sixteen Years, in violation of Fla. Stat. § 800.04(1) (CRC90-12741CFANO). Bournes was sentenced to fifteen years imprisonment and was released by the Florida State Department of Corrections in 2002. Bournes first registered as a sex offender in Florida on March 16, 2006, while in the custody of the Pinellas County Jail for an unrelated offense. On that date he signed a document acknowledging that he was subject to registration as a sex offender in any state in which he resides, is employed, carries on a vocation, or is a student.

He updated his registration upon his release from the Pinellas County Jail on September 4, 2006. During the March and September registrations, Bournes signed a statement that he understood the registration requirements, including the provisions to register in any other state where he lives, works or attends school. (Doc. 34-5, at ¶ 11; Doc. 34-6, at ¶ 7). Bournes did not update his Florida registration in October 2006, and Florida issued an arrest warrant.

In August, 2007, Bournes moved to Prattville, Alabama, but did not register as a sex offender as instructed during his Florida registration, or in compliance with Alabama law. On November 13, 2007, Bournes was arrested by the Prattville Police Department because he did not register as a sex offender in Autauga County. On January 9, 2008, Bournes was indicted in this Court for violating 18 U.S.C. § 2250. The indictment alleges Bournes did not to register and update a registration as a sex offender in violation of the Sex Offender Registration Notification Act ("SORNA" or "the Act," 42 U.S.C. §§ 16901 *et seq*.). (Doc. 10). Bournes was arraigned on the indictment on January 10, 2008, and entered a plea of not guilty. (Doc. 16). On June 19, 2008, Bournes filed a *Motion to Dismiss Indictment* (Doc. 28). The motion asserts several grounds for dismissal - (1) the impossibility of compliance with SORNA in Alabama; (2) a lack of notice of his obligation to comply with SORNA; (3) the unconstitutionality of SORNA by improper delegation of legislative power by Congress to the Executive branch; (4) improper administrative implementation of SORNA by the Department of Justice; (5) the unconstitutionality of SORNA by Congress's improper

exercise of power under the Commerce Clause; and (6) SORNA's provisions violate the *ex post facto* clause.

### The SORNA

A review of SORNA is essential before the Court evaluates the arguments for and against dismissal of the indictment. Enacted as Title I of the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"),[1] Congress enacted SORNA to establish a comprehensive national system for the registration of sex offenders and offenders against children. 42 U.S.C. § 16901. The Act defines "sex offender" as "an individual who was convicted of a sex offense," places offenders in three tiers according to the underlying conduct of their offense (42 U.S.C. § 16911(1)-(4)), and mandates that all states and United States territories maintain a sex offender registry with specified information concerning each offender (42 U.S.C. § § 16912(a), 16914). SORNA requires each state to maintain a jurisdiction-wide sex offender registry, and directs the Attorney General to "issue guidelines and regulations to interpret and implement" its provisions. 42 U.S.C. §§ 16912(b). SORNA directs jurisdictions to completely implement SORNA before July 27, 2009, or one year from the date statutorily mandated software is available, whichever is later. 42 U.S.C. § 16924.

The substantive registration requirement in section 16913 provides "[A] sex offender shall register, and keep the registration current, in each jurisdiction where the offender" resides, is employed, or is a student. 42 U.S.C. § 16913(a). Initial registration is required

---

[1] Pub. L. No. 109-248, §§ 1-155, 120 Stat. 587, 590-611 (2006), effective July 27, 2006.

"before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement," or "not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment."  42 U.S.C. § 16913(b).  Offenders must appear in person to report any changes in their registration information not later than 3 business days after each change of name, residence, employment, or student status.  The jurisdiction receiving the updated information must immediately provide the information to all other jurisdictions in which the offender must register.  42 U.S.C. § 16913(c).

SORNA specifically vests in the Attorney General "the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted *before July 27, 2006 or its implementation in a particular jurisdiction*, and to prescribe rules for the registration" of sex offenders who are unable to comply with the initial registration requirements (emphasis added).  *See* 42 U.S.C. § 16913(d), referencing 42 U.S.C. § 16913(b), applicable to offenders sentenced or released from prison after the Act's effective date.  The statute sets forth the information to be collected by jurisdictions, the duration of registration for the three tiers of offenders, and the schedules for in person verification.  42 U.S.C. §§ 16914-16916. Section 16917 imposes a duty on an "appropriate official" to notify sex offenders of registration requirements upon their release from custody or upon sentencing, and instructs the Attorney General "prescribe rules for the notification of sex offenders who cannot register in accordance with subsection (a)."  In this way, section 16917

parallels section 16913 by entrusting the Attorney General with the task to determine how to implement SORNA for previously convicted sex offenders who have completed their sentences for the SORNA-qualifying offense.  States which fail to substantially implement SORNA in any fiscal year after the implementation deadline shall not receive ten percent of the federal funds which would otherwise be allocated for projects falling under the federal/state Drug Control and System Improvement Grant Program (Title 42, subchapter V, Part A).  42 U.S.C. § 16925(a).

The Attorney General met his SORNA-assigned rulemaking duties in three publications: (1) an Interim Rule on the Applicability of the SORNA, 72 Fed. Reg. 8894 (2007) (the "Interim Rule"); (2) Proposed Guidelines for SORNA, 72 Fed. Reg. 30210 (2007) (the "Proposed Guidelines"); and, (3) Final Guidelines for SORNA, 73 Fed. Reg. 38030 (2008) (the "Final Guidelines").  These publications provide invaluable commentary and insight regarding the Attorney General's position on SORNA enforcement, and were helpful tools in the Court's review of the challenges to this SORNA prosecution.  *See N.L.R.B. v. Goya Foods of Florida*, 525 F.3d 1117, 1136-37 (11th Cir. 2008) quoting *Federal Exp. Corp. v. Holowecki*, ___ U.S. ___, 128 S.Ct. 1147, 1155 (2008) (noting courts' deference to an administrative agency's reasonable interpretation of a statute, and, in turn, the agency's interpretation of regulations it has put in force).

Finally, section 141 of SORNA amends Title 18, United States Code to create "a new federal crime for those individuals who fail to register, or to keep their registration current,

despite being required to do so." *United States v. Madera*, 528 F.3d 852, 855 (11th Cir.

2008). Codified at 18 U.S.C. § 2250(a), this new offense carries a penalty of up to ten years

imprisonment, and is the charge in the indictment against Bournes. Section 2250(a) provides

> (a) In general. - Whoever -
>
> (1) is required to register under the Sex Offender Registration and Notification Act;
>
> (2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law . . . or the law of any territory or possession of the United States; or
>
> (B) travels in interstate or foreign commerce, . . ., and
>
> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act; shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a). Having introduced all relevant provisions of SORNA, the Court now

addresses Bournes's arguments.

## II. DISCUSSION

### A.    SORNA's Applicability to Bournes

Bournes argues SORNA does not apply to him because he is "unable" to comply with

SORNA for three reasons: (1) Alabama has not yet implemented SORNA's sex offender

registry requirements; (2) the Attorney General did not issue regulations requiring

compliance with SORNA where a conviction occurred before SORNA's implementation in

a particular jurisdiction; and, (3) his registration under section 16913(b) was an impossibility

because Alabama has not implemented SORNA. The Court notes at the outset it was

impossible for Bournes to comply with the initial registration provisions under section 16913(b) upon his release from prison in 2002, because Congress did not enact SORNA until 2006. *See* Proposed Guidelines, 72 Fed. Reg. 30210, 30228. Hence, judicial analysis of applicability must turn upon section 16913(d), governing initial registration of sex offenders who cannot comply with subsection (b).

A key factor to determine whether Bournes was in fact subject to SORNA is the Congressional authorization for the Attorney General to "specify the applicability of SORNA to those sex offenders convicted *before July 27, 2006 or its implementation in a particular jurisdiction*."[2] 42 U.S.C. §16913(d); *see also United States v. Madera*, 528 F.3d at 856. Clearly the statutory text assigns to the Attorney General, through the Department of Justice, the power to determine the issue of SORNA coverage raised by Bournes - if and how SORNA should apply in jurisdictions which have not implemented a SORNA-compliant registry. The Interim Rule specified "SORNA's direct federal law registration requirements for sex offenders are not subject to any deferral of effectiveness. They took effect when SORNA was enacted on July 27, 2006, and currently apply to all offenders . . . ." 72 Fed. Red. 8894, 8895. In discussing enforcement mechanisms for SORNA, the Attorney General acknowledged the role to be played by federal corrections officials and those of non-federal jurisdictions, *i.e.*, jurisdictions such as Alabama. *Id*. ("The second broad aspect of SORNA is incorporation by non-federal jurisdictions of the SORNA standards in their own sex

---

[2]SORNA's definition of "jurisdiction" includes a state, such as Alabama. 42 U.S.C. § 16911(10)(A).

offender registration and notification programs.").

Thus, Bournes's initial registration under SORNA, as one convicted of a sex offense in 1991, and living in Alabama prior to its implementation of SORNA, is governed by the rules established by the Attorney General pursuant to the authority conferred by section 16913(d).  SORNA applies to sex offenders convicted prior to its enactment.  *Madera*, 528 F.3d at 857, citing Interim Rule, 72 Fed. Red. at 8896.  The Proposed Guidelines make clear a jurisdiction may implement SORNA without enacting a state statute.  Absent a local statute adopting SORNA, the Attorney General will look to the "totality of a jurisdiction's rules governing the operation of its registration and notification program . . . including administrative policies and procedures as well as statutes."  72 Fed. Reg. 30210 at 30213. The Proposed Guidelines contemplate a "substantial" compliance standard under which a jurisdiction's implementation efforts need not "exactly follow in all respects the specifications of SORNA or these Guidelines."  *Id*. at 30214.  Taken together, these authorities confirm SORNA is applicable to Bournes, even if Alabama lacks a SORNA compliant registry, with all the information specified in section 16914.

The Court holds that the reach of SORNA, as set forth in section 16913(a), does not depend upon implemented registration procedures, but rather on the text itself.  *See United States v. Fuller*, 2008 WL 2437869, *2 (N.D.N.Y.  2008) (finding jurisdictional implementation of a registry was unrelated to an offender's responsibilities under SORNA); *United States v. Waybright*, ___F.Supp.2d ___, 2008 WL 2380946, *16 (D. Mont. 2008)

("Section 16913(a) makes SORNA's registration requirements applicable to all sex offenders regardless of whether the Act has been implemented in a particular jurisdiction."); *United States v. Utesch*, 2008 WL 656066, *8 (E.D. Tenn. 2008) ("The fact that the states have not yet met their obligations under SORNA . . . is of no consequence in determining whether it was possible for the Defendant to meet his own obligations under the act."). The Court finds these constructions of SORNA are consistent with the statutory text, and buttressed by the Attorney General's rules which incorporate a standard of substantial compliance accomplished through state registries. Bournes's argument that Alabama has not implemented SORNA has no impact on his duty to register.

**B.    To Apply SORNA to Bournes Does Not Offend the *Ex Post Facto* Clause**

Bournes argues the indictment is due dismissal because the application of SORNA to him violates the *Ex Post Facto* clause, which "forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.;" *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 964 (1981). *Weaver* distills two elements to determine if a law is *ex post facto* - (1) retroactive application, *i.e.*, "it must apply to events occurring before its enactment," and (2) "it must disadvantage the offender affected by it." *Id.* at 29, 101 S.Ct. 964.

The retroactive nature of SORNA is distinct from the retroactive element in *ex post facto* situations. The *ex post facto* bar rises when a criminal statute applies to conduct which

precedes the enactment of the statute irrespective of whether the conduct continues past the enactment of the statute. In other words, Congress cannot make criminal today conduct which is purely historical from yesterday. Section 2250(a) is not being applied in a retroactive manner to Bournes because each element of the statute in the indictment pending against Bournes occurred after the passage of SORNA, *i.e.*, (1) Bournes was required to register under SORNA based upon previous conviction for a sex offense, (2) Bournes traveled in interstate commerce to Alabama in 2007, and (3) Bournes knowingly failed to register or update a registration, as required by SORNA, from the time of his move through the date of his arrest. The Court finds neither the conduct at issue nor the statute itself triggers the *ex post facto* clause.

### C.    To Apply SORNA to Bournes Does Not Violate the Due Process Clause

Bournes advances two arguments that SORNA, as applied to him, violates the Fifth Amendment due process clause. First, Bournes argues that Alabama's failure to implement SORNA registration and notification requirements renders him "unable" to register in compliance with 18 U.S.C. § 2250. Ergo, Bournes argues the indictment constitutes "[c]riminalizing the failure to do something that is impossible to do." (Doc. 28 at 13.) Second, Bournes argues that "SORNA explicitly directs the Attorney General to prescribe regulations to notify" sex offenders whose convictions predate SORNA and who are no longer in custody or awaiting sentencing on those offenses. (Doc. 28 at 14, citing 42 U.S.C. § 16917). Bournes contends that he was not notified of SORNA or its requirements, and his

prosecution thereunder violates due process.  (Doc. 28 at 16.)

    *1.    To Subject Bournes to SORNA Does Not Offend The Due Process Clause*

    Bournes makes a due process argument that he could not comply with the SORNA registration and notification requirements prior to its implementation, and thus could not violate 18 U.S.C. § 2250.  As set forth in Part II.A., above, the Attorney General  recognizes the integral role of state registries for SORNA implementation notwithstanding the lack of a formal process to adopt SORNA by individual states.

    Bournes  was fully able to register as a sex offender in Alabama, and in so doing, to satisfy the registration requirements currently applicable to him under Alabama law and SORNA. The Proposed Guidelines are in accord.  In discussing the registration of offenders, like Bournes, who reenter the justice system for some other crime, the Attorney General notes a jurisdiction "will be deemed to have substantially implemented the SORNA standards with respect to sex offenders whose predicate convictions predate the enactment of SORNA or the implementation of SORNA in the jurisdiction's program if it registers" such offenders. *Id*. at 30212-13.  Again, the SORNA regulatory scheme contemplates a "substantial" compliance standard pending complete implementation efforts by the July, 2009 deadline. *Id*. at 30214.  Consequently, the argument that Bournes could not comply with SORNA via registration in Alabama fails.  Bournes's status as one previously convicted of a sex offense, who engaged in interstate travel and established residence in Alabama, and who failed to register as a sex offender *despite having been made aware of the requirement that he do so*

satisfies the elements necessary for conviction under section 2250.[3]  *See United States v. Hinen*, 487 F.Supp.2d 747, 750 (W.D. Va. 2007); *United States v. Bonner*, 2007 WL 4372887, at *3 (S.D. Ala. 2007).

    2.    *Bournes's Knowledge of His Duty to Register Satisfies the Requirements of Due Process*

Bournes argues he cannot be prosecuted under section 2250 absent notice from the Attorney General of his duty to register.  42 U.S.C. § 16917.  Section 16917, like section 16913, grants the Attorney General the power to prescribe rules for the notification of offenders who were not aware of SORNA prior to release from prison or upon sentencing. The Court again notes the uncontested fact that  Bournes knew he must register under state law if he moved to another jurisdiction.

Bournes compares his failure to register as a sex offender to the facts in *Lambert v. California*, 355 U.S. 225, 78 S.Ct. 240 (1958), where the Supreme Court struck down a municipal ordinance which required any person convicted of a felony under California law to inform city officials if they remained in the city for more than five days in any one 30-day period.  Finding notice essential to the criminalization of  "conduct that is wholly passive - mere failure to register," the ordinance was struck down.  *Lambert*, 355 U.S. at 228, 78 S.Ct. at 243.  In *Lambert*, the Court reasoned "[W]here a person did not know of the duty to register and where there was not proof of the probability of such knowledge, he many not be

---

[3]The Court notes Bournes's was given notice of his registration requirements on two separate occasions, both before and **after** SORNA's effective date.  *See* Docs. 34-5, 34-6.

convicted consistently with due process." *Id*. at 229-30, 78 S.Ct. 243-44.

The apparent distinction between *Lambert* and this case is actual, post-SORNA notice to Bournes that he **must** register his presence in any state in which he resides. In fact, Bournes's actions fit the formula set out by the Supreme Court in *Lambert* - ". . . that actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the ordinance can stand." *Id*. at 229, 78 S.Ct. at 243. Several other courts have rejected due process arguments raised under upon *Lambert*, and this court follows in light of Bournes's previous knowledge of his duty to register as a sex offender wherever he resides within the United States. *See United States v. May*, ___ F.3d ___, 2008 WL 2917766 at *7 (8th Cir. July 31, 2008); *United States v. Trent*, ___ F.Supp.2d ___, 2008 WL 2897089 at *8 (S.D. Ohio July 24, 2008); *United States v. Waybright*, ___ F.Supp.2d ___, 2008 WL 2380946 at *17 (D. Mont. June 11, 2008).

Bournes's knowledge of his duty to register also forecloses his argument that the lack of such notice voids any prosecution under section 2250. He contends the regulations issued by the Department of Justice require sex offenders receive specific notice of SORNA. The lack of SORNA-specific notice to Bournes does not impede the statute's application, as he urges, because the Due Process Claus does not require the United States give offenders "any specific notice of criminal laws. "The fact that the defendant may not have been advised of the specific requirements of SORNA is not determinative." *United States v. Hinen*, 487

F.Supp.2d 747, 753 (W.D. Va. 2007). (Doc. 34-5, at ¶ 11; Doc. 34-6, at ¶ 7). Bournes's reading of the notice provision ignores the Department's recognition that complete SORNA registration is not an immediate possibility, but will occur only in phases, *i.e.*, as sex offenders maintain the required contacts already implemented through state laws. The Proposed Guidelines explain offenders like Bournes may be registered upon reentry into the criminal justice system, as where a

> sex offender convicted in 1980 for an offense subject to lifetime registration under SORNA is released from imprisonment in 1990 but is not required to register at the time because the jurisdiction had not yet established a sex offender registration program. In 2010, following the jurisdiction's implementation of SORNA, the sex offender reenters the system because of conviction for a robbery. The jurisdiction will need to require the sex offender to register based on his 1980 conviction for a sex offense when he is released from imprisonment for the robbery offense. But it is not possible to carry out the initial registration procedure for the sex offender prior to his release from imprisonment for the registration offense-i.e., the sex offense for which he was convicted in 1980-because that time is past.

72 Fed. Reg. at 30228. This passage clearly demonstrates the Attorney General's intent that an offender receive notice of his duty to register when he reenters the criminal justice system. In this case, Bournes was registered and notified of his obligation upon his March, 2006, reentry into the penal system. Upon Bournes's post-SORNA release from the Pinellas County Jail, his registration was updated, and he was again informed of his obligation to register in Florida or any other state where he may reside, work, or study. Bournes is therefore subject to SORNA's coverage in light of his knowledge of his duty to register his whereabouts with state officials.

The Court considered another notice issue which is present in the text of section 2250. Specifically, the Court must consider whether Bournes could violate that provision, as drawn. The statute requires a sex offender to "knowingly fail to register or update a registration as required by the SORNA." 18 U.S.C. § 2250(a)(3). As written, the statute raises the issue of whether Bournes must simply "knowingly fail to register or update a registration," or "knowingly fail to register . . . **as required by the SORNA.**" The facts show Bournes knew he had to register under state law, but the question arises whether SORNA's own language means Bournes must also **know** his failure to register was required by SORNA.

The answer is no. In *United States v. Hurtado*, 508 F.3d 603 (11th Cir. 2007), the Eleventh Circuit reviewed 18 U.S.C. § 1028A(a)(1), which punishes "whoever . . . knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person. . . ." The decision found "'knowing' - an adverb - is placed before the verbs 'transfers, possesses, or uses,'" and therefore "modifies those verbs, not the later language in the statute." *Hurtado*, 508 F.3d at 609, citing *United States v. Jones*, 471 F.3d 535, 539 (4th Cir. 2006). Under *Hurtado*, this court must read "knowingly" to modify the phrase "fail to register," but not the later phrase "as required by the SORNA." *See also United States v. Montejo*, 442 F.3d 213, 215 (4th Cir. 2006), *cert. denied*, ___ U.S. ___, 127 S.Ct. 366 (2007) ("as a matter of common usage, 'knowingly' does not modify the entire lengthy predicate that follows it."). The Court's conclusion on this issue echoes that in *United States v. Ditomasso*, 552 F.Supp.2d 333 (D.R.I. 2008), where the reach of

"knowingly" was examined and limited to modification of "failure to register." The *Ditomasso* court found Congress did not intend to require specific intent for conviction under section 2250, but rather, demonstrated an overriding concern for sex offenders to register in any jurisdiction where they establish residence, or face imprisonment. *Ditomasso*, 552 F.Supp. 2d at 243-44. After careful examination of the statutory text, the court finds Bournes knew he had to update his registration and did not do so. Therefore, indictment under section 2250 is appropriate.

D.   **Delegation of Rulemaking Authority to the Attorney General Under SORNA Does Not Violate the Non-Delegation Doctrine**

Bournes argues Congress improperly delegated to the Attorney General the "broad authority to specify SORNA's applicability to offenders convicted" before the Act's passage, implementation by states, or initial registration. (Doc. 28, at 17). Bournes acknowledges delegation to an administrative agency is permissible when Congress has "clearly delineated the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." (Doc. 28 at 18, quoting *Mistretta v. United States*, 488 U.S. 361, 372-73, 109 S.Ct. 647, 655 (1989). Bournes argues Congress neither articulated policy on the retroactivity of SORNA, nor provided guidance as to whether all individuals convicted of sex offenses prior to SORNA's enactment fell under its coverage. Additional concerns raised by Bournes are whether Congress imposed a duty to register regardless of the date, nature, or sentence completion date of the offense(s).

Congress is permitted to entrust tasks of statutory implementation to its coordinate branches where it sets forth an "intelligible principle" as a guide to administrative agencies. *Mistretta*, 488 U.S. at 372, 109 S.Ct. at 654-55 (1989) quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 406, 48 S.Ct. 348, 351 (1928). Recognizing the truism that "Congress simply cannot do its job absent an ability to delegate power under broad general directives," the Court "has deemed it 'constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority.'" *Mistretta*, 488 U.S. at 372-73, 109 S.Ct. at 655 (citations omitted).

SORNA instructs the Attorney General to "prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b)." 42 U.S.C. § 16913(d). The statutory text clearly directs the Attorney General to implement rules for those sex offenders, like Bournes, who were unable register under SORNA upon sentencing for, or release from imprisonment for a qualifying offense. 42 U.S.C. § 16913(b). This delegation of authority is, by implication, limited to the group of sex offenders who are covered by SORNA despite having been previously convicted and released from prison. The implicit limitation on the Attorney General's discretion reflects the "boundaries" on legislative authority which Bournes argues are essential for a valid delegation. Thus, while subsection (b) prescribes registration procedures for prospective application of SORNA, subsection (d) commits to the Attorney General the details of retroactive application. *See Wright v. Everson,* ___ F.3d ___, 2008 WL 3580591 (11th Cir.

Aug. 15, 2008) (finding an express delegation of authority to an administrative agency and applying deference where "Congress explicitly leaves a gap in a statute for an agency to fill"), quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44, 104 S.Ct. 2778, 2782 (1984).

In addition, the statute carries an "intelligible principle" for administrative implementation because, after limiting the subset of offenders subject to the Attorney General's discretion, it simply requires him to enact a registration scheme for those offenders. This task does not require the Attorney General to make any broad decisions not predetermined by the statute itself. Under the Attorney General's regulatory authority granted by SORNA, the universal registration of sex offenders - an intelligible principle - will be implemented. The Court of Appeals for the Third Circuit noted Justice Scalia's observation that the Supreme Court "found the requisite 'intelligible principle' lacking in only two statutes," and "'almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment.'" *United States v. E.I. Dupont De NeMours and Co., Inc.*, 432 F.3d 161, 167 (2005), quoting *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 474-75, 121 S.Ct. 903 (2001) (Scalia, J., dissenting).

A plain reading of SORNA shows Congress commanded "sex offenders" to "register, and keep the registration current, in each jurisdiction where the offender" resides, works, or attends school. 42 U.S.C. § 16913. The statute defines "sex offender" as "an individual who was convicted of a sex offense." 42 U.S.C. § 16911(1). The statute also defines "sex

offense" as

> (I)  a criminal offense that has an element involving a sexual act or sexual contact with another;
> (ii)  a criminal offense that is a specified offense against a minor;
> (iii) a Federal offense (including an offense prosecuted under section 1152 or 1153 of Title 18) under section 1591, or chapter 109A, 110 (other than section 2257, 2257A, or 2258), or 117, of Title 18;
> (iv) a military offense specified by the Secretary of Defense under section 115(a)(8)(C)(I) of Public Law 105-119 (10 U.S.C. 951 note); or
> (v) an attempt or conspiracy to commit an offense described in clauses (I) through (iv).

42 U.S.C. § 16911(5)(A).   The definition excludes unreliable foreign convictions, as determined by the Attorney General, and certain consensual acts if the victim was at least 13 years old and the offender was no more than four years older.  42 U.S.C. § 16911(5)(B-C).

SORNA places no temporal limitations on the conviction date for sex offenders subject to registration, therefore the court reads SORNA as applicable to all.  The definitions of covered offenses is well-defined, and Bournes does not contend that his Florida conviction falls under 42 U.S.C. § 16911(5)(B)(excluding certain unreliable foreign convictions to be established through rulemaking), or that the conduct was consensual and excludable under 42 U.S.C. § 16911(5)(C).  Thus, the statute itself refutes Bournes's arguments that the delegation is so broad as to be unconstitutional.  The "resulting regulation is a reasonable interpretation of the statute," and entitled to considerable weight.  *Wright, id*. at *4.

The Attorney General promulgated regulations consistent with the statute and purposes of SORNA, and this court joins several others in rejecting this issue.  *See Waybright*, 2008 WL 2380946 at *14; *United States v. Natividad-Garcia*, ___ F.Supp.2d

___, 2008 WL 2353357, *4 (W.D. Tex. June 4, 2008); *United States v. Zuniga,* ___

F.Supp.2d ___, 2008 WL 2184118, *12-14 (D. Neb. May 23, 2008). *See also Madera,* 528

F.3d at 858 (Eleventh Circuit finding that, though the scope of retroactivity was undefined

prior to rulemaking, the Attorney General used his sole discretion to apply retroactively to

all sex offenders).          **E.  The Attorney General's Guidelines Did Not Violate**

**the Administrative         Procedures Act**

_____Bournes argues the retroactive application of SORNA to all sex offenders with

convictions predating the statute violates the Administrative Procedure Act (APA). 5 U.S.C.

§ 553.  Ordinarily, the APA requires an agency to give public notice of a proposed regulation

at least thirty days before its effective date and solicit comment from the public.  5 U.S.C.

§ 553(b)-(c).  Section 553(d)(3) provides a "good cause" exception to this requirement where

the agency finds such cause and explains the grounds therefore in the rule.  5 U.S.C. §

553(d)(3).

The Attorney General provided good cause for immediate implementation in

accordance with section 553(d)(3).  The publication of the rule was accompanied by a

statement explaining

> [T]he immediate effectiveness of this rule is necessary to eliminate any
> possible uncertainty about the applicability of the Act's requirements-and
> related means of enforcement, including criminal liability under 18 U.S.C.
> 2250 for sex offenders who knowingly fail to register as required-to sex
> offenders whose predicate convictions predate the enactment of SORNA.
> Delay in the implementation of this rule would impede the effective
> registration of such sex offenders and would impair immediate efforts to
> protect the public from sex offenders who fail to register through prosecution

and the imposition of criminal sanctions. The resulting practical dangers include the commission of additional sexual assaults and child sexual abuse or exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to greater difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA. This would thwart the legislative objective of "protect[ing] the public from sex offenders and offenders against children" by establishing "a comprehensive national system for the registration of those offenders," SORNA § 102, because a substantial class of sex offenders could evade the Act's registration requirements and enforcement mechanisms during the pendency of a proposed rule and delay the effectiveness of a final rule.

72 Fed.Reg. 39, 8894, 8896-8897 (2007). *See United States v. David*, 2008 WL 2045827 (W.D.N.C. 2008).

The urgent nature of protecting the public from sex offenders supports the immediate effective date of the SORNA regulations.[4]  Any delay in SORNA's implementation would run counter to its stated purpose, and the Attorney General complied with the APA by showing good cause for his decision.

### F.   **SORNA is a Permissible Exercise of Congressional Power Under the Commerce Clause**

_____Bournes argues two provisions of SORNA exceed Congressional authority under the Commerce Clause.[5]  He argues that neither the registration requirement in section 16913(a),

---

[4]The Court notes immediate registration by offenders does not work a hardship because all states had enacted some form of sex offender registration law prior to the passage of SORNA. *See United States v. Waybright*, ___ F.Supp.2d ___, 2008 WL 2380946, at *3 n.3 (D. Mont. June 11, 2008).

[5]  The Constitution confers upon Congress the power "[T]o regulate commerce with foreign nations, and among the several States, and with the Indian tribes."  U.S. CONST. art. I, § 8, cl. 3.

nor the jurisdictional hook of interstate travel in 18 U.S.C. § 2250(a) are proper objects of Congressional power as defined in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624 (1995). The *Lopez* Court restated three broad categories of activity within Congress's commerce power as follows: (1) the regulation of the use of the channels of interstate commerce; (2) the regulation and protection of the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities; and (3) the regulation of those activities having a substantial relation to interstate commerce. *Lopez*, 514 U.S. at 558, 115 S.Ct. at 1629-30.

A.    18 U.S.C. § 2250(a)

Bournes's Commerce Clause argument against SORNA begins with his belief that the interstate element of section 2250 is insufficient support for Congressional action, and thus voids its exercise of power. He concedes this section carries an interstate component - interstate travel plus failure to register or update a registration - but asserts the lack of a connection - either temporal or purpose - to an offender's travel and failure to register is fatal. Bournes argues that section 2250(a) could only be constitutional if it mimicked other federal criminal statutes which require a direct link between the criminal act and the interstate travel, *i.e.*, the Mann Act (prohibiting interstate travel for purposes of prostitution) or the Hobbs Act (prohibiting robbery or extortion which affects interstate commerce).

Bournes is simply incorrect. SORNA is implicated only where a sex offender (1) was required to register under SORNA based upon previous conviction for a sex offense, (2)

traveled in interstate commerce, and (3) knowingly failed to register or update a registration as required by SORNA. *United States v. Bonner*, 2007 WL 4372887, at *3 (S.D. Ala. 2007). The district court in *Bonner* employed an *ex post facto* analysis to the travel issue before granting defendant's motion for acquittal. The court found acquittal appropriate because the government did not prove the offender's interstate travel (and establishment of new residence) occurred after SORNA's effective date. Such a common-sense treatment of section 2250 promotes a meaningful connection between the interstate travel requirement and criminal liability. SORNA does not punish casual, short-term interstate travel, but links the travel component to an interstate address or employment change by sex offenders. "Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce." *Lopez, id*. at 558. Further, Bournes's concern that section 2250(a) criminalizes the simple act of interstate travel by a sex offender is unfounded, as updated registration is only required within 3 business days of an offender's "change of name, residence, employment, or student status." Thus, SORNA in no way endangers an offender's ability to engage in interstate travel, as the registration requirement is only triggered by these events which fulfill the statutory purpose of monitoring sex offenders.

The Court finds the interstate nexus in section 2250(a) is sufficient. The Eighth Circuit endorsed the constitutionality of SORNA by noting "[I]t has been long established Congress may forbid or punish use of interstate commerce 'as an agency to promote immorality, dishonesty, or the spread of any evil or harm to the people of other states from

the state of origin.'" *May*, 2008 WL 2917766 at *8, quoting *Brooks v. United States*, 267

U.S. 432, 436, 45 S.Ct. 345, 346; *accord, United States v. Ballinger,* 395 F.3d 1218, 1226

(11th Cir. 2005) (noting Congressional power to regulate channels of commerce is appropriate

"even if the targeted harm itself occurs outside the flow of commerce and is purely local in

nature."); *United States v. Thomas,* 534 F.Supp.2d 912, 919 (N.D. Iowa 2008) (applying to

SORNA); *United States v. Beasley*, 2007 WL 3489999, *9 (N.D. Ga. 2007) (also upholding

SORNA).   Several courts reviewing this argument have found a sufficient interstate nexus

to support Congress's broad powers under the Commerce Clause.  *Trent*, 2008 WL 2897089

at *3-4 (citing several cases upholding similar challenges, and finding section 22250(a) a

valid exercise of power to regulate the channels of commerce); *Hinen, id.* at 752 n.5

(function of SORNA is regulation of the movement of sex offenders in interstate commerce).

  B.  *42 U.S.C. § 16913*

   Bournes views the registration requirement in section 16913 as an unconstitutional

attempt to regulate intrastate activity - the registration of sex offenders within a state - which

cannot be supported by Congress's power under the Commerce Clause.  He argues the

registration requirement has neither an interstate nor commercial component, and should be

stricken on these grounds.

   Two lines of analysis preempt a lengthy discussion of this argument in Bournes's case.

The first is SORNA's linkage to Congressional spending power.[6]  It has long been accepted

---

   [6]The Constitution grants Congress the power "provide for the . . . general Welfare of the
United States. . . ." U.S. CONST. art. I, § 8, cl. 1.

that "Congress may fix the terms on which it shall disburse federal money to the States." *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17, 101 S.Ct. 1531, 1539 (1981). *Pennhurst* carries a caveat limiting the "legitimacy of Congress' power to legislate under the spending power" to situations where "the State voluntarily and knowingly accepts the terms of the 'contract.'" *Pennhurst*, *id*.,101 S.Ct. at 1540. SORNA's express condition on a State's receipt of federal money supports the Court's conclusion that SORNA was crafted as a valid exercise of Congressional spending power, and conforms to the Constitution. SORNA carries the power of the purse, and the registration requirement is valid. *See Ditomasso*, 552 F.Supp.2d at 245 (dismissing challenge to section 16913 as constitutional exercise of spending power).

A second issue noted during the Court's research on SORNA is Bournes's claim that the intrastate nature of the registration requirement in section 16913 in unconstitutional, even though he has, in fact, traveled in interstate commerce, and was not indicted for "intrastate conduct." This fact places his argument within the realm of facial challenges, and requires him to show "that no set of circumstances exists under which the [a]ct would be valid." *Trent*, 2008 WL at *5, citing *United States v. Salerno*, 481 U.S. 739, 745 97 S.Ct. 2061, 2100 (1987). In *Trent*, the district court dismissed the defendant's challenge to section 16913 because he allegedly traveled in interstate commerce. This was the correct result, as Justice Thomas recently wrote that courts "must be careful not to go beyond [a] statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Washington State*

*Grange v. Washington State Republican Party*, ___ U.S. ___, 128 S.Ct. 1184, 1190 (2008). In the interest of judicial restraint, Justice Thomas cautioned that facial challenges lead to "unnecessary pronouncements on constitutional issues," and prevent "premature interpretations of statutes in areas where their constitutional application might be cloudy." *Id*. at 1191.

In light of this Court's finding that section 2250(a) bears a sufficient link to interstate commerce, and Bournes's interstate travel triggered this prosecution, his allegation that a purely intrastate aspect of SORNA is unconstitutional is irrelevant, as such argument would not relate to the actual facts before this Court.

### III. CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that the motion to dismiss the indictment be DENIED.

***It is further ORDERED that the parties shall file any objections to the said Recommendation by September 15, 2008.*** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the

District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 2nd day of September, 2008.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE